No. 25-3090

Civil

---

# In the United States Court of Appeals

# for the Eighth Circuit

---

Jose Osorio-Calderon,

Appellant,

v.

Warden, FCI Sandstone,

Appellee.

---

*Appeal from the*

*United States District Court for the*

*District of Minnesota*

---

**Brief of Appellant**

---

Trevor N. Parkes

Attorney ID No. 0402172

Counsel & Project Director, First Step Act Resource Center

National Association of Criminal Defense Lawyers

1660 L St NW, 12th Floor

Washington, DC 20036

Phone number: (202) 465-7665

Email: tparkes@nacdl.org

*Appointed Counsel for Appellant Jose Osorio-Calderon*

i

Appellate Case: 25-3090     Page: 1     Date Filed: 12/03/2025 Entry ID: 5584042

# SUMMARY OF THE CASE

The First Step Act created a system whereby eligible prisoners who participate in programming and productive activities earn time credits that increase their time in the community. Up to 365 time credits are applied to take a year off their sentence. Any time credits earned beyond those 365 are applied to an early transfer from prison into prerelease custody in the community. The First Step Act states that that transfer "shall" occur when the number of time credits earned equals the time remaining on the prisoner's sentence. Mr. Osorio-Calderon earned 1,075 time credits and reached that moment, but the Bureau of Prisons refused to transfer him. He filed a habeas petition to secure his transfer from prison into prerelease custody in the community.

The Magistrate Judge agreed that the BOP must transfer him from prison into prerelease custody in the community and that jurisdiction existed under Eighth Circuit precedent, but the District Court dismissed the petition for lack of jurisdiction. The District Court reasoned that prerelease custody remains BOP custody, rendering Mr. Osorio-Calderon's petition a challenge to the conditions of his confinement, which Eighth Circuit precedent does not allow. Mr. Osorio-Calderon now appeals to secure the transfer from prison that Congress guaranteed him when it created the First Step Act's time credit incentive system.

Mr. Osorio-Calderon requests 15 minutes of oral argument.

Appellate Case: 25-3090     Page: 2     Date Filed: 12/03/2025 Entry ID: 5584042

# **TABLE OF CONTENTS**

SUMMARY OF THE CASE ........................................................................... ii

TABLE OF AUTHORITIES.............................................................................v

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUES .....................................................................2

STATEMENT OF THE CASE..........................................................................4

    I.    Background.............................................................................................4

        A.  Legal Background .........................................................................4

        B.  Factual Background.......................................................................9

    II.   Procedural History .............................................................................11

        A.  The Parties' Positions .................................................................11

        B.  The Magistrate Judge's Report and Recommendation .............14

        C.  The District Court's Order .........................................................15

SUMMARY OF THE ARGUMENT ...............................................................16

ARGUMENT ...................................................................................................19

    I.    Standard of Review............................................................................19

    II.   Jurisdiction Exists to Adjudicate This Case. ....................................20

        A.  The Eighth Circuit and Supreme Court have exercised jurisdiction over materially similar habeas petitions................................................................20

        B.  The Eighth Circuit has a jurisdictional carveout where the Bureau of Prisons has not followed the law in deciding whether to approve transferring a prisoner. ........................................................................................................27

        C.  The Supreme Court's recent order in *J. G. G.* further supports finding jurisdiction here.................................................................................................30

    III.  Alternatively, the Court Should Enter a Writ of Mandamus.....................33

        A.  Mr. Osorio-Calderon has a clear and indisputable right to his transfer into prerelease custody under the First Step Act....................................................34

Appellate Case: 25-3090   Page: 3   Date Filed: 12/03/2025 Entry ID: 5584042

B.   The BOP has a nondiscretionary duty to honor Mr. Osorio-Calderon's right to a transfer. ...................................................................39

C.   Mr. Osorio-Calderon has no other adequate remedy..................................46

CONCLUSION .................................................................................51

CERTIFICATE OF COMPLIANCE....................................................52

CERTIFICATE OF SERVICE FOR DOCUMENTS FILED USING CM/ECF .....53

iv

Appellate Case: 25-3090    Page: 4    Date Filed: 12/03/2025 Entry ID: 5584042

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*,
    645 F.3d 954 (8th Cir. 2011)..................................................................19

*Ahmed v. Weyker*,
    984 F.3d 564 (8th Cir. 2020)..........................................................3, 48, 49

*Al-Barr v. Garrett*,
    2025 WL 996416 (E.D. Ark. Mar. 7, 2025)......................................................48

*Ali v. Lothrop*,
    2025 WL 1865117 (D.D.C. July 7, 2025) .......................................................38

*Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*,
    532 F.3d 797 (8th Cir. 2008)..................................................................19

*Bania v. Roal*,
    2011 WL 7945547 (D. Minn. Oct. 24, 2011) ...................................................21

*Boumediene v. Bush*,
    553 U.S. 723 (2008)...........................................................................26

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971)....................................................................... 46-49

*Brennan v. Cunningham*,
    813 F.2d 1 (1st Cir. 1987) ....................................................................24

*Briones-Pereyra v. Warden*,
    2024 WL 4171380 (E.D. Cal. Sept. 12, 2024) ...............................................42

*Castillo v. Ridge*,
    445 F.3d 1057 (8th Cir. 2006)..................................................................34

*Cochran v. United States*,
    2025 WL 2418541 (D. Md. Aug. 21, 2025) ...................................................48

Appellate Case: 25-3090     Page: 5     Date Filed: 12/03/2025 Entry ID: 5584042

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)..................................................................................19

*Cosby v. F.C.I. Sandstone Warden*,
  2019 WL 438477 (D. Minn. Feb. 4, 2019)..................................................33

*Dace v. Mickelson*,
  816 F.2d 1277 (8th Cir. 1987).....................................................................36

*Doe v. Federal Bur. of Prisons*,
  2024 WL 455309 (S.D.N.Y. Feb. 5, 2024) ..................................................37

*Egbert v. Boule*,
  596 U.S. 482 (2022)..........................................................................3, 47, 48

*Elwood v. Jeter*,
  386 F.3d 842 (8th Cir. 2004)......................................................2, 20, 21, 29

*Farah v. Weyker*,
  926 F.3d 492 (8th Cir. 2019)..........................................................3, 48, 49

*Flowers v. Anderson*,
  661 F.3d 977 (8th Cir. 2011).......................................................................19

*Fults v. Sanders*,
  442 F.3d 1088 (8th Cir. 2006)...........................................................2, 21, 29

*Garcia v. Eischen*,
  2025 WL 1476567 (D. Minn. May 22, 2025)..........................................29, 30

*Gonzalez v. Herrera*,
  151 F.4th 1076 (9th Cir. 2025).................................................................2, 35

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*,
  442 U.S. 1 (1979).......................................................................................36

*Harriot v. Jamison*,
  2025 WL 384556 (S.D.N.Y. Feb. 4, 2025) ...............................................38, 39

vi

*In re Life Ins. Co. of N. Am.*,
857 F.2d 1190 (8th Cir. 1988)................................................................34

*Jones v. Cunningham*,
371 U.S. 236 (1963)................................................................26

*Jones v. Engelman*,
2022 WL 6563744 (C.D. Cal. Sept. 7, 2022) ................................................38

*Jones v. English*,
817 F. App'x 580 (10th Cir. 2020)................................................................29

*Knish v. Stine*,
347 F. Supp. 2d 682 (D. Minn. 2004)................................................21, 33

*Komando v. Luna*,
2023 WL 310580 (D.N.H. Jan. 13, 2023) ................................................37

*Kruger v. Erickson*,
77 F.3d 1071 (8th Cir. 1996)................................................................25

*Kuzmenko v. Phillips*,
2025 WL 779743 (E.D. Cal. Mar. 10, 2025) ................................................45

*Maggard v. Wyrick*,
800 F.2d 195 (8th Cir. 1986)................................................................45

*Miller v. Whitehead*,
527 F.3d 752 (8th Cir. 2008)................................................................3, 21

*Mitchell v. U.S. Parole Comm'n*,
538 F.3d 948 (8th Cir. 2008)................................................................33

*Mohammed v. Engleman*,
2025 WL 1909836 (C.D. Cal. July 9, 2025)................................................32

*Morrissey v. Brewer*,
408 U.S. 471 (1972)................................................................22, 23

vii

Appellate Case: 25-3090    Page: 7    Date Filed: 12/03/2025 Entry ID: 5584042

*O'Bryan v. Cox*,
    2021 WL 3932275 (D.S.D. Sept. 1, 2021) ......................................................38

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*,
    651 F.3d 857 (8th Cir. 2011) ..................................................................19

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973) ..........................................................................2, 22

*Ramirez v. Phillips*,
    2023 WL 8878993 (E.D. Cal. Dec. 22, 2023) .............................................37

*Rasul v. Bush*,
    542 U.S. 466 (2004) ..........................................................................26

*Sichting v. Rardin*,
    2024 WL 4785007 (D. Minn. Nov. 14, 2024) .......................................49, 50

*Sierra v. Jacquez*,
    2022 WL 18046701 (W.D. Wash. Dec. 27, 2022) .......................................37

*Silva v. Paul*,
    2019 WL 542945 (D. Minn. Jan. 7, 2019) ..................................................25

*Spencer v. Haynes*,
    774 F.3d 467 (8th Cir. 2014) ........................................................25, 26, 46

*Torres v. Gutierrez*,
    2024 WL 4182237 (D. Ariz. Sept. 13, 2024) ..............................................39

*Trump v. J. G. G.*,
    604 U.S. 670 (2025) ................................................3, 13-15, 17, 30-32

*United States v. Brodie*,
    2024 WL 195250 (D.N.J. Jan. 18, 2024) ...................................................39

*United States v. I.L.*,
    614 F.3d 817 (8th Cir. 2010) ..................................................................19

Appellate Case: 25-3090    Page: 8    Date Filed: 12/03/2025 Entry ID: 5584042

*Woodley v. Warden, USP Leavenworth*,
  2024 WL 2260904 (D. Kan. May 15, 2024)..........................27, 28, 36, 41, 43

*Valladares v. Ray*,
  130 F.4th 74 (4th Cir. 2025).................................................................2, 35

*Wedelstedt v. Wiley*,
  477 F.3d 1160 (10th Cir. 2007)................................................................29

*Williams v. Missouri Bd. of Prob. & Parole*,
  661 F.2d 697 (8th Cir. 1981)...............................................................36, 45

*Williams v. Warden, FCI Berlin*,
  2025 WL 2207024 (D.N.H. Aug. 4, 2025) ...................................................37

*Woodall v. Fed. Bureau of Prisons*,
  432 F.3d 235 (3d Cir. 2005)..............................................................24, 25

*Young v. Caraway*,
  2006 WL 562143 (D. Minn. Mar. 7, 2006) .................................................21

*Young v. Harper*,
  520 U.S. 143 (1997)................................................................................22

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017).................................................................. 3, 47-49

Statutes

18 U.S.C. § 3621 ....................................................................................passim

18 U.S.C. § 3624....................................................................................passim

18 U.S.C. § 3632....................................................................................passim

28 U.S.C. § 1361 .................................................................................12, 33

28 U.S.C. § 2241 ........................................................... 19, 27-29, 33, 50

Pub. L. No. 110-199, 122 Stat. 693 (2008).............................................41

Appellate Case: 25-3090    Page: 9    Date Filed: 12/03/2025 Entry ID: 5584042

Pub. L. No. 115-391, 132 Stat. 5210-13 (2018) .......................................................41

Other Authorities

164 Cong. Rec. S7649 (daily ed. Dec. 17, 2018) ....................................................4

164 Cong. Rec. S7749 (daily ed. Dec. 18, 2018) ....................................................4

164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018)..................................................4

BOP, *About Our Facilities*, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp .......................................................................................................6, 24

H.R. Rep. No. 110-140 (2007)...............................................................................44

*Remarks by President Trump at Signing Ceremony for S. 756, the "First Step Act of 2018" and H.R. 6964, the "Juvenile Justice Reform Act of 2018,"* 2018 WL 6715859, White House (Dec. 21, 2018) ...................................................................4

Appellate Case: 25-3090    Page: 10    Date Filed: 12/03/2025 Entry ID: 5584042

# JURISDICTIONAL STATEMENT

Mr. Jose Osorio-Calderon filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the District of Minnesota on February 3, 2025, and an amended petition on March 18, 2025. The Magistrate Judge recommended that the court had subject-matter jurisdiction over the petition and that Mr. Osorio-Calderon's petition should be granted on June 18, 2025, but the District Court Judge rejected the Report and Recommendation and dismissed the petition on September 19, 2025. Mr. Osorio-Calderon filed a timely appeal on October 19, 2025. This Court has jurisdiction over this appeal under 28 U.S.C. § 2253, which provides for jurisdiction over a final order from a United States District Court within the Circuit.

1

Appellate Case: 25-3090   Page: 11   Date Filed: 12/03/2025 Entry ID: 5584042

## <u>STATEMENT OF THE ISSUES</u>

I.   The First Step Act states that the Bureau of Prisons "shall" transfer a prisoner from prison into prerelease custody in the community when certain requirements are met, including that the number of earned time credits earned by the prisoner equals the remainder of the prisoner's sentence.  Did the Bureau of Prisons violate the First Step Act by refusing to transfer Mr. Osorio-Calderon into prerelease custody in the community when he met those requirements?

Most apposite authorities:

  18 U.S.C. § 3624

  18 U.S.C. § 3632

  *Gonzalez v. Herrera*, 151 F.4th 1076 (9th Cir. 2025)

  *Valladares v. Ray*, 130 F.4th 74 (4th Cir. 2025)

II.   Did the District Court lack jurisdiction under 28 U.S.C. § 2241 to consider Mr. Osorio-Calderon's habeas petition?

Most apposite authorities:

  28 U.S.C. § 2241

  *Preiser v. Rodriguez*, 411 U.S. 475 (1973)

  *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004)

  *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006)

2

*Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008)

III. Alternatively, if the District Court lacked jurisdiction to consider Mr. Osorio-Calderon's habeas petition, did the District Court err in concluding that it could not order the Bureau of Prisons to follow the First Step Act under 28 U.S.C. § 1361, the federal mandamus statute?

Most apposite authorities:

18 U.S.C. § 3624

18 U.S.C. § 3632

28 U.S.C. § 1361

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)

*Egbert v. Boule*, 596 U.S. 482 (2022)

*Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019)

*Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020)

3

Appellate Case: 25-3090    Page: 13    Date Filed: 12/03/2025 Entry ID: 5584042

**STATEMENT OF THE CASE**

## I.    Background

### A. Legal Background

The First Step Act ("FSA") was a historic, bipartisan criminal justice reform law passed to reduce recidivism rates, prison populations, and costs.  164 Cong. Rec. S7649 (daily ed. Dec. 17, 2018) (statement of Senator Grassley) ("This happens to be the most significant criminal justice reform bill in a generation."); 164 Cong. Rec. S7749 (daily ed. Dec. 18, 2018) (statement of Senator Leahy) ("The cost of housing Federal offenders consumes nearly one-third of the Justice Department's budget. Because public safety dollars are finite, this strips critical resources away from law enforcement strategies that have been proven to make our communities safer."); 164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018) (statement of Representative Collins) ("This is about money and morals. This is about doing good with the taxpayer dollar and also giving people a chance, from a moral perspective, to have a second chance."); *Remarks by President Trump at Signing Ceremony for S. 756, the "First Step Act of 2018" and H.R. 6964, the "Juvenile Justice Reform Act of 2018,"* 2018 WL 6715859, at \*2, White House (Dec. 21, 2018) ("This was incredible bipartisan support.").

Appellate Case: 25-3090     Page: 14     Date Filed: 12/03/2025 Entry ID: 5584042

One of the FSA's main inventions to achieve these goals is the FSA's earned time credits ("ETC").  Eligible prisoners[1] who successfully participate in recidivism reduction programming or productive activities earn ETCs in return for their participation.  18 U.S.C. § 3632(d)(4).  Prisoners with a Medium or High PATTERN score earn 10 ETCs every 30 days of successful participation.  18 U.S.C. § 3632(d)(4)(A)(i).  Prisoners with a Low or Minimum PATTERN score for two consecutive assessment periods earn 15 ETCs every 30 days of successful participation.  18 U.S.C. § 3632(d)(4)(A)(ii).  There is no limit to the amount of ETCs a prisoner can earn.  *See* 18 U.S.C. § 3632(d)(4) (no limit in FSA), (g)(10) ("The time limits under subsections (b) and (c) [of the Second Chance Act] shall not apply to prerelease custody under this subsection."); App. 102-125; R. Doc. 13-5 (no limit in BOP policy).

The ETCs earned are applied to reduce the prisoner's term of incarceration and increase his time spent in the community.  Up to 365 ETCs can be applied to begin the term of supervised release sooner (in other words, potentially 12 months sooner).  18 U.S.C. § 3632(d)(4)(C) ("Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised

---

[1] There is a long list of convictions in the FSA that render a prisoner ineligible to earn ETCs at 18 U.S.C. § 3632(d)(4)(D).

Appellate Case: 25-3090     Page: 15     Date Filed: 12/03/2025 Entry ID: 5584042

release.  The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."); 18 U.S.C. § 3624(g)(3) ("[T]he Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.").  Any remaining balance of ETCs after those 365 ETCs are applied toward supervised release is applied to early placement in prerelease custody, meaning either a residential reentry center ("RRC") or home confinement.  18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g).  Prerelease custody, whether in an RRC or home confinement, is meaningfully different from prison.  People in RRCs and home confinement work full-time jobs, are permitted to leave for activities such as visiting family, counseling, and recreation, and begin to rebuild their lives in the community.[2]

The Bureau of Prisons ("BOP") has chosen to implement the FSA by applying the first 365 ETCs earned by a prisoner towards the prisoner's supervised release term, and then applying any ETCs earned beyond that to the early transfer to prerelease custody in the community.  App. 95; R. Doc. 13-2, at 3 (applying 365 ETCs).

---

[2]        BOP, *About Our Facilities*, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last accessed Nov. 13, 2025).

Appellate Case: 25-3090     Page: 16     Date Filed: 12/03/2025 Entry ID: 5584042

The FSA states that ETCs "earned under [§ 3632(d)(4)(C)] by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). That application occurs "as determined under section 3624(g)," which includes a number of requirements:

- The prisoner must be "eligible" to have earned ETCs per 18 U.S.C. § 3632(d)(4)(D).

- The prisoner must have "had the remainder of his imposed term of imprisonment computed."

- The prisoner must have earned ETCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."

- The prisoner must have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or . . . maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment." [3]

- For an application to prerelease custody, the BOP must have found the prisoner "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner," or the warden must make an individual determination approving application of the ETCs.

---

[3] The BOP's periodic risk assessment is the PATTERN (Prisoner Assessment Tool Targeting Estimated Risk and Needs) Risk Assessment.

7

- For an application towards supervised release, the BOP must have determined the prisoner "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner" or the warden must make an individual determination approving application of the ETCs, and the prisoner have a term of supervised release imposed as part of his sentence.

18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(1), (3). In short, when § 3624(g)'s requirements are met, the BOP "shall" transfer the prisoner. 18 U.S.C. § 3632(d)(4)(C). The FSA further admonishes that "[t]he Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." 18 U.S.C. § 3624(g)(11).

The FSA is not the only law used to shorten the term of imprisonment and increase time spent in prerelease custody in the community. Prisoners also receive "Good Time Credits," up to 54 days credit every year, toward the service of the prisoner's sentence (assuming the prisoner has satisfactorily complied with institutional regulations). 18 U.S.C. § 3624(b)(1). Prisoners can also receive additional time in prerelease custody in the community under the Second Chance Act ("SCA"). Under the SCA, the BOP can transfer prisoners to an RRC for up to twelve months. 18 U.S.C. § 3624(c). The SCA also allows transfer to home confinement "for the shorter of 10 percent of the inmate's term of imprisonment or 6 months at the end of their sentences." 18 U.S.C. § 3624(c)(2).

8

Appellate Case: 25-3090    Page: 18    Date Filed: 12/03/2025 Entry ID: 5584042

The SCA provides the BOP with considerably more discretion than the FSA. Transfers under the SCA are made only "to the extent practicable." 18 U.S.C. § 3624(c). In addition, the SCA, unlike the FSA, specifically states that "[n]othing in [U.S.C. § 3624(c)] shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). 18 U.S.C. § 3621 allows the BOP to "designate the place of the prisoner's imprisonment" subject to a number of factors such as "the resources of the facility," "the nature and circumstances of the offense," and "the history and characteristics of the prisoner." 18 U.S.C. § 3621(b). That designation decision under the SCA is "not reviewable by any court." 18 U.S.C. § 3621(b).

These various mechanisms—Good Time Credits, SCA time, and FSA ETCs— are all separate and stackable. App. 87; R. Doc. 13 ¶ 17 (recommending Mr. Osorio-Calderon "for a combined placement" of FSA ETCs and SCA time); R. Doc. 13-2, at 3.

### B. Factual Background

The United States District Court for the District of Puerto Rico sentenced Mr. Osorio-Calderon to a 151-month term of imprisonment on January 30, 2018, for a violation of 18 U.S.C. § 2422(b). App. 91; R. Doc. 13-1, at 2. He is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). App. 83; R. Doc. 13 ¶ 3.

Appellate Case: 25-3090    Page: 19    Date Filed: 12/03/2025 Entry ID: 5584042

As of April 2, 2025, Mr. Osorio-Calderon had earned 1,095 ETCs.  App. 93; R. Doc. 13-2, at 1.  That means, under the FSA, the BOP should have applied his ETCs and transferred him into prerelease custody in the community on July 3, 2024:

- Mr. Osorio-Calderon is eligible to earn ETCs under 18 U.S.C. § 3632(d).  App. 84; R. Doc. 13 ¶ 5.

- The remainder of his imposed term of imprisonment has been computed.  *See* App. 93-95; R. Doc. 13-2.

- He earned ETCs in an amount that was equal to the remainder of his imposed term of imprisonment.  App. 95; R. Doc. 13-2, at 3.

  - Projected Release Date: July 3, 2027, due to Good Time Credits.

    - Apply 365 ETCs towards supervised release.

  - FSA Projected Release Date: July 3, 2026, the new date to begin supervised release.

    - Apply 730 ETCs, the remaining balance of ETCs, towards prerelease custody in the community.

  - FSA Conditional Placement Date: July 3, 2024.[4]

---

[4] It is called a "Conditional" date because it is based on "the individual's best case scenario given the individual's FSA/FTC status . . . ."  App. 95; R. Doc. 13-2, at 3. In other words, the Assessment generates the date based on an assumption that the prisoner will continue to earn ETCs at the same rate he has been, and will not drop out of earning status at any point.  Hence the date being "Conditional".  The BOP does not contest the accuracy of the July 3, 2024, date.  The "Conditional" nature of

10

Appellate Case: 25-3090    Page: 20    Date Filed: 12/03/2025 Entry ID: 5584042

- Mr. Osorio-Calderon has maintained a Low PATTERN score for all fourteen of his assessment periods. App. 84; R. Doc. 13 ¶ 6.

In March 2024, the BOP investigated placing Mr. Osorio-Calderon in home confinement in New York but determined the residence was unsuitable for supervision. App. 86 R. Doc. 13 ¶ 15. Then, in April 2024, Mr. Osorio-Calderon's Unit Team recommended placement in an RRC in Puerto Rico. App. 87; R. Doc. 13 ¶ 17. The Residential Reentry Manager ("RRM") denied the placement due to local ordinances regarding his conviction. App. 87; R. Doc. 13 ¶ 18. His Unit Team sent another email to the RRM in October 2024 about placing him in prerelease custody and received the same answer. App. 87; R. Doc. 13 ¶ 19. The Unit Team emailed the RRM a second time in April 2025 regarding placing Mr. Osorio-Calderon in some form of prerelease custody and were told there were no options other than the RRC. App. 87-88; R. Doc. 13 ¶ 20.

Mr. Osorio-Calderon remains incarcerated at FCI-Sandstone.

## II. Procedural History

### A. The Parties' Positions

Mr. Osorio-Calderon filed a habeas petition to secure his transfer from prison into prerelease custody in the community on February 3, 2025, R. Doc. 1, and an

---

the date matters far more for SCA time which, as discussed, is discretionary, and therefore not guaranteed.

Appellate Case: 25-3090    Page: 21    Date Filed: 12/03/2025 Entry ID: 5584042

amended habeas petition on March 18, 2025, App. 1-45; R. Doc. 6. Mr. Osorio-Calderon challenged the BOP's decision "[u]nlawfully detaining [him] past his 'shall' transfer to prerelease custody date mandated under the First Step Act." App. 2; R. Doc. 6, at 2. He requested that the court order the BOP to transfer him to prerelease custody, under the federal mandamus statute (28 U.S.C. § 1361) if necessary, to effectuate the FSA's directive. App. 15-16; R. Doc. 6, at 15-16.

The BOP opposed the habeas petition on jurisdictional grounds, and argued that even if there was jurisdiction, Mr. Osorio-Calderon had no constitutional or statutory right to be transferred to prerelease custody. R. Doc. 12. The BOP argued that conditions-of-confinement claims are not cognizable in habeas, and because Mr. Osorio-Calderon would remain in BOP custody even if in prerelease custody, his habeas petition amounted to a conditions-of-confinement claim. R. Doc. 12, at 4-8. Further, the BOP argued that its designation of a prisoner's place of confinement is unreviewable under 18 U.S.C. § 3621(b). R. Doc. 12, at 8-10. Finally, the BOP argued that Mr. Osorio-Calderon had no protected liberty interest in serving his sentence in prerelease custody, and the BOP had discretion under 18 U.S.C. §§ 3621 and 3624(c)(4) to decide whether to transfer him to prerelease custody or not. R. Doc. 12, at 10-11.

Mr. Osorio-Calderon, now represented by counsel, replied that there was jurisdiction under habeas to hear his case, and alternatively a writ of mandamus was

12

appropriate because the FSA created a right to a transfer to prerelease custody in the community.  R. Doc. 15.  Per the statutory text, the FSA mandates that the BOP "shall" transfer a prisoner when the number of ETCs earned equals the remainder of the sentence, 18 U.S.C. § 3632(d)(4)(C), and the insulation and discretion provided to the BOP under the SCA does not apply to the FSA, R. Doc. 15, at 2-10.  Moreover, the Eighth Circuit has exercised jurisdiction over similar habeas petitions seeking a transfer to prerelease custody, and in situations where the BOP failed to follow the law when effectuating a transfer.  R. Doc. 15, at 11-17.  Even if jurisdiction did not exist under habeas, Mr. Osorio-Calderon argued that the court should enter a writ of mandamus and order the BOP to follow the law.  R. Doc. 15, at 17-20.

After the initial briefing was filed, the Magistrate Judge ordered the parties to provide short briefs on the effect of the Supreme Court's decision in *Trump v. J. G. G.*, 604 U.S. (2025).  R. Doc. 16.  Mr. Osorio-Calderon argued that the Supreme Court's statements that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus" and that the challengers could still seek judicial review of "questions of interpretation and constitutionality" of the Alien Enemies Act supported finding jurisdiction over his habeas petition.  R. Doc. 17, at 2-4.  The BOP argued that the Supreme Court's decision did not displace the Eighth Circuit's jurisdictional bar to conditions-of-confinement claims.  R. Doc. 18, at 1-4.

13

## B. The Magistrate Judge's Report and Recommendation

On June 18, 2025, the Magistrate Judge entered a Report and Recommendation recommending that the District Court grant Mr. Osorio-Calderon's habeas petition. App. 131-148; R. Doc. 20. The Magistrate Judge found two jurisdictional bases. The first was based on the "fundamental implications from the *J.G.G.* decision[]: petitioning for a writ of habeas corpus is the right vehicle to challenge the federal government's decision to transfer a person in their custody to a different location (or not), and federal courts have jurisdiction to hear such challenges brought by habeas petitions." App. 140; R. Doc. 20, at 10. Second, "[e]ven if *J.G.G.* does not provide . . . jurisdiction to review Mr. Osorio-Calderon's habeas claim," "Mr. Osorio-Calderon's habeas claim is cognizable because he alleges that the BOP is violating the FSA by failing to transfer him." App. 141-142; R. Doc. 20, at 11-12. The Magistrate Judge then found Mr. Osorio-Calderon's transfer to be required based on the FSA's language and rejected the BOP's arguments that sources of discretion found elsewhere superseded the FSA's mandatory nature. App. 142-147; R. Doc. 20, at 12-17. Because he recommended that the petition be granted, the Magistrate Judge did not evaluate the request for a writ of mandamus. The BOP filed objections to the Report and Recommendation, R. Doc. 21, to which Mr. Osorio-Calderon responded, R. Doc. 22.

14

Appellate Case: 25-3090     Page: 24     Date Filed: 12/03/2025 Entry ID: 5584042

### C. The District Court's Order

On September 19, 2025, the District Court rejected the Report and Recommendation and dismissed Mr. Osorio-Calderon's petition. App. 149-160; R. Doc. 27. The District Court found that *J. G. G.* did not displace the Eighth Circuit's precedent barring conditions-of-confinement claims, and therefore the District Court was without jurisdiction to decide the petition. App. 154-158; R. Doc. 27, at 6-10. The District Court also refused to grant a writ of mandamus because 18 U.S.C. § 3621(b) made BOP's placement decisions not reviewable by any court. App. 158-159; R. Doc. 27, at 10-11.

This appeal follows.

15

## SUMMARY OF THE ARGUMENT

Congress created a system in the FSA that incentivizes prisoners to take part in recidivism reduction programming in return for additional time spent outside of prison. The prisoner's sentence can be reduced by up to a year, and any ETCs earned beyond that year are applied to an earlier transfer to prerelease custody in the community, either in an RRC or home confinement. Under the FSA, the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

The BOP does not contest that Mr. Osorio-Calderon meets the requirements of 18 U.S.C. § 3624(g). In fact, the BOP's records demonstrate that Mr. Osorio-Calderon's "shall" transfer to prerelease custody date was July 3, 2024. However, despite this clear statutory directive, the BOP has kept Mr. Osorio-Calderon over a year past his "shall" transfer date. Whether under habeas or a writ of mandamus, this Court should order the BOP to effectuate Mr. Osorio-Calderon's Congressionally-mandated transfer into prerelease custody in the community.

The District Court incorrectly held that there is no jurisdiction to adjudicate Mr. Osorio-Calderon's habeas claim. This conclusion was wrong for three reasons. First, the Eighth Circuit and Supreme Court have both previously adjudicated habeas claims regarding transfers from custody in prison to custody in the community, such as transfers from prison to prerelease custody in the community and parole

16

revocations back to prison. Considering such a claim under habeas makes sense given its historical purpose as a bulwark against unlawful detention and the marked differences between incarceration in a prison versus custody in the community.

Second, the Eighth Circuit has a jurisdictional carveout for habeas claims that allege the BOP is violating the law by failing to effectuate a transfer. The Magistrate Judge below recommended as much in this case, as did another Magistrate Judge in the United States District Court for the District of Minnesota in an identical challenge, but the District Court rejected the recommendation.

Third, as the Magistrate Judge recommended here, the Supreme Court's recent decision in *Trump v. J. G. G.*, 604 U.S. 670 (2025) further reinforces that habeas jurisdiction is expansive enough to encompass Mr. Osorio-Calderon's claim. Any of these three bases can and should support jurisdiction to adjudicate Mr. Osorio-Calderon's petition.

Even if those bases of jurisdiction fail, a writ of mandamus is appropriate here to order the BOP to stop violating the FSA. The FSA instructs that the BOP "shall" transfer the prisoner upon the requirements of 18 U.S.C. § 3624(g) being met. But the District Court held that the discretion afforded to the BOP in 18 U.S.C. § 3621(b) regarding placement decisions overrides Congress's command in the FSA to transfer the prisoner. That is incorrect. The BOP continues to enjoy significant discretion over the transfer—deciding which form of prerelease custody to use and where—

17

but the categorically different decision of whether or not to transfer the prisoner to prerelease custody has been taken out of the BOP's hands. When the requirements of 18 U.S.C. § 3624(g) have been met—as they have been here—the BOP "shall" follow through on Congress's command and effectuate the transfer.

Mr. Osorio-Calderon requests this Court reverse the District Court's decision and remand with instructions to grant his petition and order the BOP to transfer him to prerelease custody as the FSA requires.

18

Appellate Case: 25-3090    Page: 28    Date Filed: 12/03/2025 Entry ID: 5584042

## ARGUMENT

### I. Standard of Review

"We review the district court's dismissal of a § 2241 petition de novo." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011). This appeal challenges the District Court's determination of subject-matter jurisdiction, and its interpretation of the FSA and SCA. "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. Of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). Questions of statutory interpretation are also reviewed de novo. *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 803 (8th Cir. 2008).

"[A]s with any question of statutory interpretation, the court begins its analysis with the plain language of the statute." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (citing *United States v. I.L.*, 614 F.3d 817, 820 (8th Cir. 2010)). "[T]he Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Id.* (*quoting in part Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (*quoting in part Germain*, 503 U.S. at 254).

Appellate Case: 25-3090    Page: 29    Date Filed: 12/03/2025 Entry ID: 5584042

## II. Jurisdiction Exists to Adjudicate This Case.

The District Court was incorrect to adopt the BOP's argument that it lacked jurisdiction over Mr. Osorio-Calderon's petition because he is challenging the conditions of his confinement. That jurisdictional argument fails for three reasons: (1) the Eighth Circuit and Supreme Court have exercised jurisdiction over claims that—like Mr. Osorio-Calderon's—seek a transfer from custody in prison into custody in the community; (2) there is a jurisdictional carveout for situations where the BOP does not follow the law when deciding whether to approve transferring a prisoner to prerelease custody; and (3) recent Supreme Court precedent displays that habeas jurisdiction is expansive enough to encompass Mr. Osorio-Calderon's petition. The District Court should therefore be reversed.

### A. The Eighth Circuit and Supreme Court have exercised jurisdiction over materially similar habeas petitions.

This Court has exercised jurisdiction over materially similar habeas petitions seeking transfer from custody in prison into custody in the community. For instance, *Elwood v. Jeter* concerned a challenge to a BOP policy restricting transfers from prison to prerelease custody. 386 F.3d 842 (8th Cir. 2004). In that pre-SCA case, the BOP had scrapped a policy placing prisoners in an RRC for the final six months of their sentence for one that limited it to the last ten percent of their sentence. *Id.* at 844. Elwood brought a habeas claim when his time in an RRC was cut from six months to four months. *Id.* The Eighth Circuit considered the case and reversed the

20

district court judge, granting Elwood's habeas relief. *Id.* at 845-47. Multiple district courts in this Circuit have since relied on *Elwood* to consider habeas relief for prelease custody claims. *See, e.g.*, *Knish v. Stine*, 347 F. Supp. 2d 682, 686-88 (D. Minn. 2004) (holding, in light of *Elwood*, that the BOP must reconsider the petitioner for placement in an RRC); *Bania v. Roal*, No. 11-cv-925, 2011 WL 7945547, at *3 (D. Minn. Oct. 24, 2011) (considering challenge to BOP's decision not to place the petitioner in an RRC because "RRC placement decisions implicate the fact or duration of confinement" (citing *Elwood*, 386 F.3d 842)); *Young v. Caraway*, No. 05-cv-1476, 2006 WL 562143, at *3 (D. Minn. Mar. 7, 2006) (ordering the BOP to reconsider petitioner's placement in an RRC because "there was no material distinction between *Elwood* and the instant case, that would explain why [the] Petitioner . . . should be barred from challenging a CCC placement policy in a habeas corpus action, while the prisoner in *Elwood* was permitted to raise similar claims in a habeas petition" (collecting cases)).

Moreover, in the years since *Elwood*, the Eighth Circuit has continued to adjudicate habeas claims related to seeking transfer from custody in prison into custody in the community. *See Miller v. Whitehead*, 527 F.3d 752, 754–55 (8th Cir. 2008) (considering a challenge to the timing of making the prerelease custody transfer decision and a presumption that prerelease custody should be limited to a certain duration); *Fults v. Sanders*, 442 F.3d 1088, 1090–92 (8th Cir. 2006)

21

(determining that the BOP could not categorically exclude classes of prisoners from transfer to prerelease custody under 18 U.S.C. § 3621 where the factors called for individualized determinations).

This should come as no surprise given that the Supreme Court's jurisprudence supports habeas being the appropriate means to seek release from confinement in prison into custody in the community:

> [O]ver the years, the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction. Thus, whether the petitioner's challenge to his custody is that . . . his parole was unlawfully revoked, causing him to be reincarcerated in prison . . . habeas corpus has been accepted as the specific instrument to obtain release from such confinement.

*Preiser v. Rodriguez*, 411 U.S. 475, 485–86 (1973) (citations omitted). Habeas relief remains the "appropriate remedy" where it "shorten[s] the length of [the petitioner's] actual *confinement* in *prison*" even if they will remain in *custody* in the *community* upon release. *Preiser*, 411 U.S. at 487 (emphasis added). The Supreme Court cases *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Young v. Harper*, 520 U.S. 143 (1997) make this point particularly clear.

In *Morrissey*, the petitioners filed habeas petitions challenging parole revocations without due process and sought release from prison onto parole. The Eighth Circuit had held that "parole is only 'a correctional device authorizing service of sentence outside the penitentiary', the parolee is still 'in custody,'" and courts

Appellate Case: 25-3090     Page: 32     Date Filed: 12/03/2025 Entry ID: 5584042

should not "interfere with disciplinary matters properly under the control of state prison authorities." *Morrissey*, 408 U.S. at 474-75 (quoting *Morrissey v. Brewer*, 443 F.2d 942, 947 (8th Cir. 1971)). The Supreme Court rejected that reasoning, reversed the Eighth Circuit, and considered the habeas petition. The Supreme Court explained that while a person on parole remains in custody and only retains his liberty "as long as he substantially abides by the conditions of his parole," he enjoys "many of the core values of unqualified liberty." *Id.* at 479, 482. He may "do a wide range of things open to persons who have never been convicted of any crime" such as obtaining employment, living in the community, spending time with loved ones, and "form[ing] the other enduring attachments of normal life." *Id.* at 482. In short, experience on parole is "very different from that of confinement in a prison." *Id.* Thus, the Supreme Court adjudicated the habeas petition and held that parole cannot be revoked without due process. *Id.*

Similarly, the petitioner in *Young* filed a habeas petition seeking release from prison onto preparole, after his preparole was revoked without the protections outlined in *Morrissey*. The government argued *Morrissey* did not apply because preparolees, unlike parolees, "remained within the custody of the Department of Corrections" and his reimprisonment "was nothing more than a 'transfe[r] to a higher degree of confinement[.]" *Young*, 520 U.S. at 148-150 (first alteration in original). The Supreme Court rejected this argument because the *Young* petitioner, like the

23

*Morrissey* petitioner, remained in legal custody but "was released from prison before the expiration of his sentence. He kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment." *Id.* at 148. The Supreme Court therefore granted the habeas petition.

Adjudicating these habeas claims seeking transfers from prison into custody in the community makes sense because prerelease custody and parole are meaningfully different from prison. In prerelease custody, whether in an RRC or home confinement, Mr. Osorio-Calderon would have substantially more freedom. Prelease custody is designed to help people "prepare for . . . re-entry into the community." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005). People placed in RRCs, for example, generally are required to work fulltime jobs and are permitted to leave for other activities such as visiting family, counseling, and recreation.[5] *See Brennan v. Cunningham*, 813 F.2d 1, 5 (1st Cir. 1987) (In contrast to " an inmate incarcerated in prison[,] the prisoner in [a halfway house] enjoys some significant liberty[.]"). People in prelease custody are also often "eligible for weekend passes, overnight passes, or furloughs." *Woodall*, 432 F.3d at 243. For people placed in home confinement, the contrast is even greater, as they are able to

---

[5] BOP, *About Our Facilities*, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last accessed Nov. 13, 2025).

Appellate Case: 25-3090    Page: 34    Date Filed: 12/03/2025 Entry ID: 5584042

live with and help support their families at home, and begin to reintegrate into their communities more fully. Indeed, "subject to the approval of the Director of the Bureau of Prisons," people placed in home confinement are able to leave home to "perform a job or job-related activities," "perform community service," "receive medical treatment," "attend religious activities," and engage in other family- and community-based activities. 18 U.S.C. § 3624(g)(2)(A)(i). The sort of flexibility and freedom of movement that prerelease custody offers is dramatically different from traditional custody in a federal prison. *Woodall*, 432 F.3d at 243; *see also Silva v. Paul*, No. 18-cv-02177, 2019 WL 542945, at *5 (D. Minn. Jan. 7, 2019) (collecting cases explaining that "the difference between a prison and a halfway house represents 'a quantum change in the level of custody'" (citation omitted)), *report and recommendation adopted*, No. 18-cv- 2177, 2019 WL 536668 (D. Minn. Feb. 11, 2019).

Mr. Osorio-Calderon's petition—and the similar Eighth Circuit and Supreme Court cases that adjudicated habeas petitions regarding changes between custody in prison and custody in the community—are meaningfully different than the conditions-of-confinement case law relied on by the District Court. App. 156-158; R. Doc. 27, at 8-10 (citing *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) (per curiam) *and Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014)). The *Kruger* petitioner brought a habeas claim after he was forced to take part in a blood-draw to provide

25

DNA. 77 F.3d at 1073. The *Spencer* petitioner alleged in his habeas petition that he was placed in a four-point restraint without first being afforded a hearing. 774 F.3d at 468. Those are both conditions-of-confinement cases that challenge actions by correctional staff on prisoners in a prison. They are far afield from the type of claim Mr. Osorio-Calderon has brought and the relief he seeks—a transfer out of prison into custody in the community—and they fail to consider the meaningful differences between prelease custody and prison. They should not be read so expansively to move Mr. Osorio-Calderon's petition outside of the court's jurisdiction when other Eighth Circuit and Supreme Court precedent counsels otherwise.

Habeas has historically served as a bulwark against unlawful detention. "The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom." *Boumediene v. Bush*, 553 U.S. 723, 739 (2008). In particular, "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention." *Rasul v. Bush*, 542 U.S. 466, 474 (2004). Moreover, habeas "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *see also Boumediene*, 553 U.S. at 779 ("common-law habeas corpus was, above all, an

26

Appellate Case: 25-3090     Page: 36     Date Filed: 12/03/2025 Entry ID: 5584042

adaptable remedy.  Its precise application and scope [has] changed depending upon the circumstances.").  For these reasons, this Court should reverse the District Court and hold that jurisdiction does exist under 28 U.S.C. § 2241.

### B. The Eighth Circuit has a jurisdictional carveout where the Bureau of Prisons has not followed the law in deciding whether to approve transferring a prisoner.

There is an additional basis for jurisdiction: an Eighth Circuit jurisdictional carveout where the BOP fails to follow the law when it decides whether or not to transfer a prisoner.  The Tenth Circuit—whose jurisdictional limitations to habeas claims are similar to the Eighth Circuit's—has a parallel carveout where the BOP fails to follow the law when it decides whether or not to transfer a prisoner.  *United States v. Woodley*, a case from the District Court for the District of Kansas, is instructive.  The *Woodley* court concluded that it had jurisdiction over the same habeas claim that Mr. Osorio-Calderon raises with the same relevant facts under the parallel Tenth Circuit carveout.  No. 24-3053-JWL, 2024 WL 2260904, at *9 n.5 (D. Kan. May 15, 2024).  That analysis should be mirrored here under Eighth Circuit precedent.

Woodley, like Mr. Osorio-Calderon, had earned more than 365 ETCs.  *Id.* at *3.  After the BOP had applied 365 ETCs towards supervised release, Woodley still had an additional 445 ETCs that had to be applied to prerelease custody, and thus the BOP should have transferred him when his ETCs equaled the remainder of his

27

sentence.  *See id.* at *7 ("Respondent has conceded that petitioner is eligible for placement in prerelease custody.  Accordingly, the FSA requires the BOP to place petitioner in prerelease custody."); *accord id.* *1, 3-4, 9.  But the BOP instead informed Woodley that he would not be transferred to prerelease custody for months due to bedspace.  *See id.* at *3-4.  The court determined that the BOP's failure to transfer Woodley to prerelease custody violated federal law.  It therefore granted his petition and ordered the BOP to transfer Woodley to prerelease custody within 30 days.  *Id.* at *10.

The *Woodley* court determined that a decision to transfer a prisoner to prerelease custody affected "the conditions of confinement, not its duration," yet held that jurisdiction was still appropriate because the Tenth Circuit had allowed prisoners to bring § 2241 petitions challenging "whether the BOP had followed the law in evaluating whether to approve such a transfer."  *Id.* at *9 n.5.  The *Woodley* court "determined that the BOP did not follow the law with respect to its transfer decision" and "that habeas relief [was] appropriate."  *Id.*  The Tenth Circuit case on which *Woodley* relied states:  "Although transfer to community confinement affects the conditions of confinement—not its duration—we have recognized that petitions seeking review of whether BOP staff followed the law in evaluating an inmate for community confinement may be brought in a § 2241 habeas petition."  *Jones v.*

28

Appellate Case: 25-3090     Page: 38     Date Filed: 12/03/2025 Entry ID: 5584042

*English*, 817 F. App'x 580, 583 (10th Cir. 2020) (unpublished) (citing *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168-69 (10th Cir. 2007)).

The Eighth Circuit has also recognized that § 2241 petitions where the BOP has violated the law are proper. For example, in *Fults v. Sanders*, the Eight Circuit granted relief to Fults, who brought a § 2241 petition arguing that the BOP had not followed the law in determining and limiting his time in prerelease custody. 442 F.3d 1088, 1088–89 (8th Cir. 2006); *see also Elwood*, 386 F.3d at 846-47 (holding that BOP regulation expanding BOP's discretion over prerelease custody placement decisions was improper).

A recent Report and Recommendation in the United States District Court for the District of Minnesota found jurisdiction on this basis in a similarly situated petition. R. Doc. 15-1. The FSA mandated that Mr. Garcia be released to prerelease custody by December 27, 2025, but the BOP provided him with a placement date of April 8, 2025, due to a lack of RRC bedspace. R. Doc. 15-1, at 4. The Government made an identical jurisdictional argument, which the Magistrate Judge rejected. The Magistrate Judge found that "[t]he Eighth Circuit has recognized that habeas petitions challenging BOP decisions for violating federal law are proper." R. Doc. 15-1, at 6 (citing *Fults*, 442 F.3d at 1088-89 *and Elwood*, 386 F.3d 842)). Therefore, because "Mr. Garcia's Petition allege[d] that the BOP's refusal to transfer him as

29

mandated by the First Step Act violate[d] federal law," the Court "ha[d] jurisdiction to consider the Petition." R. Doc. 15-1, at 8.[6]

The Magistrate Judge who considered Mr. Osorio-Calderon's petition reached the same conclusion: "For the same reasons as the *Garcia* court found, the Court finds Mr. Osorio-Calderon's habeas claim is cognizable because he alleges that the BOP is violating the FSA by failing to transfer him—a claim that no case Respondent cites puts beyond this Court's jurisdiction to review." App. 141-142; R. Doc. 20, at 11-12. Mr. Osorio-Calderon's habeas petition contends that the BOP has not followed the law in evaluating whether to transfer him to prerelease custody, a contention that puts his claim within Eighth Circuit jurisdictional boundaries.

### C. The Supreme Court's recent order in *J. G. G.* further supports finding jurisdiction here.

The Magistrate Judge here found another, separate basis of jurisdiction based on the Supreme Court's recent decision in *Trump v. J. G. G.*, 604 U.S. 670 (2025). On March 15, 2025, the ACLU secured two temporary restraining orders on behalf of a putative class of noncitizens in United States custody subject to President Trump's March 15, 2025, Presidential Proclamation allowing for the removal of Venezuelan nationals under the Alien Enemies Act. *Trump v. J.G.G.*, 604 U.S. at

---

[6] Mr. Garcia's petition was eventually dismissed as moot because he was released to prerelease custody (though several months after his mandated date) before the District Court could rule on the Report and Recommendation. *Garcia v. Eischen*, No. 24-CV-4106 (KMM/SGE), 2025 WL 1476567 (D. Minn. May 22, 2025).

Appellate Case: 25-3090    Page: 40    Date Filed: 12/03/2025 Entry ID: 5584042

671. The temporary restraining orders were upheld at the United States Court of Appeals for the District of Columbia Circuit. *Id.* The Department of Justice asked the Supreme Court to vacate the orders as the nature of the cause of action required the plaintiffs to instead bring the cases through habeas claims in the districts of their confinement. The Supreme Court agreed, vacating the orders and holding that because the detainees' "claims for relief necessarily imply the invalidity of their confinement and removal under the AEA, their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Id.* at 672 (quotations and citations omitted). In its per curiam Order, the Supreme Court noted that "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Id.* (alteration in original) (quotations and citations omitted).

The Magistrate Judge took "a broad view" of the *J. G. G.* opinion to highlight the "two fundamental implications" that "emerge: petitioning for a writ of habeas corpus is the right vehicle to challenge the federal government's decision to transfer a person in their custody to a different location (or not), and federal courts have jurisdiction to hear such challenges brought by habeas petitions. Such challenges, to be clear, are place of confinement challenges." App. 140; R. Doc. 20, at 10. The Magistrate Judge further noted that "[t]hese conclusions are reinforced by Justice Kavanaugh's dissent which emphasizes that habeas has long provided the proper

31

Appellate Case: 25-3090     Page: 41     Date Filed: 12/03/2025 Entry ID: 5584042

vehicle for challenges to transfers in both the extradition and wartime detainee contexts." App. 140; R. Doc. 20, at 10.

For the sake of Mr. Osorio-Calderon's petition, "[t]he application of *J.G.G.* here is that this Court has jurisdiction to review the claim of Mr. Osorio-Calderon that the BOP should have, by statute, transferred him to prerelease custody sometime in 2024." App. 140; R. Doc. 20, at 10. A "greater breadth to what is cognizable under habeas is exactly what the *J.G.G.* opinion highlights." App. 141; R. Doc. 20, at 11. Another court considering a similar habeas petition seeking transfer to prerelease custody under the FSA has reached this same conclusion, rejecting the BOP's argument that "habeas is limited to challenges that would necessarily result in the petitioner's early or immediate release from confinement." *Mohammed v. Engleman*, No. 2:25-CV-01011-MWC-MBK, 2025 WL 1909836, at *8 (C.D. Cal. July 9, 2025) ("However, both the Supreme Court and Ninth Circuit have held that habeas encompasses claims that do not seek a prisoner's outright release." (citing *Trump v. J. G. G.*, 145 S. Ct. 1003, 1005-06 (2025))), *report and recommendation adopted*, No. 2:25-CV-01011-MWC-MBK, 2025 WL 2294325 (C.D. Cal. Aug. 8, 2025).

For any of these reasons, jurisdiction exists to grant Mr. Osorio-Calderon's habeas petition and ensure his transfer.

32

### III.    Alternatively, the Court Should Enter a Writ of Mandamus.

Alternatively, if this Court finds that jurisdiction does not exist under 28 U.S.C. § 2241, it should construe the petition as an "action in the nature of mandamus to compel an officer or employee of the United States . . . to perform a duty owed to the [petitioner]." 28 U.S.C. § 1361.  Section 1361 grants district courts "original jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Knish v. Stine*, 347 F. Supp. 2d 682, 686 (D. Minn. 2004). The District Court correctly acted within its discretion to construe Mr. Osorio-Calderon's habeas petition as a petition for a writ of mandamus given his approval. App. 11, 16; R. Doc. 6, at 11, 16 (alleging that mandamus "is both proper and authorized" because of the BOP's "illegal application of agency regulation and statute," and asking the Court to "issue[] a Mandamus Order under 28 U.S.C. § 1361 directing the BOP transfer"); *see Cosby v. F.C.I. Sandstone Warden*, No. 18-cv-573, 2019 WL 438477, at *1 (D. Minn. Feb. 4, 2019) ("Although Petitioner's claim is not cognizable as a writ of habeas corpus under 28 U.S.C. § 2241, he may convert his claim into a mandamus action."); *cf. Mitchell v. U.S. Parole Comm'n*, 538 F.3d 948, 952 (8th Cir. 2008) (explaining that "a writ of mandamus is the proper method to compel the [Parole] Commission" to hold a statutorily required early-termination

33

Appellate Case: 25-3090     Page: 43     Date Filed: 12/03/2025 Entry ID: 5584042

hearing and discussing result if habeas petition were "construed as seeking mandamus").

"A district court may grant a writ of mandamus in extraordinary situations if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." *Castillo v. Ridge*, 445 F.3d 1057, 1060-61 (8th Cir. 2006). Each of these factors is satisfied here, and mandamus relief is warranted. The District Court was incorrect to hold otherwise.

### A. Mr. Osorio-Calderon has a clear and indisputable right to his transfer into prerelease custody under the First Step Act.

The BOP had a duty under the FSA to transfer Mr. Osorio-Calderon to prerelease custody on July 3, 2024. That right is clear and indisputable from the statute's text. *See, e.g.*, *In re Life Ins. Co. of N. Am.*, 857 F.2d 1190, 1193-95 (8th Cir. 1988) (interpreting statute's text and relevant precedent to find "clear and indisputable" right). The FSA states that the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). That transfer occurs under 18 U.S.C. § 3624(g) when the prisoner meets that subsection's requirements, namely, for the sake of this appeal, when he "has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g). The FSA is very clear on this: eligible

34

prisoners shall be transferred to prerelease custody or supervised release when their ETCs equal the remainder of their sentence. *See Valladares v. Ray*, 130 F.4th 74, 79 (4th Cir. 2025) ("Under the FSA, the time credits can be applied toward earlier placement in pre-release custody or supervised release. The award and computation of time credits is mandatory." (citing 18 U.S.C. § 3632(d)(4)(C))); *Gonzalez v. Herrera*, 151 F.4th 1076, 1085 (9th Cir. 2025) ("[Section] 3632(d)(4)(C) directs the BOP to put the prisoner on prerelease custody or place him on supervised release (cashing in earned time credits to do so) when a prisoner becomes 'eligible.'" (citing 18 U.S.C. § 3624(g), 18 U.S.C. §3632(d)(4)(C))).

The parties agree that Mr. Osorio-Calderon's transfer to prerelease custody date was July 3, 2024. His FSA Time Credit Assessment shows his FSA Conditional Placement Date (i.e., the date he must be transferred to an RRC or home confinement) was July 3, 2024, based on the accrual of 1,095 ETCs. App. 95; R. Doc. 13-2, at 3. But the BOP failed to transfer Mr. Osorio-Calderon then, even though it was mandated to do so. App. 86-88; R. Doc. 13 ¶¶ 15-20.

Nothing in the FSA allows the BOP to refuse to effectuate the transfer; it flies in the face of the FSA's mandatory language. 18 U.S.C. § 3632(d)(4)(C); *see also* 18 U.S.C. § 3624(g)(11) ("The Director of the Bureau of Prisons shall ensure there

35

Appellate Case: 25-3090    Page: 45    Date Filed: 12/03/2025 Entry ID: 5584042

is sufficient prerelease custody capacity to accommodate all eligible prisoners.").[7] The Eighth Circuit is clear that mandatory language like "shall" must be treated as mandatory. *Dace v. Mickelson*, 816 F.2d 1277, 1280 (8th Cir. 1987) (finding that the state has created a protectable liberty interest in parole where it used "language of a mandatory character, such as 'shall,' 'will,' or 'must'"); *Williams v. Missouri Bd. of Prob. & Parole*, 661 F.2d 697, 699 (8th Cir. 1981) ("After examining the similar Missouri provision in the light cast by the *Greenholtz* decision, we conclude that the Missouri law providing that when the statutory and regulatory guidelines are met the inmate *shall* be released on parole gives rise to the same protectible entitlement as the Nebraska scheme providing that the prisoner *shall* be paroled unless certain findings are made." (emphases added) (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 12 (1979))). And courts across the country have rejected the BOP's argument that it can delay this mandatory transfer. *See United States v. Woodley*, No. 24-3053-JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) ("Respondent has conceded that petitioner is eligible for placement in prerelease custody. Accordingly, the FSA requires the BOP to place petitioner in prerelease custody. Respondent's excuse for delaying petitioner's transfer to an

---

[7] Congress's use of non-mandatory language in other parts of the FSA further reinforces this. For example, § 3632(h)(2) provides, "The Attorney General *shall* incorporate programs designed to treat dyslexia . . . . The Attorney General *may* also incorporate programs designed to treat other learning disabilities." 18 U.S.C. § 3632(h)(2) (emphases added).

Appellate Case: 25-3090     Page: 46     Date Filed: 12/03/2025 Entry ID: 5584042

RRC is that bed space is not available in a particular RRC until September. No such condition concerning bed availability is included among the requirements for eligibility under Section 3624(g), however, and thus immediate placement in prerelease custody is nevertheless required under Section 3632(d)(4)(C)."); *Williams v. Warden, FCI Berlin*, No. 23-CV-509-LM-AJ, 2025 WL 2207024, at *4 (D.N.H. Aug. 4, 2025) ("Because Williams will have time credits remaining after their application toward early placement in supervised release, BOP must apply those remaining time credits toward placement in prerelease custody."); *Doe v. Federal Bur. of Prisons*, No. 23-CV-5965 (AT), 2024 WL 455309, at *1-4 (S.D.N.Y. Feb. 5, 2024) (requiring transfer to prerelease custody despite the petitioner's participation in the witness protection program); *Ramirez v. Phillips*, No. 2:23-CV-2911-KJM-JDP, 2023 WL 8878993, at *4 (E.D. Cal. Dec. 22, 2023) ("In other words, while the BOP has discretion to determine the form of release, transfer to a non-prison setting is mandatory for eligible prisoners."); *Komando v. Luna*, 22-CV-425-SE, 2023 WL 310580, at *4-8 (D.N.H. Jan. 13, 2023) (requiring transfer to prerelease custody despite outstanding detainer while rejecting argument that the BOP had discretion to determine which prisoners were suitable for placement in prerelease custody), *report and recommendation adopted*, 2023 WL 1782034 (Feb. 6, 2023); *Sierra v. Jacquez*, 2:22-CV-1509-RSL-BAT, 2022 WL 18046701, at *4 (W.D. Wash. Dec. 27, 2022) (requiring transfer to prerelease custody despite immigration detainer, rejecting

37

Appellate Case: 25-3090     Page: 47     Date Filed: 12/03/2025 Entry ID: 5584042

argument for discretion), *report and recommendation adopted*, 2023 WL 184225 (Jan. 13, 2023); *Jones v. Engelman*, 2:22-CV-5292-MCS (GJS), 2022 WL 6563744, at \*9-13 (C.D. Cal. Sept. 7, 2022) (requiring transfer to prerelease custody despite pending charges and argument that the prisoner was a flight risk), *report and recommendation adopted in relevant part*, 2022 WL 6445565 (Oct. 7, 2022); *O'Bryan v. Cox*, No. CIV 21-4052, 2021 WL 3932275, at \*4 (D.S.D. Sept. 1, 2021) ("Petitioner is entitled to receive all of his 43.75 days of credit to move back his current February 23, 2022 release date. Whether those time credits are applied for pre-release custody or transfer to supervised release is by statute within the discretion of the Bureau of Prisons."); *see also Laver v. Warden, FCI Bastrop*, No. 1:25-CV-742-RP, 2025 WL 3217753, at \*1 (W.D. Tex. Nov. 18, 2025) (adopting Report and Recommendation's finding that the case was not yet ripe but rejecting Magistrate Judge's finding that transfer to prerelease custody under the FSA was "a discretionary decision within BOP's authority" because the statute uses mandatory language); *Ali v. Lothrop*, No. CV 25-0384 (RC), 2025 WL 1865117, at \*2 (D.D.C. July 7, 2025) ("Because Petitioner would have earned 325 FSA Time Credits towards prerelease custody *and* because 325 days remained on her sentence as of March 1, 2025, BOP was *required* to place Petitioner in prerelease custody *no later than* March 1, 2025." (emphases in original); *Harriot v. Jamison*, No. 24 CIV. 208 (AT) (JLC), 2025 WL 384556, at \*7 (S.D.N.Y. Feb. 4, 2025) ("Had BOP not relied

38

upon the detainer, it would have been required to apply Harriot's credits toward early release from secure custody."); *Torres v. Gutierrez*, No. CV-23-00569-TUC-JCH, 2024 WL 4182237, at *4 (D. Ariz. Sept. 13, 2024) ("[T]he BOP has no discretion to deny application of FSA time credits to already-eligible prisoners."); *United States v. Brodie*, No. 1:18-CR-0162-NLH-1, 2024 WL 195250, at *9 (D.N.J. Jan. 18, 2024) ("It is true that application of earned time credits, for eligible defendants, is mandatory, as prescribed by use of the word 'shall' in this statute."). The BOP should similarly be made to follow the law and transfer Mr. Osorio-Calderon here.

### B. The BOP has a nondiscretionary duty to honor Mr. Osorio-Calderon's right to a transfer.

The District Court agreed with the BOP that 18 U.S.C. § 3621(b) insulates its decision not to transfer Mr. Osorio-Calderon from judicial review. That conclusion was incorrect and should be reversed. The FSA created its own set of conditions for whether a transfer to prerelease custody or supervised release must occur, and once those requirements are met, the BOP "shall" transfer the prisoner. The discretionary conditions considered under 18 U.S.C. § 3621(b) for other transfers do not apply to the decision of whether or not to transfer under the FSA.

To review, the FSA strips the BOP of discretion with respect to the application of ETCs and mandates that the BOP "shall" transfer a prisoner out of prison upon the requirements of 18 U.S.C. § 3624(g) being met. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g). As outlined above, the requirements of 18 U.S.C. § 3624(g) are:

39

- The prisoner must be "eligible" to have earned ETCs per 18 U.S.C. § 3632(d)(4)(D).

- The prisoner must have "had the remainder of his imposed term of imprisonment computed."

- The prisoner must have earned ETCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."

- The prisoner must have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or . . . maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment."

- For an application towards prerelease custody, the BOP must have found the prisoner "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner," or the warden must make an individual determination approving application of the ETCs.

- For an application towards supervised release, the BOP must have determined the prisoner "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner" or the warden must make an individual determination approving application of the ETCs, and the prisoner have a term of supervised release imposed as part of his sentence.

18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(1), (3). When those requirements are met, the BOP "shall" apply the ETCs and effectuate the transfer.

40

Appellate Case: 25-3090     Page: 50     Date Filed: 12/03/2025 Entry ID: 5584042

Congress has provided that the BOP's decision regarding a person's "place of imprisonment under [18 U.S.C. § 3621(b)] is not reviewable by any court," but that provision is not relevant for the purposes of mandating Mr. Osorio-Calderon's transfer under the FSA. 18 U.S.C. § 3621(b). 18 U.S.C. § 3624(g) is a new subsection created in the FSA and unbounded by 18 U.S.C. § 3621(b). First Step Act, Pub. L. No. 115-391, 132 Stat. 5210-13, § 102 (2018) (codified at 18 U.S.C. § 3624(g)). This is made clear by the fact that—in sharp contrast—when the SCA was enacted in 2009, it specifically stated that SCA transfers remained subject to § 3621. Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 693, § 251 (2008) (codified at 18 U.S.C. § 3621(c)(4)) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."). When Congress created the FSA, it could have used that same limitation again, but it chose not to, and no such limitation exists for FSA transfers.

Under the law, when a prisoner has met the requirements of 18 U.S.C. § 3624(g), including that his ETCs equal the time left on his sentence, the prisoner must be transferred to prerelease custody or supervised release. 18 U.S.C. § 3621(b) only affects FSA transfers so far as the BOP retains its usual discretion to designate the place to which a person is transferred, i.e., to which RRC, or to home confinement and where. *See Woodley v. Warden, USP Leavenworth*, No. 24-3053-

41

Appellate Case: 25-3090     Page: 51     Date Filed: 12/03/2025 Entry ID: 5584042

JWL, 2024 WL 2260904, at *4 (D. Kan. May 15, 2024) ("In this regard, the Court notes that while the FSA requires transfer to prerelease custody, the BOP retains the discretion to decide whether to transfer petitioner to an RRC or to home confinement, or even whether to transfer petitioner to early supervised release."). But the categorically different decision of *whether* to transfer a prisoner from prison to prerelease custody or supervised release when the requirements of 18 U.S.C. § 3624(g) are met is not covered by section 3621(b). *See Briones-Pereyra v. Warden*, No. 1:23-cv-1718-SAB-HC, 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024) (holding that the court had jurisdiction to compel BOP action regarding ETCs "because application of [E]TCs to eligible prisoners who have earned them is *required*, not discretionary, under the statute" (emphasis in original)).

This conclusion is reinforced by the fact that in making a decision under § 3621(b), the BOP is required to consider a range of factors, *see* 18 U.S.C. § 3621(b)(1)–(5) (listing facility resources, facts about the offense, facts about the offender, statements by the sentencing court, and policy statements by the Sentencing Commission), that are far afield from the decision Congress made in the FSA regarding the timing and prerequisites to be transferred out of prison, *see* 18 U.S.C. § 3624(g). By contrast, the FSA is focused on the prisoner's eligibility to earn ETCs, the remainder of the term of imprisonment, the amount of ETCs that have been earned, and the prisoner's PATTERN score when determining whether or

42

Appellate Case: 25-3090     Page: 52     Date Filed: 12/03/2025 Entry ID: 5584042

not a transfer is required. 18 U.S.C. § 3624(g). Once it is determined that those requirements are met, the BOP can make its decision as to where to transfer the prisoner, but it cannot simply refuse to transfer him.[8] Congress's bar to judicial review regarding the selection of a "place of imprisonment" has no bearing on the enforceability of the distinct congressional command in the FSA to transfer the prisoner. *Woodley v. Warden, USP Leavenworth*, No. 24-3053-JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) ("Under a plain reading of this provision of the FSA, which includes the word 'shall', the BOP is *required* to transfer a prisoner to prerelease custody or supervised release if the prisoner is 'eligible' as determined under Subsection 3624(g)." (emphasis in original)).

Below, the BOP also argued that the discretion afforded to it under the SCA justifies its decision to deny Mr. Osorio-Calderon's mandatory transfer under the FSA. R. Doc. 12, at 2-4, 8-10. The SCA has nothing to do with the transfer Mr. Osorio-Calderon is seeking. This argument is a red herring.

The SCA was passed in 2008, a decade before the FSA, and was "intended to reduce recidivism, increase public safety, and help State and local governments better address the growing population of ex-offenders returning to their

---

[8] In fact, the FSA further forces the BOP's hand to effectuate FSA transfers by directing that "[t]he Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." 18 U.S.C. § 3624(g)(11).

Appellate Case: 25-3090    Page: 53    Date Filed: 12/03/2025 Entry ID: 5584042

communities" through a number of means, including "the expansion of comprehensive re-entry services." H.R. Rep. No. 110-140, at 1 (2007). It amended 18 U.S.C. § 3624(c) to allow the BOP to transfer prisoners, "to the extent practicable," to a community correctional facility for up to twelve months. Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, § 251 (2008). The SCA also allows a transfer to home confinement "for the shorter of 10 percent of the inmate's term of imprisonment or 6 months at the end of their sentences." 18 U.S.C. § 3624(c)(2). This is SCA time, and it is separate from the FSA's ETCs. Mr. Osorio-Calderon's FSA Time Credit Assessment makes it clear these are different; the Assessment also outlines an "SCA Conditional Placement Date" that was predicated on the BOP agreeing with Mr. Osorio-Calderon's Unit Team's recommendation that he receive SCA time in addition to his FSA ETCs. App. 87, 95; R. Doc. 13 ¶¶ 17-18; R. Doc. 13-2, at 3.

Mr. Osorio-Calderon is not contesting that the BOP has the statutory right to only transfer him under the SCA "to the extent practicable." The BOP could have agreed with his Unit Team and gave him additional time in an RRC under the SCA on top of his FSA ETCs, but the SCA time is irrelevant to the fact that his transfer under the FSA was mandated to occur on July 3, 2024. App. 87; R. Doc. 13 ¶ 17. The BOP evaluated the Unit Team's proposal and made its decision to not grant SCA time, but there are no similar limits or factors to consider on the practicality of

44

transferring under the FSA; the FSA does not contain a "to the extent practicable" limitation. *Compare* 18 U.S.C. § 3632(d)(4)(C) *and* § 3624(g) *with* § 3624(c). They are separate systems and § 3624(c) is inapplicable to the FSA. *See Kuzmenko v. Phillips*, No. 2:25-CV-00663-DJC-AC, 2025 WL 779743, at *5 n.6 (E.D. Cal. Mar. 10, 2025) ("The language 'to the extent practicable' expressly modifies the language shall and expressly provides the BOP with discretion. Such qualifying language is notably absent from 18 U.S.C. § 3632(d)(4)(C)."), *appeal dismissed sub nom. Martin v. Phillips*, No. 25-3145, 2025 WL 2375268 (9th Cir. July 24, 2025).

When Congress said, "shall transfer," it meant "shall." *See Maggard v. Wyrick*, 800 F.2d 195, 198 (8th Cir. 1986) (noting that after the decision in *Williams v. Missouri Bd. of Prob. & Parole*, 661 F.2d 697 (8th Cir. 1981), "the Missouri legislature amended the parole release statute replacing the mandatory 'shall' with the discretionary 'may in its discretion,'" and so "the Missouri statute as amended does not create a protected liberty interest in parole"). Transfer under the FSA is mandatory when its requirements—those found in 18 U.S.C. § 3624(g)—are met.

The BOP's reliance on 18 U.S.C. § 3624(c)(4) in the SCA is similarly misplaced and fails for the same reason. 18 U.S.C. § 3624(c)(4) provides that "[n]othing *in this subsection* shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." (emphasis added). It applies to subsection (c), the SCA. *See* 18 U.S.C. §3624(a) (noting that 18 U.S.C.

45

Appellate Case: 25-3090     Page: 55     Date Filed: 12/03/2025 Entry ID: 5584042

§3624(b) is "subsection (b)"). So § 3624(c)(4) only applies to SCA transfers, not to FSA transfers. Section 3632(d)(4)(C), the FSA, provides that the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." And § 3624(g) has no similar limiting language like that found in § 3624(c)(4). Moreover, section 3624(g)(10) specifically provides that the "time limits under *subsections (b) and (c)* shall not apply to prerelease custody under this *subsection*." (emphases added). This further confirms the truism that § 3624(c) is a separate subsection from § 3624(g), and a limitation in subsection (c) that applies by its terms only to subsection (c) has nothing to do with subsection (g). Thus, § 3624(c)(4) has no relevance here.

### C. Mr. Osorio-Calderon has no other adequate remedy.

Finally, if this Court holds that habeas relief is not available, then Mr. Osorio-Calderon has no other adequate remedy. The BOP suggested otherwise in its briefing below, citing *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014). R. Doc. 12, at 7. In *Spencer*, the Eighth Circuit held that the district court "should have liberally construed Spencer's pro se habeas petition and given Spencer the option to pursue the claim under *Bivens*." *Id.* at 471 (citing *Robinson v. Sherrod*, 631 F.3d 839 (7th Cir. 2011)). There are both legal and practical reasons why the suggestion in *Spencer* cannot help Mr. Osorio-Calderon.

46

As for legal impediments, *Bivens* claims are only available for damages. *See generally Egbert v. Boule*, 596 U.S. 482, 491 (2022) (describing *Bivens* as an implied action for damages). Mr. Osorio-Calderon is not seeking damages; he is seeking equitable relief to secure his transfer to prerelease custody. Moreover, *Bivens* claims are based on constitutional violations. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017); *Egbert v. Boule*, 596 U.S. 482, 490-91 (2022). Mr. Osorio-Calderon's claim is statutory; it is based on the FSA's mandate that he be transferred out of prison when the Congressionally-created requirements are met. His claim therefore does lie in a *Bivens* action.

Even if he could craft a constitutional violation from the BOP's refusal to transfer him, and therefore keep him in prison longer than allowed, *Bivens* is disfavored and all but hollowed out. The Supreme Court has only recognized three *Bivens* "causes of action under the Constitution" ever, and none in the last fifty years. *Egbert v. Boule*, 596 U.S. 482, 490-91 (2022). Those causes of action were a Fourth Amendment claim against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), a Fifth Amendment sex-discrimination claim, *Davis v. Passman*, 442 U.S. 228 (1979), and a federal prisoner's inadequate-care claim under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). The Supreme Court case must "exactly mirror[] the facts

47

and legal issues presented" by the petitioner to not arise in a new context. *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019); *see also Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) ("If the test sounds strict, it is.").

Mr. Osorio-Calderon's claim would arise in a new context. *Al-Barr v. Garrett*, No. 2:25CV00025-BSM-JTK, 2025 WL 996416, at *4 (E.D. Ark. Mar. 7, 2025) (holding that movant's claim that a "failure to correct an error in [his] BOP records, which harmed Plaintiff by hindering [his] ability to apply time-earned credits that would all [him] to drop in custody and advance toward freedom," was a new context (internal quotation marks omitted) (last two alterations in original)), *report and recommendation adopted*, No. 2:25-CV-00025-BSM, 2025 WL 993906 (E.D. Ark. Apr. 2, 2025), *appeal dismissed*, No. 25-1763, 2025 WL 2938504 (8th Cir. June 26, 2025); *Cochran v. United States*, No. CV SAG-24-2082, 2025 WL 2418541, at *6 (D. Md. Aug. 21, 2025) ("Here, Plaintiff's 'over-detention' claim" based on his ETCs not being applied at the time the number of ETCs equaled the remainder of his sentence is "entirely dissimilar from the three recognized *Bivens* causes of action." (citing cases)), *appeal docketed*, No. 24–7102 (4th Cir. Nov. 19, 2024).

The Supreme Court has admonished that recognizing a new cause of action under *Bivens* is "a disfavored judicial activity." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). The Eighth Circuit has previously held that incorrect incarceration cases, a similar type of claim to one of

48

overincarceration, cannot be brought under *Bivens*. *Farah v. Weyker*, 926 F.3d 492, 500-502 (8th Cir. 2019) (holding that *Bivens* could not be extended to claims that movants were arrested and charged with a variety of crimes after federally deputized police officer exaggerated and invented facts in reports and deceived prosecutors and grand jury); *Ahmed v. Weyker*, 984 F.3d 564, 568-571 (8th Cir. 2020) (same). Even when the counter considerations in favor of a new context are "preventing innocent people from being illegally detained," the Eighth Circuit has stated it must "refrain from creating [one]." *Farah v. Weyker*, 926 F.3d 492, 502 (8th Cir. 2019) (alteration in original) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)). A *Bivens* claim is not available here. What is far more likely is that Congress foresaw habeas as the primary means by which prisoners would litigate their FSA rights, rather than individual *Bivens* claims.

Practical limitations further render the BOP's suggestion that this action be converted impracticable. Converting or bringing a *Bivens* claim is realistically out of reach for most in custody due to the cost. The filing fee is significantly more expensive than the $5 filing fee required for prisoners who can prove *in forma pauperis* status. *See, e.g.*, *Sichting v. Rardin*, No. 24-CV-3163 (SRN/DTF), 2024 WL 4785007, at *3 (D. Minn. Nov. 14, 2024) ("Nonetheless, the Court agrees with the magistrate judge that the burden of paying a $350 filing fee may be considerable for Mr. Sichting. As such, it makes the most sense to dismiss the petition without

Appellate Case: 25-3090     Page: 59     Date Filed: 12/03/2025 Entry ID: 5584042

prejudice and allow Mr. Sichting to choose whether to file a 42 U.S.C. § 1983 action."). Beyond the cost, the imminent nature of this action—already staying in prison well past the statutory deadline—cautions against protracted civil litigation. It cannot be the case that the BOP can keep someone past the date they must be transferred by law, without any available recourse under habeas, unless the petitioner is able to both pay a large filing fee and quickly litigate a fraught area of the law, just to hopefully achieve the relief the FSA already guarantees them. That is an "extraordinary" scenario.

If this Court finds the District Court's conclusion that it lacks jurisdiction under § 2241 is correct, then it should remand with instructions to grant mandamus relief and order the BOP to transfer Mr. Osorio-Calderon to prerelease custody.

# CONCLUSION

For the foregoing reasons, Mr. Osorio-Calderon requests that this Court reverse the District Court's holding that it lacked jurisdiction and remand with instructions to grant Mr. Osorio-Calderon's petition. Alternatively, Mr. Osorio-Calderon requests that this Court reverse the District Court's holding that the BOP does not have a duty to transfer Mr. Osorio-Calderon under the FSA and remand with instructions to grant Mr. Osorio-Calderon a writ of mandamus securing his transfer.

Respectfully submitted,

DATED: December 3, 2025

*s/ Trevor N. Parkes*

Trevor N. Parkes
Attorney ID No. 0402172
Counsel & Project Director, First Step Act Resource Center
National Association of Criminal Defense Lawyers
1660 L St NW, 12th Floor
Washington, DC 20036
Phone number: (202) 465-7665
Email: tparkes@nacdl.org

*Appointed Counsel for Appellant Jose Osorio-Calderon*

# CERTIFICATE OF COMPLIANCE

The undersigned attorney for Appellant Jose Osorio-Calderon certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. The brief has 11,484 words, proportionally spaced using Times New Roman, 14-point font. The brief was prepared using Word for Microsoft 365. The undersigned attorney also certifies that the brief has been scanned for viruses and, to the best of our ability and technology, believes it is virus-free.


DATED: December 3, 2025                                    _s/ Trevor N. Parkes_

                                                            Trevor N. Parkes

                    _Appointed Counsel for Appellant Jose Osorio-Calderon_

Appellate Case: 25-3090     Page: 62     Date Filed: 12/03/2025 Entry ID: 5584042

## CERTIFICATE OF SERVICE FOR DOCUMENTS FILED USING CM/ECF

I hereby certify that on December 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: December 3, 2025

*s/ Trevor N. Parkes*

Trevor N. Parkes

*Appointed Counsel for Appellant Jose Osorio-Calderon*

Appellate Case: 25-3090　　Page: 63　　Date Filed: 12/03/2025 Entry ID: 5584042