No. 25-3090

**IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT**

JOSE OSORIO-CALDERON,

*Plaintiff-Appellant*,

v.

WARDEN, FCI SANDSTONE,

*Respondent-Appellee.*

On Appeal from the United States District Court for the District of Minnesota (Civ. No. 0:25-00398-LMP/DLM)

# BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA IN SUPPORT OF APPELLANT AND REVERSAL


EMMA ANDERSSON
American Civil Liberties Union Foundation
425 California Street Suite 700
San Francisco, CA 94104
eandersson@aclu.org

TERESA J. NELSON
CATHERINE AHLIN-HALVERSON
American Civil Liberties Union of Minnesota
P.O. Box 14720
Minneapolis, MN 55414
tnelson@aclu-mn.org
cahlin@aclu-mn.org

MATTHEW J. RUBENSTEIN
ABBY OAKLAND
Jones Day
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
(612) 217-8800
mrubenstein@jonesday.com
aoakland@jonesday.com

ALLISON FRANKEL
American Civil Liberties Foundation
125 Broad Street, 18th Floor
New York, NY 10004
afrankel@aclu.org

*Counsel for* Amici Curiae

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, *amici curiae* American Civil Liberties Union and American Civil Liberties Union of Minnesota state that they are nonprofit organizations, that neither has a parent corporation, and that no publicly held corporation owns 10% or more of their stock because they have no stock.

## TABLE OF CONTENTS

**Page**


CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

INTEREST OF THE *AMICI CURIAE* .......... 1

SUMMARY OF THE ARGUMENT .......... 2

ARGUMENT .......... 5

I. Section 2241 Is The Proper Vehicle to Enforce a Right to Placement in Conditional Release. .......... 5

- A. The Supreme Court Has Established Habeas as the Proper Remedy for Unlawful Confinement. .......... 6
- B. Most Courts of Appeals Permit Habeas Challenges to Enforce a Right to Release from Confinement in Prison into Custody in the Community. .......... 12
- C. This Court's Precedent Supports, Rather Than Forecloses, Habeas Jurisdiction over Mr. Osorio-Calderon's Claim. .......... 18
  - 1. District Courts Have Looked to the Wrong Cases in Analyzing Their § 2241 Jurisdiction. .......... 19
  - 2. This Court's Precedent Is Consistent with Habeas Jurisdiction over Mr. Osorio-Calderon's Claim. .......... 23

II. The First Step Act Imposes a Mandatory Duty on the BOP to Transfer Eligible Persons To Prerelease Custody. .......... 26

CONCLUSION .......... 32




Appellate Case: 25-3090 Page: 3 Date Filed: 12/10/2025 Entry ID: 5586869

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*[Redacted] v. Fed. Bureau of Prisons*,
No. 23-cv-5965, 2023 WL 9530181 (S.D.N.Y. Dec. 28, 2023) (R&R), *adopted sub nom. Doe v. Fed. Bureau of Prisons*, 2024 WL 455309 (S.D.N.Y. Feb. 5, 2024) .......... 31

*Boutwell v. Keating*,
399 F.3d 1203 (10th Cir. 2005) .......... 14, 15

*Briones-Pereyra v. Warden*,
No. 23-cv-1718, 2024 WL 4171380 (E.D. Cal. Sept. 12, 2024) .......... 29

*Concepcion v. United States*,
597 U.S. 481 (2022) .......... 1

*Crowe v. Fed. Bureau of Prisons*,
No. 24-cv-3582, 2025 WL 1635392 (D.D.C. June 9, 2025) .......... 31

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020) .......... 1

*Dorsey v. United States*,
567 U.S. 260 (2012) .......... 1

*Edwards v. Lockhart*,
908 F.2d 299 (8th Cir. 1990) .......... 3, 23, 24

*Elwood v. Jeter*,
386 F.3d 842 (8th Cir. 2004) .......... 3, 24, 25, 28

*Fongers v. Garrett*,
No. 24-cv-46, 2024 WL 3625237, at *2 (E.D. Ark. Aug. 1, 2024) (R&R), *adopted*, 2024 WL 4652193 (E.D. Ark. Nov. 1, 2024) .......... 19

*Francis v. Maloney*,
798 F.3d 33 (1st Cir. 2015) .......... 16

*Gagnon v. Scarpelli*,
411 U.S. 778, 791 (1973) .......... 9, 10

*Goldings v. Winn*,
383 F.3d 17 (1st Cir. 2004) .......... 25

*Gonzalez-Fuentes v. Molina*,
607 F.3d 864 (1st Cir. 2010) .......... 12, 13

*Graham v. Broglin*,
922 F.2d 379 (7th Cir. 1991) .......... 11

*Harper v. Young*,
64 F.3d 563 (10th Cir. 1995), *aff'd*, 520 U.S. 143 .......... 15

*Hewitt v. United States*,
606 U.S. 419 (2025) .......... 1

*In re Bonner*,
151 U.S. 242 (1894) .......... 8

*Jones v. Hendrix*,
599 U.S. 465 (2023) .......... 1, 11

*Kimbrough v. United States*,
552 U.S. 85 (2007) .......... 1

*Kingdomware Techs., Inc. v. United States*,
479 U.S. 162 (2016) .......... 28, 29

*Kruger v. Erickson*,
77 F.3d 1071 (8th Cir. 1996) (per curiam) .......... 4, 20, 21

*Kuzmenko v. Phillips*,
No. 25-cv-663, 2025 WL 779743 (E.D. Cal. Mar. 10, 2025) .......... 18

*Levine v. Apker*,
455 F.3d 71 (2d Cir. 2006) .......... 16

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .......... 27

*Magana-Herrera v. Warden FCI Fort Dix*,
No. 25-cv-5848, 2025 WL 2886735 (D.N.J. Oct. 10, 2025) .......... 17

*Mason v. Alatary*,
No. 23-cv-193, 2024 WL 3950643 (N.D.N.Y. Aug. 27, 2024) .............. 18

*McGee v. Martinez*,
627 F.3d 933 (3d Cir. 2010) .................................................... 17

*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020) ........................................................ 27, 30

*Miller v. Whitehead*,
527 F.3d 752 (8th Cir. 2008) ........................................ 3, 17, 25

*Morrissey v. Brewer*,
408 U.S. 471 (1972) ...................................................... passim

*Pinson v. Carvajal*,
69 F.4th 1059, 1068 (9th Cir. 2023) ........................................ 14

*Plyler v. Moore*,
129 F.3d 728 (4th Cir. 1997) ................................................ 13

*Popoola v. Scales*,
No. 25-cv-390, 2025 WL 3473370 (E.D. Va. Dec. 3, 2025) ........... 17, 31

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ...................................................... passim

*Ramirez v. Phillips*,
No. 23-cv-2911, 2023 WL 8878993 (E.D. Cal. Dec. 22, 2023) ........................................................................ 18

*Reaves v. Garrett*,
No. 24-cv-177, 2025 WL 890147, at *2 (E.D. Ark. Mar. 21, 2025) (R&R), *adopted*, 2025 WL 1118580 (E.D. Ark. Apr. 15, 2025) ............................................................ 19, 22

*Roberts v. Cordova*,
No. 25-cv-74, 2025 WL 2823130, at *2 (S.D. Tex. Aug. 15, 2025) (R&R), *adopted*, 2025 WL 2822005 (S.D. Tex. Oct. 3, 2025) ............................................................... 17

*Sichting v. Rardin*,
No. 24-cv-3163, 2024 WL 4785007 (D. Minn. Nov. 14, 2024) ............ 31



Appellate Case: 25-3090 Page: 6 Date Filed: 12/10/2025 Entry ID: 5586869

*Spencer v. Haynes*,
774 F.3d 467 (8th Cir. 2014) .................................................... 4, 20, 21

*United States v. Houck*,
2 F.4th 1082 (8th Cir. 2021) .................................................... 4, 21, 22

*United States v. Latimer*,
991 F.2d 1509 (9th Cir. 1993) ............................................................ 14

*Vasquez v. Strada*,
684 F.3d 431 (3d Cir. 2012) ............................................................... 16

*Wessels v. Houden*,
No. 23-cv-1266, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (R&R), *adopted*, 2023 WL 7168926 (D. Minn. Oct. 31, 2023) ........................................................................................ 20

*Wilkinson v. Dotson*,
544 U.S. 74 (2005) ........................................................................ 11, 12

*Wolff v. McDonnell*,
418 U.S. 539 (1974) ............................................................................. 8

*Woodall v. Fed. Bureau of Prisons*,
432 F.3d 235 (3d Cir. 2005) ......................................................... 13, 14

*Woodley v. Warden, USP Leavenworth*,
No. 24-3053, 2024 WL 2260904 (D. Kan. May 15, 2024) ................... 32

*Woolsey v. Washington*,
No. 25-cv-137, 2025 WL 2598794 (M.D. Ala. Sept. 8, 2025) .............. 18

*Young v. Harper*,
520 US. 143 (1997) ................................................................. 2, 10, 11

**STATUTES**

18 U.S.C.
§ 3582 .................................................................................................. 21
§ 3621 .................................................................................................. 27
§ 3624 ............................................................................................ passim
§ 3632 ................................................................................ 5, 27, 28, 31, 32



Appellate Case: 25-3090 Page: 7 Date Filed: 12/10/2025 Entry ID: 5586869

28 U.S.C. § 2241 ........ 5, 6, 7, 32

Act of Feb. 5, 1867, 14 Stat. 385 ........ 7

Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631-35) ........ 26, 30

**OTHER AUTHORITIES**

28 C.F.R. § 570.20(a) ........ 17

164 Cong. Rec. S7642 (2018) (statement of Sen. Cornyn) ........ 26

164 Cong. Rec. S7745 (2018) (statement of Sen. Blumenthal) ........ 26

164 Cong. Rec. S7746 (2018) (statement of Sen. Cornyn) ........ 26

3 J. Story, Commentaries on the Constitution of the United States § 1333, 206 (1833) ........ 7

3 William Blackstone, Commentaries on the Laws of England 129, 133 (1st ed. 1768) ........ 6, 7



Appellate Case: 25-3090 Page: 8 Date Filed: 12/10/2025 Entry ID: 5586869

## <u>INTEREST OF THE *AMICI CURIAE*[1]</u>

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization that was founded over 100 years ago and is dedicated to the principles of liberty and equality embodied in our nation's Constitution and civil rights laws. The American Civil Liberties Union of Minnesota ("ACLU-MN") is a state affiliate of the ACLU and seeks to promote, protect, and extend the civil liberties and civil rights of people in Minnesota.

*Amici* have regularly appeared as counsel and as *amici curiae* in this nation's courts on a variety of civil-rights issues, including cases involving federal sentencing and habeas corpus. *See, e.g.*, *Hewitt v. United States*, 606 U.S. 419 (2025); *Jones v. Hendrix*, 599 U.S. 465 (2023); *Concepcion v. United States*, 597 U.S. 481 (2022); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020); *Dorsey v. United States*, 567 U.S. 260 (2012); *Kimbrough v. United States*, 552 U.S. 85 (2007).

---

[1] No party's counsel authored any part of this brief, and no party, party's counsel, or any person other than *amici* or their counsel contributed any money that was intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.



Appellate Case: 25-3090 Page: 9 Date Filed: 12/10/2025 Entry ID: 5586869

## SUMMARY OF THE ARGUMENT

The Supreme Court has explained that habeas is "the specific instrument" to challenge unlawful imprisonment. *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973). Habeas relief is thus available to shorten the duration of *confinement in prison*, even if it would not also shorten the duration of *custody* or the overall sentence. As the Supreme Court has repeatedly recognized, confinement in prison differs qualitatively from forms of custody like parole, probation, or other conditional release programs. Although those on conditional release remain in legal custody and may be subject to strict restrictions and compliance regimes, they live outside prison walls and enjoy "many of the core values of unqualified liberty." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). For that reason, the Supreme Court has adjudicated habeas petitions seeking conditional release onto parole due to accumulation of good-time credits, *Preiser*, 411 U.S. 475, and challenging unlawful returns from conditional release programs to prison, *Morrissey*, 408 U.S. at 471; *Young v. Harper*, 520 US. 143 (1997). Prerelease custody under the First Step Act ("FSA") is materially indistinguishable from the forms of conditional release these cases considered. Habeas jurisdiction is thus appropriate here too.



Appellate Case: 25-3090 Page: 10 Date Filed: 12/10/2025 Entry ID: 5586869

Most courts of appeals to face the issue have recognized as much. In these circuits, claims that a person has a right to placement in a conditional release program sound in habeas. These circuits properly understand that such claims do not merely challenge conditions of confinement, and that the quantum change in custody between prison and conditional release supports habeas jurisdiction, even where a request for transfer between prisons would not. Multiple courts have thus adjudicated habeas petitioners' challenges to the failure of the Bureau of Prisons ("BOP") to grant them conditional release from prison onto prerelease custody as the FSA requires.

Although this Court has not squarely decided the issue, its precedent supports the same result. On at least three occasions, this Court has adjudicated petitions challenging a restriction on access to conditional release. *Edwards v. Lockhart*, 908 F.2d 299 (8th Cir. 1990); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008). These holdings follow logically from the Supreme Court's precedent, are consistent with the majority position among the circuits, and should have assured the District Court of its jurisdiction here.

Instead, the District Court, like numerous others within this circuit, concluded that *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) (per curiam), *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014), and *United States v. Houck*, 2 F.4th 1082 (8th Cir. 2021), foreclose habeas jurisdiction over claims like Mr. Osorio-Calderon's. Those cases, however, are inapposite. *Kruger* involved the taking of a prisoner's blood sample. 77 F.3d at 1073. *Spencer* challenged the use of four-point restraints by prison officials. 774 F.3d at 468-69. And *Houck* involved a district court's *discretionary* decision under a different statutory provision on a motion for compassionate release. 2 F.4th at 1083; *see* 18 U.S.C. § 3624(c)(2). None of these cases said anything at all about mandatory transfers out of prison onto conditional release under the FSA. Rather than stretch those cases beyond recognition, the District Court should have followed the path illuminated by *Edwards*, *Elwood*, and *Miller*, and held that it had jurisdiction to consider Mr. Osorio-Calderon's habeas petition.

And having done so, the District Court should have gone on to recognize the merits of Mr. Osorio-Calderon's claim. The FSA creates an enforceable right to conditional release from prison in circumstances like those present in this case. Specifically, the FSA requires the BOP to



Appellate Case: 25-3090 Page: 12 Date Filed: 12/10/2025 Entry ID: 5586869

move eligible persons to supervised release or "prerelease custody"—meaning either home confinement or a residential reentry center ("RRC")—when their earned time credits equal the remaining time on their sentence. The Act repeatedly uses mandatory language: Earned time credits "*shall* be applied toward time in prerelease custody or supervised release" and the BOP "*shall* transfer eligible prisoners … into prerelease custody or supervised release" when the eligibility requirements are met. 18 U.S.C. § 3632(d)(4)(C) (emphases added).

Because he is otherwise eligible and his earned time credits exceed the time remaining on his sentence, Mr. Osorio-Calderon is entitled under the FSA to serve the remainder of his sentence in prerelease custody. This Court should hold that the BOP's refusal to release Mr. Osorio-Calderon from prison is unlawful.

## ARGUMENT

### I. SECTION 2241 IS THE PROPER VEHICLE TO ENFORCE A RIGHT TO PLACEMENT IN CONDITIONAL RELEASE.

A claim to a statutory right to release from prison onto conditional release is cognizable in a habeas petition brought under 28 U.S.C. § 2241. That statute permits a person who is "in custody in violation of the Constitution or laws or treaties of the United States" to petition for

release. 28 U.S.C. § 2241(c)(3). Such a habeas petition may challenge the lawfulness of "physical confinement" and may request "either immediate release from that confinement or the shortening of its duration." *Preiser*, 411 U.S. at 489. This is so even if the petitioner would legally remain in "custody" in the *community* after release from *prison*. *See id.* at 487. In light of that principle, Supreme Court precedent, the weight of authority from other circuits, and this Court's most apposite cases all support the same result—that habeas encompasses claims for release like Mr. Osorio-Calderon's here.

### A. The Supreme Court Has Established Habeas as the Proper Remedy for Unlawful Confinement.

To understand the scope of habeas, the Supreme Court routinely considers its historical uses and purposes. *See, e.g.*, *Preiser*, 411 U.S. at 484. This "most celebrated writ in the English law" secured the "natural inherent right" of personal liberty that "could not be surrendered or forfeited" without a basis in law. 3 William Blackstone, Commentaries on the Laws of England 129, 133 (1st ed. 1768). English law required the government to justify "the causes[] and the extent" of a prisoner's detention, and the "Great Writ" permitted a court to examine the grounds for his confinement. *Id.* Habeas thus was a means to "remov[e] the injury

of unjust and illegal confinement." *Id.* at 137 (emphasis omitted). Put another way, habeas was the "remedy to ascertain ... whether any person is rightfully in confinement or not." 3 J. Story, Commentaries on the Constitution of the United States § 1333, 206 (1833).

By the time of our country's founding, the writ had become "an integral part of our common-law heritage." *Preiser*, 411 U.S. at 485. After the Civil War, Congress made the writ statutorily available in "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, 14 Stat. 385. Then, in 1948, Congress codified the general grant of habeas jurisdiction at 28 U.S.C. § 2241 and established a motion vehicle for federal prisoners to attack their convictions in § 2255. *See generally* Richard Fallon, et al., Hart and Weschler's the Federal Courts and the Federal System 1197 (7th ed. 2015). These statutory codifications left unchanged habeas's core purpose—contesting the lawfulness of one's confinement or custody. And as the Supreme Court has repeatedly made clear, habeas jurisdiction extends to cases, like this one, where a prisoner claims a statutory right to release from physical confinement to a qualitatively different form of custody.

In *Preiser v. Rodriguez*, for example, the petitioners alleged that prison administrators wrongfully deprived them of good-time credits and that, accordingly, "once their conditional-release date had passed, any further detention of them in prison was unlawful." 411 U.S. at 487. They sought to compel restoration of those credits, which would have resulted in their immediate release from prison to parole. *Id.* at 476-77. The Court explained that, "in a situation like this," a habeas remedy "*clearly applies*" to a prisoner's "attack [on] the validity of his confinement." *Id.* at 489 (emphasis added). Habeas, after all, encompasses a challenge to a prisoner's "physical confinement itself" where it "seeks either immediate release from that confinement or the shortening of its duration." *Id.* And it has historically included situations where a prisoner argues "that he is unlawfully confined in the wrong institution," *id.* at 486 (citing *In re Bonner*, 151 U.S. 242 (1894)), "or that his parole was unlawfully revoked, causing him to be reincarcerated in prison," *id.* (citing *Morrissey*, 408 U.S. at 471). Accordingly, the *Preiser* Court concluded that a claim for restoration of good time credits was "a proper subject for a federal habeas corpus proceeding." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Notably, habeas was appropriate even though the



Appellate Case: 25-3090 Page: 16 Date Filed: 12/10/2025 Entry ID: 5586869

individuals would remain in "custody" in the community on parole upon release from prison. *See Preiser*, 411 U.S. at 479.

Nor does *Preiser* stand alone among the Supreme Court's cases in recognizing that habeas is the right mechanism to challenge the Government's allegedly unlawful decision to confine a petitioner in prison rather than to permit parole, probation, or some other form of conditional release. As the Court has explained, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty." *Morrissey*, 408 U.S. at 482. Although parolees remain in "custody," they, for example, "can be gainfully employed and [are] free to be with family and friends and to form the other enduring attachments of normal life," which makes their "condition … very different from that of confinement in a prison." *Id.* Accordingly, the Court permitted a group of petitioners in *Morrissey* to use habeas to challenge the revocation of their parole and to seek release from prison onto parole. *Id.* at 474. Likewise, the Court held in *Gagnon v. Scarpelli* that a petitioner challenging the revocation of his probation as unlawful, and seeking release from prison onto probation, "was entitled to a writ of habeas corpus." 411 U.S. 778, 791 (1973).

In other words, although neither parole nor probation ends a sentence, both shorten the duration of confinement *in prison*. *See id.* at 782. That is enough to implicate the Court's habeas jurisdiction. *Morrissey*, 408 U.S. at 477-78 ("The essence of parole is release from prison, before the completion of sentence…."); *Gagnon*, 411 U.S. at 782 n.3 (explaining that probation and parole are "constitutionally indistinguishable" despite "minor differences").

If any doubt about the ability to use habeas in such cases remained, the Court's unanimous decision in *Young v. Harper* would dispel it. *See* 520 U.S. 143. There, the petitioner brought a habeas claim based on Oklahoma's revocation of his placement in preparole—a program that "conditionally released" eligible inmates "whenever the population of the prison system exceeded 95% of its capacity." *Id.* at 145-46. Oklahoma opposed the habeas petition on the grounds that the petitioner "remained within the custody of the Department of Corrections" and that the "reincarceration of a preparolee was nothing more than a transfer to a higher degree of confinement," in the same vein as a "transfer[] within the prison setting." *Id.* at 148-49. The Court disagreed, explaining that preparole shared the "essence of parole"—that is, "release from prison,



Appellate Case: 25-3090 Page: 18 Date Filed: 12/10/2025 Entry ID: 5586869

before the completion of sentence, on the condition that the prisoner abide by certain rules …." *Id.* at 147 (quoting *Morrissey*, 408 U.S. at 477); *see also id.* at 148 (noting that, while on preparole, the petitioner had "kept his own residence," "maintained a job," and "lived a life generally free of the incidents of imprisonment"). The Court thus granted the habeas petition and restored the movant to preparole. *See id.* at 146-47.

In short, as Justice Scalia recognized, the Supreme Court's cases are sensibly read to establish that the scope of "permissible habeas relief … includes ordering a 'quantum change in the level of custody,' … such as release from incarceration to parole." *Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring) (quoting *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)); *see also Jones v. Hendrix*, 599 U.S. 465, 475 (2023) (recognizing § 2241 jurisdiction to challenge "being detained in a place or manner not authorized by the sentence" or that a petitioner "has unlawfully been denied parole or good-time credits"). As Mr. Osorio-Calderon has explained, the pre-release custody to which he is entitled represents just this sort of "quantum change in the level of custody." Appl't.Br.24-25; *see also infra* at 16-17. His claim thus sounds in habeas.

### B. Most Courts of Appeals Permit Habeas Challenges to Enforce a Right to Release from Confinement in Prison into Custody in the Community.

Most of the courts of appeals to have directly confronted the issue have correctly interpreted the Supreme Court's habeas cases to mean that jurisdiction exists for claims seeking to enforce a right to release from incarceration into custody in the community. As Justice Scalia recognized, these courts essentially ask whether the movant is claiming entitlement to a non-prison setting that constitutes a "quantum change in the level of custody." *Wilkinson*, 544 U.S. at 86 (Scalia, J., concurring). Where, as here, release would allow the petitioner to live outside of prison, obtain gainful employment, spend time with loved ones, attend religious services, and otherwise reintegrate into the community, most courts have concluded that habeas is appropriate.

For example, the First Circuit has held that a claim of entitlement to participate in an "electronic supervision program" ("ESP") in which prisoners serve the last portion of their sentences with an ankle monitor sounds in habeas. *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 870, 873-74 (1st Cir. 2010). That court aptly explained that "the difference between the ESP here and incarceration in a prison can fairly be



Appellate Case: 25-3090 Page: 20 Date Filed: 12/10/2025 Entry ID: 5586869

described as a quantum change in the level of custody." *Id.* at 873. In language reminiscent of the Supreme Court's description of the difference between conditional release on one hand, and prison on the other, the First Circuit observed that ESP participants were "able to live with family members, work daily jobs, attend church, and reside in their own homes rather than in an institutional setting." *Id.* at 873-74.

The Fourth Circuit similarly held that a petition brought by those "assert[ing] an entitlement to serve" the remainder "of their sentences on supervised furlough" was "properly considered in habeas" because the program was "virtually indistinguishable from parole." *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997). After all, the court explained, it was already "well settled that challenges to the fact or length of *confinement* are properly considered in the context of habeas corpus," even if *custody* in the community would continue. *Id.* (emphasis added).

The Third Circuit has likewise exercised habeas jurisdiction where a petitioner claimed that BOP impermissibly failed to release him from prison to a community corrections center (halfway house) for the remainder of his sentence. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241-43 (3d Cir. 2005). The court explained that this petition went



Appellate Case: 25-3090 Page: 21 Date Filed: 12/10/2025 Entry ID: 5586869

beyond seeking "a garden variety prison transfer" because "[c]arrying out a sentence through detention in a [community corrections center] is very different from carrying out a sentence in an ordinary penal institution." *Id.* at 243; *see also id.* (citing approvingly a description of "community confinement [as] 'qualitatively different' from confinement in a traditional prison" (quoting *United States v. Latimer*, 991 F.2d 1509, 1513 (9th Cir. 1993))).

The Ninth Circuit, for its part, recognized in *Pinson v. Carvajal* the Third Circuit's holding in *Woodall* that "an action under § 2241 would lie where the prisoner challenged that his detention would be carried out in 'an ordinary penal institution' rather than a community corrections center." 69 F.4th 1059, 1068 (9th Cir. 2023) (citing *Woodall*, 432 F.3d at 243). In doing so, it explained that *Woodall* involved a proper habeas "challenge to the location of detention" because it sought placement in community confinement. *Id.*

The Tenth Circuit, too, has made clear that "habeas is not limited to those claims that, if successful, would lead to the prisoner's *unconditional* release from confinement." *Boutwell v. Keating*, 399 F.3d 1203, 1209 (10th Cir. 2005). Thus, that court exercised jurisdiction over

a habeas petition challenging Oklahoma's denial of participation in a preparole program under which the petitioner would have been "release[d] … before the expiration of his sentence and allowed … to maintain a residence and job." *Id.* at 1207. After examining the features of the preparole program, the court rejected the state's characterization of the petition as a "conditions of confinement" claim because the program was more like parole and less like a transfer between minimum- and maximum-security prisons. *Id.* at 1209-10. The "fundamental change that result[ed] from PPCS placement" rendered the action a "challenge to the fact, rather than to a condition, of an inmate's confinement" and thus cognizable under § 2241. *Id.* at 1210.

Not only do these circuits focus their analysis on the qualitative differences between forms of custody, they also regularly acknowledge that home confinement and RRC placement—the forms of conditional release that prerelease custody under the FSA involves—each meet that test as compared to prison. *See Harper v. Young*, 64 F.3d 563, 566-67 (10th Cir. 1995) ("a prisoner release program which permits a convict to exist, albeit conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of



Appellate Case: 25-3090 Page: 23 Date Filed: 12/10/2025 Entry ID: 5586869

institutional confinement"), *aff'd*, 520 U.S. 143; *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015) (noting that § 2241 is proper "to challenge placement (or lack thereof) in a community confinement center"); *Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012) (determining that a prisoner "may resort to federal habeas corpus to challenge a decision to limit his RRC placement"); *see also Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) [] distinguish [RRCs] from other BOP penal facilities").

Although these cases did not arise in the First Step Act context, FSA prerelease custody shares the defining features of the forms of non-prison custody at issue in those cases. Those serving a sentence in FSA home confinement serve their sentence from home. 18 U.S.C. § 3624(g)(2)(A)(i)(II)(aa)-(gg). They may "perform a job" and "community service"; "participate in evidence-based recidivism reduction programming," "crime victim restoration activities," and "family-related activities that facilitate [their] successful reentry"; receive medical care in the community; and "attend religious activities." *Id.* RRCs (formerly

labeled community confinement centers, *see Miller*, 527 F.3d at 754) also differ fundamentally from prison in that they allow those serving sentences to live outside of prison walls, obtain gainful employment, visit with loved ones, and engage in community service, vocational training, and other educational programs. *See* 28 C.F.R. § 570.20(a).

Scant surprise, then, that district courts across the country have repeatedly found that challenges involving FSA time credits and prerelease custody are cognizable under § 2241. *See, e.g.*, *Popoola v. Scales*, No. 25-cv-390, 2025 WL 3473370, at *7 (E.D. Va. Dec. 3, 2025) (exercising § 2241 jurisdiction because "detention in a halfway house is very different from carrying out a sentence in an ordinary penal institution" (quoting *McGee v. Martinez*, 627 F.3d 933, 935 (3d Cir. 2010))); *Magana-Herrera v. Warden FCI Fort Dix*, No. 25-cv-5848, 2025 WL 2886735, at *3-4 (D.N.J. Oct. 10, 2025) (explaining that "§ 2241 jurisdiction is available where the petitioner challenges the BOP's denial of placement in a prerelease setting such as an RRC or HC"); *Roberts v. Cordova*, No. 25-cv-74, 2025 WL 2823130, at *2 (S.D. Tex. Aug. 15, 2025) (R&R), *adopted*, 2025 WL 2822005 (S.D. Tex. Oct. 3, 2025) ("§ 2241 is the appropriate vehicle" to challenge BOP's failure to release petitioner to

prerelease custody because that challenge goes to "prison authorities' determination of the duration of his sentence"); *Woolsey v. Washington*, No. 25-cv-137, 2025 WL 2598794 (M.D. Ala. Sept. 8, 2025) (finding challenge to placement in prerelease custody under FSA appropriate under § 2241); *Kuzmenko v. Phillips*, No. 25-cv-663, 2025 WL 779743, at *2-3 (E.D. Cal. Mar. 10, 2025) (explaining that transfer from prison to prerelease custody qualifies as "immediate or earlier relief from confinement" for habeas jurisdiction purposes); *Mason v. Alatary*, No. 23-cv-193, 2024 WL 3950643 (N.D.N.Y. Aug. 27, 2024) (§ 2241 available to challenge unlawful revocation from home confinement into prison); *Ramirez v. Phillips*, No. 23-cv-2911, 2023 WL 8878993, at *2 (E.D. Cal. Dec. 22, 2023) ("[a] defendant may challenge the BOP's computation of FSA credits" via § 2241 because relief "would necessarily lead to speedier release").

### C. This Court's Precedent Supports, Rather Than Forecloses, Habeas Jurisdiction over Mr. Osorio-Calderon's Claim.

Although this circuit's district courts have coalesced around a lack of jurisdiction to resolve § 2241 claims seeking to vindicate a right to FSA prerelease custody, they have done so largely by ignoring the contrary

authority cited above. Instead, they have overread inapposite cases from this Court to conclude that a person seeking prerelease custody is requesting no more than a transfer from one place of imprisonment to another. But this Court's most on-point authority is fully consistent with the reasoning of Supreme Court precedent, the framework of most of the other circuits, and the repeated district court holdings applying that framework to find claims to prerelease custody cognizable under § 2241. This Court should correct the district courts' misapprehension about the scope of their habeas jurisdiction.

#### 1. District Courts Have Looked to the Wrong Cases in Analyzing Their § 2241 Jurisdiction.

In a series of § 2241 cases—many brought pro se and lacking the benefit of counseled, adversarial briefing—district courts in this circuit have concluded that they lack jurisdiction over claims to entitlement to FSA prerelease custody. Those courts have concluded that such prerelease custody "does not alter the fact or duration of imprisonment" and instead "changes only the *place* where a sentence is served." *Reaves v. Garrett*, No. 24-cv-177, 2025 WL 890147, at *2 (E.D. Ark. Mar. 21, 2025) (R&R), *adopted*, 2025 WL 1118580 (E.D. Ark. Apr. 15, 2025); *see also, e.g.*, *Fongers v. Garrett*, No. 24-cv-46, 2024 WL 3625237, at *2 (E.D.



Appellate Case: 25-3090 Page: 27 Date Filed: 12/10/2025 Entry ID: 5586869

Ark. Aug. 1, 2024) (R&R) (similar), *adopted*, 2024 WL 4652193 (E.D. Ark. Nov. 1, 2024); *Wessels v. Houden*, No. 23-cv-1266, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (R&R) ("The Court has no habeas jurisdiction in this matter because the only relief that Wessels seeks is a transfer to prerelease custody."), *adopted*, 2023 WL 7168926 (D. Minn. Oct. 31, 2023). The District Court here reached the same conclusion. *See* Appl't.Add.25-26; R. Doc. 27, at 5-6 (collecting cases).

Most of these decisions rely heavily on this Court's decisions in *Kruger*, 77 F.3d 1071, and *Spencer*, 774 F.3d 467, for the proposition that a prisoner may bring habeas claims to challenge only "the validity of his conviction or the length of his detention." True as that general principle may be, these cases leave unanswered the question of whether a request for release from prison and mandatory placement in a prerelease program challenges the "length of [a prisoner's] detention," or, put another way, the duration of his confinement.

In *Kruger*, the petitioner brought a claim under § 2254 over prison officials taking a blood sample for a DNA databank without his consent. 77 F.3d at 1073. Because the petitioner was "not challenging the validity of his conviction or the length of his detention, such as loss of good



Appellate Case: 25-3090 Page: 28 Date Filed: 12/10/2025 Entry ID: 5586869

time, … a writ of habeas corpus [wa]s not the proper remedy." *Id.* (citing *Preiser*, 411 U.S. at 499). This self-evidently has nothing to do with whether various kinds of custody differ significantly enough from prison to support habeas jurisdiction.

Likewise, *Spencer* did not deal with release from incarceration, or a change in the type of custody. Instead, that case involved a challenge to prison officials' use of four-point restraints. 774 F.3d at 469. The Court explained that habeas was an improper vehicle for that claim because Spencer did not "seek a remedy that would result in an earlier release from prison." *Id.* at 469-70. As in *Kruger*, the petitioner in *Spencer* was neither challenging the validity of his imprisonment nor requesting to be freed from prison, so the Court did not address a petition seeking "release from prison" or analyze what constitutes a challenge to a detention's duration.

*United States v. Houck* is likewise inapposite. *Houck* affirmed the dismissal of a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because the prisoner failed to exhaust his administrative remedies—it said nothing about habeas at all. 2 F.4th at 1085. Additionally, the petitioner there sought release through a *discretionary*



Appellate Case: 25-3090 Page: 29 Date Filed: 12/10/2025 Entry ID: 5586869

form of home confinement under the CARES Act, which aimed to alleviate COVID-19 related concerns about incarcerated people's safety and health. *Id.*; *see* 18 U.S.C. 3624(c)(2) (BOP "*may* … place a prisoner in home confinement" (emphasis added)). Given BOP's discretion under the CARES Act, the Court determined that it lacked authority to order the petitioner placed on home confinement. *Houck*, 2 F.4th at 1085. Here, in contrast, the FSA's prerelease custody regime under 18 U.S.C. 3624(g) is mandatory. *See infra* Section II. Moreover, although district courts have latched onto it, *see, e.g.*, *Reaves*, 2025 WL 890147, at *2, *Houck's* passing reference to home confinement as a "place of imprisonment," 2 F.4th at 1085—without analysis of the distinctions between home confinement and prison and in a context where such distinctions made no difference—has no controlling force in an entirely separate context where it matters. In short, *Houck* is doubly inapplicable, and certainly not controlling.

The decision below reflected these defects. It cited *Kruger*, *Spencer*, and *Houck* as binding and foreclosing § 2241 jurisdiction over Mr. Osorio-Calderon's claim. But just like the prior district court decisions that



Appellate Case: 25-3090 Page: 30 Date Filed: 12/10/2025 Entry ID: 5586869

rested on these cases, it failed to grapple with the materially different contexts in which they arose.

### 2. This Court's Precedent Is Consistent with Habeas Jurisdiction over Mr. Osorio-Calderon's Claim.

Although no case from this Court has explicitly held that claims of entitlement to prerelease custody are cognizable in a § 2241 habeas suit, existing Eighth Circuit precedent fits comfortably with a conclusion that Mr. Osorio-Calderon's habeas petition is jurisdictionally proper.

Indeed, *Edwards v. Lockhart*, 908 F.2d at 299, parallels the case law from other jurisdictions that permits such petitions. In that case, Arkansas had instituted the "814 program," which facilitated the "reintegration of selected inmates from a prison environment back into communities" through "release[] from confinement." *Id.* at 299-300. Those released under the program could "live and pursue studies or work outside corrections facilities under the close supervision of a parole officer." *Id.* at 300. After the petitioner, Edwards, was selected to participate in the 814 program and then had that participation revoked, she filed a habeas petition seeking reinstatement. *Id.* at 299-300. The magistrate exercised jurisdiction and found in Edwards' favor, ordering



Appellate Case: 25-3090 Page: 31 Date Filed: 12/10/2025 Entry ID: 5586869

the state to reinstate her and warning that a writ of habeas corpus would issue if it failed to do so. *Id.* at 299. This Court affirmed. *Id.*

Although the parties never contested jurisdiction and the Court did not explicitly analyze it, the decision emphasized—as have cases from other courts of appeals on the jurisdictional issue—that relief would result in her transfer from prison to non-prison custody. *Id.* at 302 (explaining that the 814 program resulted in Edwards' "release[] from institutional life into society").

Similarly, in *Elwood v. Jeter*, this Court reversed the denial of a § 2241 petition challenging a Government refusal to allow for a form of conditional release. Specifically, the petitioner challenged a newly-implemented BOP policy that limited placement in a community corrections center to the "lesser of the last ten percent of the [inmate's] sentence and the last six months of the sentence." 386 F.3d at 844-45. Under this policy, Elwood was eligible for CCC placement for only the last four months of his sentence. *Id.* at 845. Under the prior policy, Elwood could have been placed in a CCC for the final six months of his sentence, even though six months exceeded ten percent of his overall sentence. *Id.* Without any apparent doubt that it had jurisdiction—and

even though *Kruger* was already on the books—the Court considered Elwood's § 2241 petition on the merits. And in doing so, it accepted Elwood's argument that BOP's policy violated its statutory obligation to "take steps to facilitate a smooth re-entry for prisoners into the outside world." *Id.* at 846 (quoting *Goldings v. Winn*, 383 F.3d 17, 23 (1st Cir. 2004)).

Finally, in *Miller v. Whitehead*, a petitioner challenged a BOP regulation adopted in the wake of *Elwood* that limited transfers to RRCs to the final ten percent of a prisoner's term through a "categorical exercise" of BOP's statutory discretion over prisoner placement. 527 F.3d at 755. Although the Court ultimately denied relief, it did so because it concluded that BOP's exercise of discretion was permissible under the statute for reasons not relevant to Mr. Osorio-Calderon's claim. *Id.* at 756-58. And critically, yet again, this Court did not question its jurisdiction before deciding the case on the merits.

As it did in these cases, this Court should consider Mr. Osorio-Calderon's § 2241 petition on the merits.

## II. THE FIRST STEP ACT IMPOSES A MANDATORY DUTY ON THE BOP TO TRANSFER ELIGIBLE PERSONS TO PRERELEASE CUSTODY.

Congress passed the FSA in 2018 to better prepare prisoners for reentry into the community and thereby reduce recidivism. *See* 164 Cong. Rec. S7745 (2018) (statement of Sen. Blumenthal) ("draconian prison terms provide few incentives for prisoners to prepare for reentry, and that is the gap the [FSA] seeks to address"); 164 Cong. Rec. S7642 (2018) (statement of Sen. Cornyn) (noting that the FSA "allows prisons to help criminals transform their lives … so that we are not perpetuating the cycle of crime that continues to plague communities across the country"). The FSA does so by expanding prisoners' access to non-custodial placement while conditioning eligibility for such placement on participation in rehabilitative programming. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631-35).

A crucial element of the FSA, then, is its creation of a fixed, predictable incentive for people to attend recidivism reduction programs—prerelease custody. *See* 164 Cong. Rec. S7746 (2018) (statement of Sen. Cornyn) ("the incentives in this program are really important"). The FSA thus implements a system in which people in

prison may participate in "evidence-based recidivism reduction" ("EBRR") programs and "productive activities" ("PAs"), which earn them "incentives and rewards for successful participation." 18 U.S.C. §§ 3621(h), 3632(a)(6)-(d). Those "who successfully complete[]" qualified programming "shall earn time credits" of ten days for every 30 days of participation and, for people deemed minimum or low risk to recidivate, an additional five days for every 30 days of participation. *Id.* § 3632(d)(4)(A). The FSA mandates that "[t]ime credits earned … by prisoners who successfully participate in" EBRR programs or PAs "shall be applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). It further provides that "[t]he Director of the Bureau of Prisons shall transfer eligible prisoners … into prerelease custody or supervised release." *Id.*

Through these provisions, the FSA requires the BOP to transfer eligible prisoners into prerelease custody or supervised release when their earned time credits equal the remainder of their sentence. The "first sign" that the FSA "impose[s] an obligation is its mandatory language: 'shall.'" *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 310-11 (2020); *see also Lexecon Inc. v. Milberg Weiss Bershad*

*Hynes & Lerach*, 523 U.S. 26, 35 (1998) (noting that "shall" typically "creates an obligation impervious to … discretion"). "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 479 U.S. 162, 171 (2016); *see also Elwood*, 386 F.3d at 846-47 (agreeing "that the word 'shall' bestows a duty on the BOP" and that interpreting it otherwise "would be to ignore the obligatory nature of the word 'shall'"). And notably, Congress chose not to include qualifying language in the FSA such as "to the extent practicable," which it had used in certain previously existing provisions to accord BOP discretion in the choice of whether to transfer people into prerelease custody. *See* 18 U.S.C. § 3624(c)(1). That congressional choice must be respected.

Additional statutory context further confirms that the FSA's use of "shall" imposes a mandatory duty of placement in prerelease custody. Section 3624(g), which § 3632(d)(4)(C) incorporates by reference, provides that BOP "*may* transfer [a] prisoner to begin [a] term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3) (emphasis added). The immediately preceding subsection, by contrast,



Appellate Case: 25-3090 Page: 36 Date Filed: 12/10/2025 Entry ID: 5586869

instructs that "[a] prisoner *shall* be placed in prerelease custody." *Id.* § 3624(g)(2) (emphasis added). That congressional choice to vary language must also be given effect. *Kingdomware Techs., Inc.*, 579 U.S. at 172 ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty.").

The interplay of these provisions makes clear that BOP has some discretion over *how* to apply earned time credits to permit an earlier transition from prison to conditional release, but no discretion over *whether* or *when* to do so. That is, a person who has met the requirements under the FSA and whose time credits equal the remaining sentence must be transferred to prerelease custody or supervised release. The BOP retains its usual discretion to designate the form of conditional release on which the balance of the sentence will be served (e.g., in an RRC, in home confinement, or, in some circumstances, on supervised release). But it has no discretion to refuse to release the person from prison. *See Briones-Pereyra v. Warden*, No. 23-cv-1718, 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024) ("application of [earned time

credits] to eligible prisoners who have earned them is *required*, not discretionary, under the [FSA]").[2]

More concretely and hypothetically, if Person A has accumulated 500 credits, has 500 days left on his sentence, and is otherwise eligible for prelease custody, the FSA requires the BOP to apply all 500 of these credits to Person A's sentence. The BOP may do so, for example, by placing him in home confinement or an RRC for all 500 days, or it could allow him to start supervised release one year early and use his remaining 135 credits for 135 days in home confinement or an RRC before his term of supervised release begins. But what it may not do is refuse to effectuate all 500 of the credits.

---

[2] Nor can resource constraints justify noncompliance with this statutory duty. Again using the mandatory "shall," the FSA commands that the "Director of the Bureau of Prisons shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." 18 U.S.C. § 3624(g)(11); *see also* Pub. L. No. 115-391, 132 Stat. at 5213 (requiring the Comptroller General to perform routine audits that analyze, among other things, "[w]hether the Bureau of Prisons transfers prisoners to prerelease custody or supervised release as soon as they are eligible for such a transfer under section 3624(g) of title 18"). That additional use of the mandatory "shall" only further reinforces the statute's mandatory nature. *See, e.g.*, *Me. Cmty. Health Options*, 590 U.S. at 310 (noting repeated used of "shall").

And indeed, there has been a "consistent line of cases from across the country holding that 18 U.S.C. § 3632(d)[(4)](C) does not afford the BOP any discretion in releasing eligible prisoners" and that "the BOP may not add additional requirements beyond the definition of eligible prisoners provided for in the statute." *[Redacted] v. Fed. Bureau of Prisons*, No. 23-cv-5965, 2023 WL 9530181, at *5 (S.D.N.Y. Dec. 28, 2023) (R&R), *adopted sub nom. Doe v. Fed. Bureau of Prisons*, 2024 WL 455309 (S.D.N.Y. Feb. 5, 2024); *but see Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392 (D.D.C. June 9, 2025) (finding that the FSA does not displace BOP discretion on prison placement). These courts have pointed to the same considerations: the plain language, statutory context, and congressional purpose of the FSA. *See, e.g.*, *Popoola*, 2025 WL 3473370, at *8 ("the mandatory language of the FSA's time credit scheme expressly indicates Congress's intent to require the BOP to administer time-credits under the FSA"); *Sichting v. Rardin*, No. 24-cv-3163, 2024 WL 4785007, at *3 (D. Minn. Nov. 14, 2024) ("Section 3632(d) does not include discretionary language. It simply states that the BOP 'shall transfer … into prerelease custody or supervised release' a prisoner who has 'earned time credits … equal to the remainder of [his] term of



Appellate Case: 25-3090 Page: 39 Date Filed: 12/10/2025 Entry ID: 5586869

imprisonment' and met other eligibility requirements." (alteration in original) (quoting 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1))); *Woodley v. Warden, USP Leavenworth*, No. 24-3053, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) ("Under a plain reading of this provision of the FSA, which includes the word 'shall', the BOP is *required* to transfer a prisoner to prerelease custody or supervised release if the prisoner is 'eligible' as determined under Subsection 3624(g).").

These courts have it right: The FSA imposes a mandatory duty on the BOP to transfer an eligible person into prerelease custody when his or her earned time credits equals the remainder of the sentence. Correspondingly, eligible people have a statutory right to release from prison to prerelease custody. Mr. Osorio-Calderon is just such a person with just such a right. Appl't.Br.39-46.

## CONCLUSION

The Court should reverse and hold that Mr. Osorio-Calderon's habeas corpus petition is cognizable under 28 U.S.C. § 2241. In doing so, it should conclude that the Government has violated its statutory obligations and reverse the District Court's denial of relief.

Dated: December 10, 2025

Respectfully submitted,

*s/Matthew J. Rubenstein*

MATTHEW J. RUBENSTEIN
ABBY OAKLAND
Jones Day
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
(612) 217-8800
mrubenstein@jonesday.com
aoakland@jonesday.com

ALLISON FRANKEL
American Civil Liberties
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
afrankel@aclu.org

EMMA ANDERSSON
American Civil Liberties Union
Foundation
425 California Street Suite 700
San Francisco, CA 94104
eandersson@aclu.org

TERESA J. NELSON
CATHERINE AHLIN-HALVERSON
American Civil Liberties
Union of Minnesota
P.O. Box 14720
Minneapolis, MN 55414
tnelson@aclu-mn.org
cahlin@aclu-mn.org

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(G), the undersigned attorney for amici curiae certifies that the foregoing brief: (i) complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,462 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); (ii) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Century Schoolbook; and (iii) complies with Eighth Circuit Local Rule 28A(h) because the brief has been scanned for viruses and is virus-free.

Dated: December 10, 2025 *s/ Matthew J. Rubenstein*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 10, 2025 *s/ Matthew J. Rubenstein*