No. 25-3090
Civil

In the United States Court of Appeals
For the Eighth Circuit

JOSE OSORIO-CALDERON,

APPELLANT,

V.

Warden, FCI Sandstone,

APPELLEE.

*On Appeal from the*
*United States District Court for the*
*District of Minnesota, Civil Case No. 25-cv-398 (LMP/DLM)*

**BRIEF OF APPELLEE**

DANIEL N. ROSEN
  *United States Attorney*
Lucas B. Draisey
  *Assistant U.S. Attorney*
*U.S. Attorney's Office*
*District of Minnesota*
*600 U.S. Courthouse*
*300 South Fourth Street*
*Minneapolis, MN 55415*
*(612) 664-5600*
Attorneys for Appellee

## SUMMARY OF THE CASE

Appellant Jose Osorio-Calderon seeks a writ of habeas corpus transferring him from one place of imprisonment to another—relief that, according to Congress, is not available from a court. The U.S. Bureau of Prisons credited Osorio-Calderon with 365 days of First Step Act ("FSA") time credits toward his early release—the statutory maximum that may be applied towards earlier release. *See* App. 30, R. Doc. 6-1 at 13. Osorio-Calderon's habeas petition now seeks to compel BOP to apply his remaining time credits towards "transfer to prerelease custody" in a halfway house—a different form of BOP custody. App. 6, R. Doc. 6 at 6.

The district court correctly concluded the petition presents an unreviewable place-of-imprisonment claim. Congress, in the FSA, said BOP's place-of-imprisonment decisions under 18 U.S.C. § 3621(b) are "not reviewable by any court." And this Court has long held that prerelease-custody transfers are governed by § 3621(b)—rendering those decisions immune from judicial scrutiny. This Court's precedents also limit habeas relief to claims seeking release from custody, prohibiting conditions-of-confinement habeas claims like this one.

Oral argument is not necessary to resolve this appeal.

i

# **TABLE OF CONTENTS**

SUMMARY OF THE CASE ............................................................................i

TABLE OF AUTHORITIES ........................................................... v

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES .................................................................2

STATEMENT OF THE CASE.....................................................................4

I.      Statutory Background ........................................................................4

      A.      The Sentencing Reform Act of 1984.............................................4

      B.      The Second Chance Act of 2007 ....................................................5

      C.      The First Step Act of 2018.............................................................6

II.     Factual Background........................................................................8

      A.      Osorio-Calderon's Sex Offense .....................................................8

      B.      His Sentence and Imprisonment....................................................9

III.    Procedural History ........................................................................11

      A.      The Petition ...................................................................................11

      B.      The Report and Recommendation...............................................12

      C.      The Order Rejecting the R. & R. and Dismissing the Petition ........................................................................................13

SUMMARY OF THE ARGUMENT...............................................................16

ARGUMENT................................................................................................17

I. Congress precluded review of BOP's placement decisions under § 3621(b) like the one at issue here. ..........................................18

    A. The BOP's placement decisions are unreviewable — including decisions about prerelease-custody placements. ..................................................................18

    B. The "notwithstanding" provision does not give way to mandatory language elsewhere in the FSA. ..........................21

    C. BOP's decision not to transfer Osorio-Calderon resulted from its five-factor analysis under § 3621(b). ..........................24

II. The district court correctly concluded habeas relief is not an available remedy for a place-of-imprisonment claim. ......................26

    A. Habeas relief does not extend to Osorio-Calderon's prerelease-custody claim. ..........................................................26

        1. Claims seeking "prerelease custody" do not request release — they seek different conditions. .........28

        2. *Kruger* and *Spencer* apply to prerelease-custody claims. ..............................................................................30

    B. The Supreme Court's prison-to-parole habeas cases don't authorize habeas jurisdiction either. ..............................32

    C. This Court's decisions in *Elwood* and its progeny do not change the analysis. ..............................................................35

    D. The Court should decline to apply other circuits' rulings that conflict with Eighth Circuit law. ......................................37

III. The district court correctly declined to convert the habeas petition as one seeking a writ of mandamus. ..................................40

CONCLUSION ..............................................................................41

iii

Appellate Case: 25-3090    Page: 4    Date Filed: 01/20/2026 Entry ID: 5598844

CERTIFICATE OF COMPLIANCE .......................................................42

iv

Appellate Case: 25-3090     Page: 5     Date Filed: 01/20/2026 Entry ID: 5598844

# TABLE OF AUTHORITIES

## Cases

*Azar v. Allina Health Servs.*, 587 U.S. 566 (2019) ...........................................23

*Brennan v. Cunningham*, 813 F.2d 1 (1st Cir. 1987).......................................37

*Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10 (1993)...........................................21

*Cook v. Hanberry*, 592 F.2d 248 (5th Cir. 1979) (per curiam)......................30

*Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392 (D.D.C. June 9, 2025) ................................................................................. 15, 23

*Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) .........................................passim

*Flowers v. Anderson*, 661 F.3d 977 (8th Cir. 2011) .........................................17

*Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006) .....................................passim

*Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004) ................................... 16, 18, 19

*Graham v. Broglin*, 922 F.2d 379 (7th Cir. 1991) ...........................................38

*Jones v. Harris*, 339 F.2d 585 (8th Cir. 1965)......................................... 31, 39

*Khaimov v. Crist*, 297 F.3d 783 (8th Cir. 2002) ..............................................39

*Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) (per curiam)............passim

*Maxwell v. Thomas*, 133 F.4th 453 (5th Cir. 2025) (per curiam) .........passim

*Melot v. Bergami*, 970 F.3d 596 (5th Cir. 2020)...............................................32

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010)................................................23

*Miller v. McCollum*, 695 F.2d 1044 (7th Cir. 1983)......................................38

*Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008) ........................ 2, 16, 18, 20

Appellate Case: 25-3090     Page: 6     Date Filed: 01/20/2026 Entry ID: 5598844

*Mitchael v. Colvin*, 809 F.3d 1050 (8th Cir. 2016) ....................................3, 40

*Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000)...........................................39

*Morrisey v. Brewer*, 408 U.S. 471 (1972) .................................................. 32, 33

*Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).......................35

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) .......................................................27

*Richmond v. Scibana*, 387 F.3d 602 (7th Cir. 2004)..........................................36

*Silva v. Paul*, No. 18-cv-02177, 2019 WL 542945 (D. Minn. Jan. 7, 2019)...38

*Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014)..................................... passim

*Trump v. J.G.G.*, 604 U.S. 670 (2025) (per curiam)........................... 12, 27, 34

*United States v. Haymond*, 588 U.S. 634 (2019) ...............................................33

*United States v. Houck*, 2 F.4th 1082 (8th Cir. 2021).............................. 24, 25

*United States v. Osorio-Calderon*, Crim. No. 16-621 (JAG) (D. P.R.).........8, 9

*Wessels v. Houden*, No. 23-cv-1266 (WMW/ECW), 2023 WL 7169154 (D. Minn. June 22, 2023), *R. & R. adopted*, 2023 WL 7168926 (Oct. 31, 2023) ....................................................................................................................38

*Williams v. Birkholz*, No. 20-cv-2190 (ECT/LIB), 2021 WL 4155614 (D. Minn. July 19, 2021), *R. & R. adopted*, 2021 WL 4155013 (Sept. 13, 2021) ....................................................................................................................38

*Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005).. 16, 18, 35, 37

*Woodley v. Warden, USP Leavenworth*, Case No. 24-3053-JWL, 2024 WL 2260904 (D. Kan. May 15, 2024) ................................................................39

*Young v. Harper*, 520 U.S. 143 (1997) .................................................... 32, 33

**Statutes**

Appellate Case: 25-3090   Page: 7   Date Filed: 01/20/2026 Entry ID: 5598844

18 U.S.C. § 2422 ..................................................................8

18 U.S.C. § 3152 ................................................................29

18 U.S.C. § 3154 ................................................................29

18 U.S.C. § 3621 ...........................................................passim

18 U.S.C. § 3624 ...........................................................passim

18 U.S.C. § 3625 ......................................................... 5, 9, 36

18 U.S.C. § 3632 ..............................................................2, 7

28 U.S.C. § 1361 ................................................................40

28 U.S.C. § 2241 ......................................................... 17, 26

28 U.S.C. § 2253 ..................................................................1

Comprehensive Crime Control Act of 1984. Pub. L. 98–473, 98 Stat. 1837 (Oct. 12, 1984)..................................................................4

First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018) ...................................................................................passim

Second Chance Act of 2007, Pub. L. 110–199, 122 Stat. 657 (Apr. 9, 2008) ........................................................................ 5, 6, 20

**Other Authorities**

The Am. Heritage Dict. (5th ed. 2022)..........................................30

**Administrative Reports & Decisions**

U.S. Bureau of Prisons, Program Statement 5410.01, *First Step Act of 2018-Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* (Nov. 18, 2022) ..................................................................10

Appellate Case: 25-3090     Page: 8     Date Filed: 01/20/2026 Entry ID: 5598844

# <u>JURISDICTIONAL STATEMENT</u>

The Court has jurisdiction to review a district court's "final order" in habeas proceedings. 28 U.S.C. § 2253(a). The district court's order[1] correctly dismissed the habeas petition for lack of subject-matter jurisdiction. Appellant's Add. 29–30, App. 159–60, R. Doc. 27 at 11–12. Osorio-Calderon filed his notice of appeal thirty days later, on October 19, 2025. R. Doc. 28; *see* Fed. R. App. P. 4(a)(1)(B).

---

[1] The district court never directed entry of judgment, R. Doc. 27, and no judgment has been entered.

1

Appellate Case: 25-3090    Page: 9    Date Filed: 01/20/2026 Entry ID: 5598844

# STATEMENT OF THE ISSUES

In the First Step Act of 2018, Congress created a new system of earned time credits that "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). But Congress capped the amount of time credits allowed toward earlier supervised release at one year, *id.* § 3624(g)(3), leaving inmates to apply their remaining credits towards prerelease custody in the community, either in a halfway house or in home confinement, *id.* § 3624(g)(2).

The issues presented by this appeal are:

I. **Did the Frist Step Act's § 601, stating that place-of-imprisonment designations under 18 U.S.C. § 3621(b) are "not reviewable by any court" deprive the court of jurisdiction to review Osorio-Calderon's claim seeking a prerelease-custody placement?**

- First Step Act of 2018, Pub. L. 115-391, title VI, § 601(2), 132 Stat. 5194, 5238 (Dec. 21, 2018) (amending 18 U.S.C. § 3621(b))

- *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004)

- *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006)

- *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008)

2

II. **Did the district court correctly dismiss Osorio-Calderon's habeas petition challenging the place of his imprisonment for lack of jurisdiction?**

- *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996) (per curiam)

- *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014)

- *Maxwell v. Thomas*, 133 F.4th 453 (5th Cir. 2025) (per curiam)

III. **Did the district court correctly decline to convert the nonjusticiable habeas claim into a mandamus claim?**

- *Mitchael v. Colvin*, 809 F.3d 1050 (8th Cir. 2016)

- *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006)

Appellate Case: 25-3090    Page: 11    Date Filed: 01/20/2026 Entry ID: 5598844

**STATEMENT OF THE CASE**

## I. Statutory Background

This case turns on the text and structure of 18 U.S.C. §§ 3621 and 3624. Those statutory sections were first adopted in the Sentencing Reform Act of 1984, and Congress later amended them to add relevant provisions in the Second Chance of 2007 and the First Step Act of 2018.

### A. The Sentencing Reform Act of 1984

Congress first enacted the relevant statutory provisions in the Sentencing Reform Act, as part of the Comprehensive Crime Control Act of 1984. Pub. L. 98–473, title II, ch. II, § 212(a)(2), 98 Stat. 1837, 2007–09 (Oct. 12, 1984) (codifying 18 U.S.C. §§ 3621, 3624).

These provisions charge the Bureau of Prisons with maintaining custody of federal criminal defendants sentenced to prison and establish when that custody must end. 18 U.S.C. §§ 3621 (a), 3624(a). BOP's custody lasts "until the expiration of the term imposed, or until earlier released for satisfactory behavior" *Id.* § 3621(a). A prisoner is released from BOP's custody "on the date of expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence" for good behavior, or "good-time credits." *Id.* § 3624(a), (b).

4

But while BOP maintains custody, the bureau enjoys unreviewable discretion regarding where to "designat[e]" a prisoner's "place of imprisonment." *Id.* § 3621(b); *see also id.* § 3625 (prohibiting APA review of BOP placement decisions). A prisoner may be placed in "any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable," considering five factors. *Id.* § 3621(b).

In a section titled, "prerelease custody," Congress authorized BOP to designate prisoners to custodial settings in the community to help inmates transition to life after prison. 18 U.S.C. § 3624(c). Prerelease custody consists of placement in home confinement or in a residential re-entry center ("RRC," previously known as a Community Corrections Center, but more commonly known as a halfway house). 18 U.S.C. § 3624(c), (g).

## B.    The Second Chance Act of 2007

Congress later amended these provisions in the Second Chance Act of 2007, Pub. L. 110–199, title II, ch. 3, § 251, 122 Stat. 657, 692–93 (Apr. 9, 2008). In § 251(a) of that legislation, Congress authorized BOP to "place" prisoners in "community correctional facilit[ies]" or "home confinement" to satisfy its prerelease-custody obligations. *Id.*, § 251(a), 122 Stat. at 692–

5

93 (codified at 18 U.S.C. § 3624(c)(1), (2)). But Congress made clear: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." *Id.*, § 251(a), 122 Stat. at 693 (codified at 18 U.S.C. § 3624(c)(4)).

And Congress amended § 3621(b) in § 251(b) of the SCA. *Id.*, § 251(b), 122 Stat. at 693 (codified at 18 U.S.C. § 3621(b)). It added, ''Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.'' *Id.* (emphasis added).

## C.     The First Step Act of 2018

Congress later enacted the First Step Act (the "FSA"). In Title I of that act, the law sought to encourage recidivism reduction among the incarcerated population. First Step Act of 2018, Pub. L. 115-391, title I, 132 Stat. 5194, 5195 (Dec. 21, 2018) (codified at 18 U.S.C. §§ 3621, *et seq.*). The new law directed the Attorney General to develop a risk and needs assessment system no later than July 19, 2019. 18 U.S.C. § 3632(a). BOP uses the risk tool to determine the recidivism risk and classify each inmate

6

as having a minimum, low, medium, or high risk of recidivism. *Id.* § 3632(a)(1). It uses the criminogenic needs assessment tool to determine the type of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate. *Id.* § 3632(a)(3).

Congress created a new system of FSA "time credits," to encourage inmates to participate in and complete programming. *Id.* § 3632(d)(4). Eligible prisoners "who successfully complete" programming "shall earn time credits" at a rate of ten days for every thirty days of successful participation in EBRR, or fifteen days per thirty days of successful participation if they maintain a minimal or low risk of recidivism over two consecutive assessments. *Id.* § 3632(d)(4)(A). Eligible prisoners may have their FSA time credits applied once they have earned an amount equal to their remaining sentence. *Id.* § 3624(g)(1).

One important benefit of FSA time credits is that they "shall be applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). But the statute limits FTCs applied towards supervised release to just twelve months. *Id.* § 3624(g)(3). As a result, credits earned beyond those twelve months may apply only toward prerelease custody. *Id.* § 3624(g)(2).

7

Elsewhere, in title VI of the FSA, Congress also amended § 3621(b). Pub. L. 115-391, title VI, § 601, 132 Stat. at 5237 (codified at 18 U.S.C. § 3621(b)). The amendment added to § 3621(b)'s discretionary place-of-imprisonment framework one final sentence: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."

## II. Factual Background

### A. Osorio-Calderon's Sex Offense

Jose Osorio-Calderon admitted to coercing and enticing his thirteen-year-old neighbor to send him naked pictures of herself, in violation of 18 U.S.C. § 2422(b). Plea and Forfeiture Agreement, *United States v. Osorio-Calderon*, Crim. No. 16-621 (JAG) (D. P.R. Aug. 30, 2017), ECF No. 39 at 1–2, 11. The girl wasn't yet a teenager when Osorio-Calderon—then a 29-year-old man—befriended her on Facebook. *Id.* at 11. Osorio-Calderon soon sent the girl sexually explicit messages, including pictures of his penis and requested that she send him sexually explicit pictures in return. *Id.* The girl ultimately sent Osorio-Calderon pictures of her naked body. *Id.* Osorio-Calderon's teenage victim also informed investigators that Osorio Calderon came to her house and

8

engaged in sexual contact with her. *Id.* at 12. She further alleged that, on two occasions in September 2016, Osorio-Calderon picked her up from school, drove her to a remote alley, and "had sex with" her. *Id.*

The government charged Osorio-Calderon in October 2016 in a two-count indictment in the United States District Court for the District of Puerto Rico. Indictment, *United States v. Osorio-Calderon*, Crim. No. 16-621 (JAG) (D. P.R. Oct. 5, 2016), ECF No. 13. After his guilty plea, Osorio-Calderon was convicted and sentenced to serve a 151-month term of imprisonment. J. in a Crim. Case, *United States v. Osorio-Calderon*, Crim. No. 16-621 (JAG) (D. P.R. Jan. 30, 2018), ECF No. 51.

### B.    His Sentence and Imprisonment

Osorio-Calderon is currently serving his term of imprisonment at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). App. 84, R. Doc. 13 at 2, ¶ 4. BOP calculated Osorio-Calderon's release date as July 3, 2026—which includes all Osorio-Calderon's good-conduct time credits and 365 days towards earlier supervised release—the statutory maximum allowed under the First Step Act. *Id.*; *see also* 18 U.S.C. § 3624(b)(1), (g)(3) (providing, respectively, for good-conduct time "credit toward the service of the prisoner's service"

9

and FSA time credit "not to exceed 12 months" toward earlier supervised release). It is therefore undisputed that Osorio-Calderon's term of imprisonment will end on July 3, 2026.

BOP maintains that prerelease custody is a place of imprisonment, and that a prerelease-custody placement decision is therefore subject to 18 U.S.C. § 3621(b). *See* U.S. Bureau of Prisons, Program Statement 5410.01, *First Step Act of 2018-Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* at 16 (Nov. 18, 2022) (citing 18 U.S.C. § 3621(b)); App. 121, R. Doc. 13-5 at 20. The process for making that decision involves a BOP "unit team" at FCI Sandstone conducting one portion of the five-factor review that is unique to the inmate, before referring the inmate to the Bureau's Residential Re-entry Management ("RRM") office to consider the final portion of the analysis, the resources of the facility contemplated. App. 86, R. Doc. 13 at 4, ¶ 14.

Osorio-Calderon's unit team at FCI Sandstone conducted its review and referred him to the RRM office in April 2024, recommending a prerelease-custody placement in a Puerto Rico halfway house. App. 87, R. Doc. 13 at 5, ¶ 17. But the RRM office denied the proposed placement "after considering the resources of the facility contemplated." App. 86, R.

Appellate Case: 25-3090   Page: 18   Date Filed: 01/20/2026 Entry ID: 5598844

Doc. 13 at 4, ¶ 14. The RRM office "confirmed that placement was denied due to local ordinances pertaining to sex offenses." App. 87, R. Doc. 13 at 5, ¶ 19; App. 129–30, R. Doc. 13-8, 13-9. BOP later explained in response to Osorio-Calderon's administrative grievance that the halfway house placement in Puerto Rico "was denied due to the close proximity of two private schools and a daycare center." App. 26, R. Doc. 6-1 at 9.

## III. Procedural History

### A. The Petition

Osorio-Calderon challenges BOP's decision, contending the FSA invariably requires BOP to transfer sex offenders to prerelease custody in the community—without regard to local laws governing a sex offender's residential proximity to schools and daycares.  He filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 in February 2025. R. Doc. 1. He amended the petition about a month later. App. 1, R. Doc. 6. The only issue he raised was the BOP's refusal to move him into prerelease custody. App. 2, 6–11, R. Doc. 6 at 2, 6–11.

For relief, Osorio-Calderon proposed a series of "findings" and an order requiring "BOP to transfer Petitioner (within 48 hours) out of carceral custody and into a prerelease custody location as close to his

11

approved release address as practicable." App. 13–16, R. Doc. 6 at 13–16. Osorio-Calderon alternatively asked the district court to issue a writ of mandamus requiring the BOP to transfer him to prerelease custody if a § 2241 habeas petition was not the correct procedural vehicle for pursuing his requested relief. App. 16, R. Doc. 6 at 16.

A magistrate judge ordered a response to Osorio-Calderon's petition, R. Doc. 9, and later appointed counsel to represent him, R. Doc. 11. Soon after the parties finished briefing, the magistrate judge asked for supplemental submissions on "whether federal habeas law concerning place of confinement has changed" after the Supreme Court's interim decision in *Trump v. J.G.G.*, 604 U.S. 670 (2025) (per curiam). R. Doc. 16.

### B. The Report and Recommendation

In a June 2025 report and recommendation, the magistrate judge recommended ruling for Osorio-Calderon. The R. & R. correctly recognized that "Osorio-Calderon's claim concerns the date that his prelease custody should lawfully commence. The Eighth Circuit has historically treated such claims as 'conditions-of-confinement' claims that federal courts lack jurisdiction to review because habeas permits only challenges to the fact or duration of a prisoner's confinement."

Appellate Case: 25-3090     Page: 20     Date Filed: 01/20/2026 Entry ID: 5598844

Appellant's Add. 8, App. 138, R. Doc. 20 at 8. But the magistrate judge concluded that the Supreme Court's recent interim decision in *J.G.G.* changed all that. Appellant's Add. 10, App. 140, R. Doc. 20 at 10.

The R. & R. conceded that *J.G.G.*'s venue-related holding and the statute it interpreted were "irrelevant to Mr. Osorio-Calderon's habeas petition." Appellant's Add. 10, App. 140, R. Doc. 20 at 10. But the magistrate judge nonetheless took "a broad view of the per curiam opinion in *J.G.G.*" and inferred the Supreme Court had expanded the purview of habeas jurisdiction, to encompass transfer claims like Osorio-Calderon's. Appellant's Add. 10–11, App. 140–41, R. Doc. 20 at 10–11.

With this newfound jurisdiction, the magistrate judge went on to consider Osorio-Calderon's claims on the merits and ultimately recommended granting his habeas petition. Appellant's Add. 12–17, App. 142–47, R. Doc. 20 at 12-17.

### C. The Order Rejecting the R. & R. and Dismissing the Petition

The government timely objected to the report and recommendation. R. Doc. 21. The district court agreed, sustained the objections, and issued a September 2025 order dismissing Osorio-Calderon's petition for lack of jurisdiction. Appellant's Add. 19, App. 149, R. Doc. 27.

Appellate Case: 25-3090    Page: 21    Date Filed: 01/20/2026 Entry ID: 5598844

The district court's ruling contained two alternative bases.

*First*, this Court's precedent limits habeas relief to prisoners challenging the validity of their conviction or the length of their imprisonment. Appellant's Add. 23, App. 153, R. Doc. 27 at 5 (citing *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) and *Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014)). The district court agreed with every other court in the district, holding that claims seeking transfer to prerelease custody is seeking a different place of confinement, not release from custody. *Id.* (citing cases). The district court rejected the R. & R.'s "broad view" of *J.G.G.* and concluded "the Eighth Circuit's decisions . . . require dismissal of habeas petitions that seek an inmate's transfer to prerelease custody under the FSA because those petitions impermissibly raise a challenge to an inmate's place of confinement." Appellant's Add. 26, App. 156, R. Doc. 27 at 8.

And *second*, the district court relied on 18 U.S.C. § 3621(b). Appellant's Add. 23, App. 153, R. Doc. 27 at 5. The Court concluded the FSA's text—"*[n]otwithstanding any other provision of law*, a designation of a place of imprisonment under this subsection is not reviewable any court"—prohibits review of Osorio-Calderon's challenge seeking a

14

different place of imprisonment. Appellant's Add. 27, App. 157, R. Doc. 27 at 9 (quoting 18 U.S.C. § 3621(b) (emphasis added by the district court)). "That means that 'notwithstanding' the mandatory language in the FSA requiring transfer to prerelease custody, the BOP's decision to continue Osorio-Calderon's confinement at FCI-Sandstone is 'not reviewable by any court.'" Appellant's Add. 27–28, App. 157–58, R. Doc. 27 at 9–10 (quoting *Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *21 (D.D.C. June 9, 2025)).

As a result, the district court concluded Osorio-Calderon was not entitled to relief—whether under the habeas statute or the mandamus statute—because Congress precluded review of the BOP's placement decisions. Appellant's Add. 28–29, App. 158–59, R. Doc. 27 at 10–11.

This appeal followed.

Appellate Case: 25-3090     Page: 23     Date Filed: 01/20/2026 Entry ID: 5598844

## SUMMARY OF THE ARGUMENT

Osorio-Calderon's petition challenging the place of his imprisonment "is not reviewable by any court"—least of all in habeas. The district court correctly dismissed Osorio-Calderon's petition seeking a transfer to a less restrictive custodial setting.

Whether to transfer a prisoner to prerelease custody is a place-of-imprisonment determination. 18 U.S.C. § 3621(b); *Miller v. Whitehead*, 527 F.3d 752, 757 (8th Cir. 2008); *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006) (citing *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241–45 (3d Cir. 2005)); *Elwood v. Jeter*, 386 F.3d 842, 847–48 (8th Cir. 2004) (citing *Goldings v. Winn*, 383 F.3d 17, 25–26 (1st Cir. 2004)). Congress amended § 3621(b) in § 601(2) of the First Step Act to add, "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." First Step Act of 2018, Pub. L. 115-391, title VI, § 601(2), 132 Stat. 5194, 5238 (Dec. 21, 2018). Osorio-Calderon's designation to FCI Sandstone and BOP's decision not to transfer him to prerelease custody fall within this broad jurisdictional divestiture. The district court correctly held that reconsidering BOP's decision would exceed the court's limited jurisdiction.

16

Osorio-Calderon contends that Congress did not mean what it said when it prohibited judicial review "notwithstanding any other provision of law." He points to the word "shall" elsewhere in the FSA and infers a judicial remedy that withstands Congress's unambiguous "notwithstanding" clause. The Court should reject this atextual argument.

Even if judicial review were available, habeas relief would not be the appropriate remedy for seeking transfer to prerelease custody. Habeas relief is unavailable to a petitioner who "fails to attack the validity of his sentence or the length of his . . . custody." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014). Osorio-Calderon does not challenge the legality of his custody but instead seeks a transfer to a less restrictive custodial setting.

The Court should affirm the district court's order dismissing the habeas petition.

## **ARGUMENT**

The Court reviews *de novo* a district court's dismissal of a habeas petition under 28 U.S.C. § 2241. *Spencer*, 774 F.3d at 469 (quoting *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011)).

17

**I.    Congress precluded review of BOP's placement decisions under § 3621(b) like the one at issue here.**

Prerelease custody is a place of imprisonment subject to BOP's unreviewable discretion. 18 U.S.C. § 3621(b); *Miller*, 527 F.3d at 757; *Fults*, 442 F.3d at 1091–92 (citing *Woodall*, 432 F.3d at 241–45); *Elwood*, 386 F.3d at 846–48 (citing *Goldings*, 383 F.3d at 23). district court therefore correctly declined to conduct a judicial inquiry that Congress expressly prohibited.

**A.    The BOP's placement decisions are unreviewable — including decisions about prerelease-custody placements.**

The Court should begin and end its analysis with § 3621(b). The text, structure, and subsequent judicial interpretations of BOP's prerelease-custody authorities show those placement decisions are subject to § 3621(b). And Congress subsequently amended § 3621(b) in the First Step Act to deprive courts of jurisdiction to review BOP's place-of-imprisonment determinations.

Start with the plain text. Section 3621(b) applies to "the place of the prisoner's imprisonment" in "any available *penal or correctional facility*." 18 U.S.C. § 3621(b) (emphasis added). This plain text shows that § 3621(b) applies to transfers from a "penal" facility and into a less-restrictive "correctional facility" in the community. As the First Circuit observed in

18

*Goldings*, "Congress could have, but did not, exclude any particular type of penal or correctional facility from the BOP's designation or transfer authority. Instead, it defined 'place of imprisonment' broadly but unambiguously, as 'any penal or correctional facility' that meets minimum standards of health and habitability." *Goldings*, 383 F.3d at 26. After conducting a thorough textual analysis of § 3621, *Goldings* concluded that a halfway house "is clearly a corrections facility" within the meaning of § 3621(b). *Id.*

Turn next to this Court's precedent. In a trio of cases, this Court has interpreted BOP's halfway-house placement authority as a discretionary place-of-imprisonment decision under § 3621(b). First, in *Elwood*, this Court expressly "agree[d] with the interpretation put forward by . . . the First Circuit," relying extensively on *Goldings*' textual analysis. *Elwood*, 386 F.3d at 846–47 (citing and quoting *Goldings*, 383 F.3d at 23). The Court soon extended that holding, concluding BOP's "decision to not transfer an inmate" to a halfway house, holding that such decisions require BOP to consider § 3621(b)'s factors. *Fults*, 442 F.3d at 1092. The Court completed the trilogy in *Miller*, holding that BOP's regulation limiting halfway-house placement decisions to the final 180 days of a prisoner's

19

sentence, except in "extraordinary" circumstances, was appropriate under § 3621(b). *Miller*, 527 F.3d at 756–57. These three cases, and those from other circuits, show that prerelease-custody placements in a halfway house are place-of-imprisonment designations under § 3621(b), subject to BOP's discretion.

Congress later ratified these interpretations. Against the backdrop of *Goldings*, *Elwood*, *Fuls*, and others, Congress enacted § 251 of the Second Chance Act. The law amended § 3624(c) to make clear that BOP's authority to place inmates in prerelease custody under § 3624(c) does not "limit or restrict the authority of [BOP] under section 3621." Second Chance Act of 2007, Pub. L. 110–199, title II, ch. 3, § 251(a), 122 Stat. at 693 (Apr. 9, 2008) (codified at 18 U.S.C. § 3624(c)(4)). And it amended § 3621(b) to state that sentencing courts could not invade BOP's place-of-imprisonment authority by directing the bureau to place an inmate in a halfway house. *Id.*, § 251(b), 122 Stat. at 693 (codified at 18 U.S.C. § 3621(b)). These amendments plainly incorporate § 3621 and BOP's discretionary place-of-imprisonment authority into the agency's prerelease-custody decision making.

Appellate Case: 25-3090     Page: 28     Date Filed: 01/20/2026 Entry ID: 5598844

Congress went even further a decade later in the FSA, making clear that BOP's place-of-imprisonment decisions under § 3621(b) are "not reviewable by *any court*." First Step Act of 2018, Pub. L. 115-391, title VI, § 601(2), 132 Stat. 5194, 5237 (Dec. 21, 2018) (emphasis added) (amending 18 U.S.C. § 3621(b)). By expressly precluding all judicial review of BOP's placement decisions, Congress weighed in on the question presented here, depriving courts of jurisdiction to review BOP's prerelease-custody placement decisions.

## B. The "notwithstanding" provision does not give way to mandatory language elsewhere in the FSA.

Congress unambiguously divested courts of jurisdiction to review transfer decisions, "[n]otwithstanding any other provision of law." 18 U.S.C. § 3621(b). A "notwithstanding" clause "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). "A clearer statement is difficult to imagine." *Id.* By adding the "notwithstanding" clause to § 3621(b) in the FSA, Congress clearly expressed its intent that no other statute—not the habeas statute

21

nor the mandamus statute—would authorize review of BOP's place-of-imprisonment decisions under § 3621(b).

The jurisdictional bar does not give way to any other provisions, including those in the FSA. Osorio-Calderon contends that BOP's prerelease-custody transfers under the FSA should be treated differently. Appellant's Br. at 43. He argues, "Congress's bar to judicial review regarding the selection of a 'place of imprisonment' has no bearing on the enforceability of the distinct congressional command in the FSA to transfer the prisoner." *Id.* Essentially, he argues, the FSA's "shall transfer" language withstands the notwithstanding clause.

The bar to judicial review was made law *in the FSA itself*. First Step Act, Pub. L. 115-391, title VI, § 601(2), 132 Stat. at 5237 (amending 18 U.S.C. § 3621(b)). It makes little sense to conclude that Congress meant the FSA's jurisdictional bar to apply to BOP's place-of-imprisonment decisions *except* for those made under the FSA. If Congress meant to exclude prerelease-custody placements from the "notwithstanding" clause, it would have said so.

The Court should read BOP's place-of-imprisonment authority "in conjunction with" the prerelease-custody provisions in § 3624. *Elwood*,

22

386 F.3d at 884; *see also Crowe*, 2025 WL 1635392, at *22 ("Release into prerelease custody, no matter under the FSA or Second Chance Act, must conform with the BOP's requirements in designating places of imprisonment under § 3621."). Congress was presumably aware that multiple circuit courts of appeals—including this Court in *Elwood*, *Fults*, and *Miller*—have held that prerelease-custody placements under § 3624(c) are subject to § 3621(b)'s five-factor test. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). So when Congress stated that FSA time credits "shall be applied toward time in prerelease custody," it understood that courts would interpret that provision as requiring BOP to make a place-of-imprisonment decision under § 3621(b).

This conclusion is supported by the fact that Congress used the same phrase—"prerelease custody"—in the FSA as it did in previous enactments. Courts "do[] not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes." *Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019). The FSA borrowed the phrase "prerelease custody" from § 3624(c), bringing with

23

it all the case law interpreting BOP's prerelease-custody decisions as place-of-imprisonment designations under § 3621(b). The Court should not presume that Congress meant "prerelease custody" in the FSA to be treated differently.

### C. BOP's decision not to transfer Osorio-Calderon resulted from its five-factor analysis under § 3621(b).

BOP made an individualized determination that Osorio-Calderon would not be transferred to prerelease custody after analyzing § 3621(b)'s factors, and he doesn't contend otherwise. As BOP explained in response to Osorio-Calderon's administrative grievance, he was denied transfer to prerelease custody in Puerto Rico "based on the Five Factor Review (see 18 U.S.C. § 3621(b))," considering the "proximity of two private schools and a daycare center" to the facility and "local ordinances pertaining to sex offenders" like Osorio-Calderon, and the lack of available resources at a suitable halfway house. App. 26, R. Doc. 6-1 at 9; App. 86–87, R. Doc. 13 at 4–5; App. 129–30, R. Docs. 13-8, 13-9. Whether BOP correctly applied § 3621(b)'s factors is not at issue; its decision based on those factors is "not reviewable by any court." 18 U.S.C. § 3621(b).

24

Recent precedent is consistent with this conclusion. In *United States v. Houck*, 2 F.4th 1082 (8th Cir. 2021), an inmate convicted of a sex offense moved for compassionate release, seeking placement in home confinement under the CARES Act, which allowed BOP to extend the prisoner's stay in home confinement beyond what § 3624(c)(2) permitted. This Court interpreted the CARES Act's home-confinement provision and concluded "the district court correctly held that it did not have authority to change [the prisoner's] *place of imprisonment* to home confinement under § 3624(c)(2)." *Id.* at 1085 (emphasis added). By describing home confinement as a "place of imprisonment," the Court echoed the language Congress used when it amended § 3621(b) in the FSA. *Compare id.* (describing "home confinement" as a "place of imprisonment") *with* 18 U.S.C. § 3621(b) (insulating "place of imprisonment" decisions from judicial review). Just as Congress expressly stated in § 601 of the FSA, that decision belongs exclusively to BOP, not to the courts.

\*   \*   \*

Both plain text and precedent show BOP's prerelease-custody decisions are discretionary and unreviewable under § 3621(b). Neither

25

the habeas statute nor the mandamus statute authorizes review of place-of-imprisonment decisions that Congress expressly shielded from judicial review in the FSA. The district court therefore correctly dismissed Osorio-Calderon's petition seeking to compel BOP to transfer him to a different place of imprisonment.

## II. The district court correctly concluded habeas relief is not an available remedy for a place-of-imprisonment claim.

Alternatively, the district court correctly concluded it lacked jurisdiction to hear Osorio-Calderon's petition for a different reason: this Court's precedent precludes habeas relief aimed at remedying allegedly unlawful conditions of confinement. Under binding Eighth Circuit precedent, "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his . . . custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073; *Spencer*, 774 F.3d at 469–70. The district court therefore correctly dismissed the petition.

### A. Habeas relief does not extend to Osorio-Calderon's prerelease-custody claim.

Congress limited a district court's authority to grant habeas relief in 28 U.S.C. § 2241(c). "The writ of habeas corpus shall not extend to a

26

prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

This text and the common law history of the writ "is clear." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A habeas claim involves: "[1] an attack by a person in custody [2] upon the legality of that custody . . . [3] *to secure release from illegal custody*." *Id.* (emphasis added). Such a claim reflects the "core of habeas corpus." *Id.* at 489. A prisoner challenging the fact or length of his custody therefore raises a core habeas claim and must litigate that claim through habeas proceedings, not an ordinary civil claim. *Id.* at 499; *see also, e.g., J.G.G.*, 604 U.S. at 672 (concluding APA claim challenging validity of immigration detention under the Alien Enemies Act is a "core" habeas claim).

The *Preiser* Court declined to resolve whether the inverse is true. *Preiser*, 411 U.S. at 500. On one hand, the plain text of § 2241 and the common law history of the writ suggest a limited scope focused on release from unlawful custody. *Id.* at 484. But on the other hand, modern judicial innovations have expanded on that scope. *Id.* at 485. The Court left open whether the text and history of the writ won out over subsequent judicial interpretations.

27

Nonetheless, this Court has firmly taken a side, adopting a bright-line rule consistent with *Preiser*'s pronouncement about text and history: "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his . . . custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073. As a result, claims relating to the conditions of a prisoner's confinement are not cognizable in habeas proceedings. *Spencer*, 774 F.3d at 470. Osorio-Calderon does not seek a release from custody; he seeks a transfer to *pre*release custody in the community where he will continue to serve his sentence of imprisonment under different conditions.

> **1. Claims seeking "prerelease custody" do not request release — they seek different conditions.**

The law's plain text shows a prisoner placed in prerelease custody is not released from custody. Congress defined "prerelease custody" by reference to its "conditions" and its "place." 18 U.S.C. § 3624(c)(1) ("Such conditions may include a community correctional facility"), (g)(2) ("placed in prerelease custody"). While prerelease-custody conditions may be more favorable, claims seeking those conditions are nonetheless conditions-of-confinement claims prohibited from habeas relief.

Appellate Case: 25-3090    Page: 36    Date Filed: 01/20/2026 Entry ID: 5598844

A prisoner is "release[d]" from BOP's custody upon the expiration of his term of imprisonment. 18 U.S.C. § 3624(a), (b). But elsewhere, Congress separately provided for "*pre*release custody"—prior to the expiration of the prisoner's term of imprisonment. *Id.* § 3624(c), (g). "Prerelease custody" is aptly named. The prefix "pre-" plainly means "[e]arlier; before; prior to." *Pre-*, The Am. Heritage Dict. (5th ed. 2022). By attaching that prefix to "release," Congress plainly meant that a prisoner's placement in home confinement or a halfway house would be a form of custody preceding release. *See* 18 U.S.C. § 3624(g). "A prisoner placed in prerelease custody" remains "subject to such conditions as the Director of the Bureau of Prisons determines appropriate." *Id.* § 3624(g)(2)(A)(i)(III), (B). The plain text of § 3624 therefore shows Congress understood prerelease custody was not release from custody.

Contrast this text with how Congress described supervised release in the same statute. "*[A]fter* imprisonment," a prisoner is "*released* by the Bureau of Prisons to the supervision of a probation officer." 18 U.S.C. § 3624(e) (emphasis added). The prisoner then begins an entirely different term of custody under the supervision of the U.S. Pretrial and Probation Services office, an arm of the judicial branch. *Id.* §§ 3152(a), 3154(3). Put

Appellate Case: 25-3090     Page: 37     Date Filed: 01/20/2026 Entry ID: 5598844

simply, the prisoner's term in BOP's custody ends, and BOP has no remaining control over the place or the conditions on the releasee's liberty.

This text matters. The difference between being transferred to "prerelease custody" and "released" from BOP's custody altogether is the key distinction under this Court's bright-line rule: "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his . . . custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073. The district court correctly dismissed Osorio-Calderon's habeas petition.

> **2.** ***Kruger*** **and** ***Spencer*** **apply to prerelease-custody claims.**

Osorio-Calderon and one of his *amici*, the ACLU, attempt to distinguish the facts of *Kruger* and *Spencer*, noting those cases did not involve claims seeking transfer to different facilities. Appellant's Br. at 25. This Court's case law shows the rule articulated in *Kruger* applies to claims seeking a transfer from one form of BOP custody to another. *See Spencer*, 774 F.3d at 471 (favorably citing *Cook v. Hanberry*, 592 F.2d 248, 248 (5th Cir. 1979) (per curiam), a place-of-imprisonment case). That case

30

law applies with equal force to claims seeking transfer to a halfway house or home confinement.

The Court rejected a place-of-confinement habeas petition in *Jones v. Harris*, 339 F.2d 585, 586 (8th Cir. 1965). The petitioner in *Jones* challenged his transfer from Alcatraz to the federal medical center in Springfield, Missouri. *Id.* The petitioner contended "he cannot be required to serve a sentence at the Medical Center," but he "ma[de] no attack upon the validity of his conviction . . . or the resulting sentence imposed," and the Court concluded he was not entitled to habeas relief. *Id.* Here too, Osorio-Calderon complains that he cannot be required to continue serving his sentence at FCI Sandstone but instead is entitled to serve the remainder of his sentence in a halfway house or home confinement. Like the prisoner in *Jones*, Osorio-Calderon "does not assert or establish that he has completed the service of his sentence," only that his sentence ought to be completed it in a different facility. *Id.*

The Fifth Circuit recently held that a prisoner seeking a transfer to prerelease custody under the FSA could not do so under that court's bright-line rule. *Maxwell v. Thomas*, 133 F.4th 453, 454 (5th Cir. 2025) (per curiam). Like Osorio-Calderon, the habeas petitioner in *Maxwell* sought

31

"transfer to a halfway house or home confinement" under the FSA. *Id.* But the Fifth Circuit's "bright-line rule" requires habeas petitioners to do more than challenge the conditions of confinement; they must seek "accelerated release" from custody. *Id.* (quoting *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020)). "[T]he nature of [the petitioner's] requested relief," the court wrote, would not "entitle him to accelerated release, so the relief he seeks is properly brought in a civil rights suit." *Id.* This Court should rule likewise and affirm the district court's order.

### B. The Supreme Court's prison-to-parole habeas cases don't authorize habeas jurisdiction either.

Osorio-Calderon and the ACLU repeatedly conflate habeas claims seeking release to parole with those seeking transfer to more favorable prerelease conditions. *See* Appellant's Br. at 22–24 (citing *Morrisey v. Brewer*, 408 U.S. 471 (1972) and *Young v. Harper*, 520 U.S. 143 (1997)). Both *Morrissey* and *Young* addressed habeas claims seeking "release from prison," *Morrissey*, 408 U.S. at 477, while Osorio-Calderon's claim seeks *pre*release custody in another place, under more favorable conditions.

The Supreme Court in *Morrissey* interpreted a habeas claim in the context of the now-repealed system of federal parole—a system

32

Appellate Case: 25-3090     Page: 40     Date Filed: 01/20/2026 Entry ID: 5598844

characterized by a conditional "release from prison." *Id.* And in *Young*, the Supreme Court said the state system of "preparole" at issue there "differed from parole in name only" and "was equivalent to parole as understood in *Morrissey*." *Young*, 520 U.S. at 145, 147. The appropriate modern analogue for parole is supervised release, not prerelease custody. *See United States v. Haymond*, 588 U.S. 634, 652 (2019) ("In parole's place, Congress established the system of supervised release."). In short, the petitioners in both cases sought a form of post-release custody amounting to "release from prison," like supervised release. *Morrissey*, 408 U.S. at 477. Neither case stands for the proposition that transfer to a less restrictive custodial setting gives rise to habeas relief.

Osorio-Calderon's argument thus improperly conflates conditional release from custody with prerelease custody. "*Pre*release custody" is not release from custody. And that's the fundamental, bright-line distinction this Court has drawn between habeas and non-habeas claims. *Kruger*, 77 F.3d at 1073. A petitioner seeking earlier supervised release from BOP's custody to a probation officer's custody (by, for example, challenging denial of good-time credits) may undoubtedly do so through habeas proceedings. *Spencer*, 774 F.3d at 469. But seeking to transfer from one

33

facility to another prior to release from custody, as Osorio-Calderon does, is categorically different from seeking release from custody.

The Supreme Court's more recent interim decision in *Trump v. J.G.G.* is distinguishable for the same reason. *J.G.G.* addressed whether immigration detainees were lawfully subject to detention and removal from the country under the Alien Enemies Act. 604 U.S. at 671. The Court held, "Regardless of whether the detainees formally request release from confinement, because *their claims for relief necessarily imply the invalidity of their confinement*." *Id.* at 672 (emphasis added, quotation marks omitted). That is, if the plaintiffs were right, their detention would be unlawful, entitling them to *release* from custody. Because the claimants challenged the legality of their custody altogether, even if only indirectly, their claims were "core" habeas claims.

Osorio-Calderon's claim is different. He does not argue, expressly or impliedly, that his continued custody is illegal; he merely seeks to serve the remainder of his prison term in a different place, under conditions he expects will be more agreeable. That's a conditions-of-confinement claim.

34

### C. This Court's decisions in *Elwood* and its progeny do not change the analysis.

Osorio-Calderon counters by citing *Elwood*, *Fults*, and *Miller*, in which the Court addressed the merits of habeas claims related to prerelease-custody decisions. Appellant's Br. at 20–21. As already discussed, these cases show that BOP's halfway-house placements are place-of-imprisonment decisions subject to BOP's unreviewable discretion under 18 U.S.C. § 3621(b). But Osorio-Calderon ignores what those cases do say and relies instead on what they don't say.

*First*, none of those cases addressed the jurisdictional issue presented here or distinguished *Kruger*. In *Elwood*, "the Eighth Circuit accepted [the prisoner's habeas] petition, but did not discuss th[e] jurisdictional issue." *Woodall*, 432 F.3d at 242 n.6 (citing *Elwood*, 386 F.3d at 844). *Fults* and *Miller* likewise addressed the merits of the habeas petition without considering whether those claims were prohibited under *Kruger*. Silence on subject-matter jurisdiction does not amount to a holding that jurisdiction is present. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) (holding earlier decisions "did not directly confront the [jurisdictional] question" and "therefore we view the

Appellate Case: 25-3090    Page: 43    Date Filed: 01/20/2026 Entry ID: 5598844

question as an open one"). This Court's earlier silence on this question does not alter the Court's earlier precedent in *Kruger*.[2]

And *second*, none of those cases second guessed BOP's individualized place-of-imprisonment decisions like the one at issue here. In those cases, the Court reviewed BOP regulations and guidance to determine whether they were consistent with 18 U.S.C. § 3621(b), conducting the type of ordinary judicial review of agency rulemaking permitted by the APA. The Court did not review or reconsider any prisoner's place-of-imprisonment designation. Here, Osorio-Calderon seeks something much different—he asked the district court to second guess his designation to FCI Sandstone, conduct its own placement analysis, and order him to be placed somewhere else. That type of review is unavailable. 18 U.S.C. §§ 3621(b), 3625.

---

[2] The Seventh Circuit, just a day after *Elwood* was decided, addressed the jurisdictional question and found no jurisdiction in a case raising the same issue. *Richmond v. Scibana*, 387 F.3d 602, 605–06 (7th Cir. 2004). The court held the prisoner's claim fell "on the APA side" of the line between ordinary civil claims and habeas claims seeking immediate or earlier release. *Id.* Had the Court addressed the jurisdictional issue in the *Elwood* line of cases and applied *Kruger*, it would have reached the same result. *See Spencer*, 774 F.3d at 470 ("our precedent in *Kruger* . . . is consistent with the holding[] of . . . the Seventh Circuit").

Appellate Case: 25-3090    Page: 44    Date Filed: 01/20/2026 Entry ID: 5598844

**D. The Court should decline to apply other circuits' rulings that conflict with Eighth Circuit law.**

A major theme throughout Osorio-Calderon's and the ACLU's arguments are their reliance on cases from other circuits that have adopted positions different from this Court's case law. The Court should apply Eighth Circuit law, not conflicting law from the First, Third, Seventh, or Tenth Circuits. If the Court looks beyond this Circuit for help, it should look to the Fifth Circuit, which applies a "bright-line rule" prohibiting prerelease-custody claims in habeas proceedings. *Maxwell*, 133 F.4th at 454. Unlike the rule in other circuits, that bright-line rule is identical to the one this Court adopted in *Kruger*.

Osorio-Calderon first relies on First and Third Circuit cases suggesting prerelease custody is "meaningfully different" from prison. Appellant's Br. at 24 (quoting *Woodall*, 432 F.3d at 243 and citing *Brennan v. Cunningham*, 813 F.2d 1, 5 (1st Cir. 1987)). Both those courts have come down on the opposite side of the post-*Preiser* split, as this Court recognized in *Spencer*, 774 F.3d at 470 n.6. Those cases therefore proceed from the premise that habeas proceedings are available to challenge conditions of confinement. But that isn't the law in this Circuit. *Id.* at 470.

37

Osorio-Calderon also cites a district court that relied on the Seventh Circuit's "quantum change" test, which differs from *Kruger*'s bright-line rule. Appellant's Br. at 25 (citing *Silva v. Paul*, No. 18-cv-02177 (ECT/ECW), 2019 WL 542945, at *5 (D. Minn. Jan. 7, 2019)).[3] The quantum-change approach began in the Seventh Circuit with *Graham v. Broglin*, which held a claim seeking work release was not a proper habeas claim. 922 F.2d 379, 381 (7th Cir. 1991). The *Graham* court discussed how the Seventh Circuit's line between habeas and non-habeas cases "is not a sharp one." *Id.* For example, petitioners in that circuit seeking a transfer from solitary confinement to general population may obtain habeas relief. *Id.* (discussing *Miller v. McCollum,* 695 F.2d 1044 (7th Cir. 1983)). But once again, that's not the law in the Eighth Circuit, which draws a brighter line.

---

[3] The passage from the R. & R. in *Silva* that Osorio-Calderon relies on is *dicta*. And both the magistrate judge who authored the *Silva* R. &. R. and the district judge who adopted it have since correctly abandoned quantum-change analysis, relying instead on Eighth Circuit case law to dismiss claims seeking prerelease custody under *Kruger* and *Spencer*. *E.g.*, *Williams v. Birkholz*, No. 20-cv-2190 (ECT/LIB), 2021 WL 4155614, at *6 (D. Minn. July 19, 2021) ("Being transferred to home confinement is not a 'release' from incarceration."), *R. & R. adopted*, 2021 WL 4155013 (Sept. 13, 2021); *Wessels v. Houden*, No. 23-cv-1266 (WMW/ECW), 2023 WL 7169154, at *1 (D. Minn. June 22, 2023), *R. & R. adopted*, 2023 WL 7168926 (Oct. 31, 2023).

Appellate Case: 25-3090   Page: 46   Date Filed: 01/20/2026 Entry ID: 5598844

*Compare id. with, e.g.*, *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (holding "being put in the segregation unit" is not a "proper claim[] for a habeas corpus petition"). The quantum-change test is less "sharp" than this Court's bright-line rule. The Court should not adopt it here.

This problem persists with Osorio-Calderon's reliance on the Tenth Circuit's case law. Appellant's Br. at 27 (citing *Woodley v. Warden, USP Leavenworth*, Case No. 24-3053-JWL, 2024 WL 2260904, at *9 n.5 (D. Kan. May 15, 2024)). Before Congress amended the FSA to prohibit judicial review of place-of-imprisonment decisions, the Tenth Circuit permitted habeas claims "focusing on where [the prisoner's] sentence is to be served." *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000). The *Woodley* court conceded that habeas claims seeking halfway-house placements "affect[] the conditions of confinement, not its duration," but it addressed the claim anyway under the Tenth Circuit's case law permitting such habeas claims. *Woodley*, 2024 WL 2260904, at *9 n.5. That strand of place-of-imprisonment cases is different than the law in this Circuit, where the Court has never recognized such habeas claim. *Jones*, 339 F.2d at 586.

Appellate Case: 25-3090    Page: 47    Date Filed: 01/20/2026 Entry ID: 5598844

In sum, this Court's bright-line rule articulated in *Kruger* and *Spencer* draws a brighter line than the approaches taken in other circuits. This Court's precedent aligns more closely with that in the Fifth Circuit, which has held that habeas proceedings are not the proper vehicle for prerelease-custody claims under the FSA. *Maxwell*, 133 F.4th at 454. The Court should rely on this Circuit's case law establishing a similar bright-line rule prohibiting habeas claims seeking transfer to prerelease custody.

## III. The district court correctly declined to convert the habeas petition as one seeking a writ of mandamus.

Osorio-Calderon alternatively argues that the district court should have issued a writ of mandamus requiring BOP to transfer him to prerelease custody. Appellant's Br. at 33-50. Mandamus relief under 28 U.S.C. § 1361 is limited to "extraordinary situations," requiring "a clear and indisputable right to the relief sought," "a nondiscretionary duty to honor that right," and "no other adequate remedy." *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016) (quotations omitted). The district court explained why mandamus relief is not appropriate here, and this Court should reach the same result for the same reasons.

40

The law guiding BOP's decisions about whether and where to transfer a prisoner to prerelease custody is discretionary, not mandatory. 18 U.S.C. § 3621 (b). As discussed above, BOP is required to consider five discretionary factors under § 3621(b) before designating an "appropriate and suitable" placement for a prisoner being transferred to prerelease custody. *Id.* § 3621(b). "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment," including whether to transfer him to prerelease custody. *Fults*, 442 F.3d at 1090. Even if § 3632(d)(4)(C) required BOP to transfer Osorio-Calderon to prerelease custody, any placement decision must follow § 3621(b)'s discretionary factors.

Transferring Osorio-Calderon to prerelease custody is not a mere ministerial act. Mandamus relief is inappropriate for such discretionary decisions.

## CONCLUSION

For all the foregoing reasons, the district court's judgment should be affirmed.

41

# CERTIFICATE OF COMPLIANCE

The undersigned attorney for the United States certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. The brief has 7,655 words, proportionally spaced using Book Antiqua, 14-point font. The brief was prepared using Word for 365. The undersigned attorney also certifies that the brief has been scanned for viruses and, to the best of our ability and technology, believes it is virus-free.

Dated:  January 20, 2026

DANIEL N. ROSEN
United States Attorney


/s/Lucas B. Draisey
By:  Lucas B. Draisey
Assistant U.S. Attorney

Attorneys for Appellee

42