No. 25-3090

Civil

---

# In the United States Court of Appeals

## for the Eighth Circuit

Jose Osorio-Calderon,

Appellant,

v.

Warden, FCI Sandstone,

Appellee.

---

*Appeal from the*

*United States District Court for the*

*District of Minnesota*

---

**Reply Brief of Appellant**

---

Trevor N. Parkes

Attorney ID No. 0402172

Counsel & Project Director, First Step Act Resource Center

National Association of Criminal Defense Lawyers

1660 L St NW, 12th Floor

Washington, DC 20036

Phone number: (202) 465-7665

Email: tparkes@nacdl.org

*Appointed Counsel for Appellant Jose Osorio-Calderon*

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................3

SUMMARY OF ARGUMENT...........................................................................6

ARGUMENT ....................................................................................................8

   I.   The Bureau of Prison's Decision Not to Transfer Mr. Osorio-Calderon as Required by the First Step Act is Reviewable. .....................................................8

      A.   The First Step Act in 18 U.S.C. § 3632(d)(4)(C) mandates a transfer out of prison when the requirements of 18 U.S.C. § 3624(g) are met. ........................8

      B.   The decision of whether and when to transfer a prisoner under 18 U.S.C. § 3624(g) is reviewable, even if the decision of where to then transfer the prisoner under 18 U.S.C. § 3621(b) is not. .......................................................16

   II.   Habeas Jurisdiction Exists to Adjudicate this Petition. ................................25

      A.   The Supreme Court and Eighth Circuit have both adjudicated similar habeas petitions seeking transfer from confinement in prison to custody in the community. ....................................................................................................26

      B.   The Eighth Circuit has a jurisdictional carveout where the Bureau of Prisons has not followed the law in deciding whether to approve transferring a prisoner. ..............................................................................................................29

CONCLUSION................................................................................................32

CERTIFICATE OF COMPLIANCE.................................................................33

CERTIFICATE OF SERVICE FOR DOCUMENTS FILED USING CM/ECF.....34

Appellate Case: 25-3090   Page: 2   Date Filed: 02/10/2026 Entry ID: 5606552

# **TABLE OF AUTHORITIES**

Cases

*Adepoju v. Scales*,
    782 F. Supp. 3d 306 (E.D. Va. 2025)............................................................17

*Briones-Pereyra v. Warden*,
    574 U.S. 383 (2015)............................................................................16

*Dep't of Homeland Sec. v. MacLean*,
    574 U.S. 383 (2015)............................................................................13

*Elwood v. Jeter*,
    386 F.3d 842 (8th Cir. 2004)..................................................................30

*Fults v. Sanders*,
    442 F.3d 1088 (8th Cir. 2006)................................................................30

*Jones v. Engleman*,
    2022 WL 6563744 (C.D. Cal. Sept. 7, 2022) .................................................13

*Jones v. Harris*,
    339 F.2d 585 (8th Cir. 1965)..................................................................29

*Kruger v. Erickson*,
    77 F.3d 1071 (8th Cir. 1996)..................................................................28

*Martin v. Phillips*,
    2025 WL 732829 (E.D. Cal. Mar. 7, 2025) ...................................................18

*Morrissey v. Brewer*,
    408 U.S. 471 (1972).................................................................... 27-29

*Parker v. Emmerich*,
    2025 WL 3163821 (W.D. Wis. Oct. 27, 2025) .......................................... 17-18

*Popoola v. Scales*,
    2025 WL 3473370 (E.D. Va. Dec. 3, 2025)........................................ 17, 24-25

Appellate Case: 25-3090   Page: 3   Date Filed: 02/10/2026 Entry ID: 5606552

*Preiser v. Rodriguez*,
411 U.S. 475 (1973)................................................................26, 29

*Spencer v. Haynes*,
774 F.3d 467 (8th Cir. 2014)................................................................28

*Trump v. J. G. G.*,
604 U.S. 670 (2025)................................................................29

*United States v. Brooker*,
976 F.3d 228 (2d Cir. 2020)................................................................22

*United States v. Houck*,
2 F.4th 1082 (8th Cir. 2021)................................................................24

*Woodley v. Warden, USP Leavenworth*,
2024 WL 2260904 (D. Kan. May 15, 2024)................................................16

*Valladares v. Ray*,
130 F.4th 74 (4th Cir. 2025)................................................................17

*Virginia Uranium, Inc. v. Warren*,
587 U.S. 761 (2019)................................................................20

*Young v. Harper*,
520 U.S. 143 (1997)................................................................ 27-28

Statutes

18 U.S.C. § 3621 ................................................................passim

18 U.S.C. § 3624 ................................................................passim

18 U.S.C. § 3631 ................................................................22

18 U.S.C. § 3632 ................................................................passim

18 U.S.C. § 4322 ................................................................22

28 U.S.C. § 1361 ................................................................passim

Appellate Case: 25-3090     Page: 4     Date Filed: 02/10/2026 Entry ID: 5606552

28 U.S.C. § 2241 ..............................................................................passim

Pub. L. No. 115-391, 132 Stat. 5210-13 (2018) ......................................20

Other Authorities

Department of Justice, *First Step Act Annual Report* (June 2024).................... 19-20

Federal Bureau of Prisons, *First Step Act Interview and Updates*, YOUTUBE (Jan. 22, 2026) ...............................................................................11, 14

Appellate Case: 25-3090     Page: 5     Date Filed: 02/10/2026 Entry ID: 5606552

**SUMMARY OF ARGUMENT**

The Bureau of Prisons ("BOP") conflates the decision of *whether and when* to transfer a prisoner out of prison and onto prerelease custody under the First Step Act ("FSA") with the decision of *where* to transfer the prisoner in an effort to put its FSA violation beyond this Court's review. The language and structure of the FSA and its surrounding provisions do not support the BOP's interpretation. Instead, the decision of whether and when to transfer a prisoner under the FSA has been taken out of the BOP's hands. That decision is mandatory per 18 U.S.C. § 3632(d)(4)(C) once the requirements found in 18 U.S.C. § 3624(g) are met, and the BOP's decision to flout that requirement is reviewable by this Court. The decision of where to then place the prisoner remains unreviewable under 18 U.S.C. § 3621(b)—just as placement decisions were prior to the FSA—but conflating the decision of *whether and when* to transfer a prisoner under the FSA with the decision of *where* to transfer them is not only incorrect, it ensures prisoners will have no recourse for an FSA violation.

The BOP's second attempt to avoid judicial scrutiny of its FSA violation by divesting the Court of habeas jurisdiction also fails. The BOP once again conflates concepts by failing to see the difference between *confinement in prison* and *custody in the community* outlined in prior, similar Supreme Court and Eighth Circuit cases adjudicating habeas petitions. Mr. Osorio-Calderon's claim falls safely within those

6

prior decisions. The Eighth Circuit cases the BOP and District Court rely on by comparison arise in far different factual contexts—such as the use of restraints and a forced blood draw—and therefore provide limited instruction here, particularly when the Eighth Circuit has previously recognized a jurisdictional carveout allowing challenges to the BOP's failure to follow the law.

Osorio-Calderon requests that this Court reverse the District Court's decision and remand with instructions to grant his petition, whether under habeas or through a writ of mandamus.

7

## ARGUMENT

**I.  The Bureau of Prison's Decision Not to Transfer Mr. Osorio-Calderon as Required by the First Step Act is Reviewable.**

The BOP is wrong that its decision to deny Osorio-Calderon's FSA transfer is unreviewable. The FSA provides prisoners, like Osorio-Calderon, a mandatory transfer out of prison when the requirements of 18 U.S.C. § 3624(g) are met. In other words, the FSA is clear *whether and when* the transfer Osorio-Calderon seeks must happen. The BOP's failure to follow that directive is reviewable by this Court. The BOP does then have discretion under 18 U.S.C. § 3621(b) to decide which Residential Reentry Center ("RRC") to send Osorio-Calderon to, or if he should go to home confinement and where. And the BOP is correct that that decision, of *where* to send Osorio-Calderon, is unreviewable. But expanding the bar on judicial review in the way the BOP seeks contradicts the language and structure of the FSA and its surrounding provisions and renders them meaningless. The BOP's interpretation should be rejected.

**A. The First Step Act in 18 U.S.C. § 3632(d)(4)(C) mandates a transfer out of prison when the requirements of 18 U.S.C. § 3624(g) are met.**

Congress could not have been clearer in the FSA: its transfers out of prison are mandatory. The FSA states that ETCs "earned under [§ 3632(d)(4)(C)] by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release. The Director of the [BOP] *shall* transfer eligible prisoners, as determined

8

under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphases added). The Eighth Circuit has consistently interpreted mandatory language like "shall" to indeed be mandatory. *See* Appl't. Br., at 36, 45; *see also* ACLU Amicus Br., at 27-29. That should come as no surprise as doing so ensures Congressional mandates are followed.

The ETC application occurs "as determined under section 3624(g)," which includes several requirements:

- The prisoner must be "eligible" to have earned ETCs per § 3632(d)(4)(D).

- The prisoner must have "had the remainder of his imposed term of imprisonment computed."

- The prisoner must have earned ETCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."

- The prisoner must have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or . . . maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment."

- For an application to prerelease custody, the BOP must have found the prisoner "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner," or the warden must make an individual determination approving application of the ETCs.

9

Appellate Case: 25-3090    Page: 9    Date Filed: 02/10/2026 Entry ID: 5606552

- For an application towards supervised release, the BOP must have determined the prisoner "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner" or the warden must make an individual determination approving application of the ETCs, and the prisoner must have a term of supervised release imposed as part of his sentence.

18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(1), (3).  In short, when § 3624(g)'s requirements are met, including when the number of ETCs equals the remainder of the term of imprisonment, the BOP "shall" transfer the prisoner out of prison. 18 U.S.C. § 3632(d)(4)(C).  The BOP instead turns the FSA into a second Second Chance Act ("SCA").

The BOP is misconstruing the FSA's statutory language by changing its most important feature: the mandatory "shall" command has been converted into a discretionary "may".  That is in its policy.  App. 119; R. Doc. 13-5, at 18 ("[T]he Bureau *may* apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) . . . ." (emphasis added)).  And the BOP's briefing reinforces that view.  Appl'e. Br., at 7 ("Eligible prisoners may have their [ETCs] applied once they have earned an amount equal to their remaining sentence."

Appellate Case: 25-3090    Page: 10    Date Filed: 02/10/2026 Entry ID: 5606552

(citing 18 U.S.C. § 3624(g)(1))). By doing so, the BOP hopes to (inappropriately) expand its discretion to include deciding whether and when FSA transfers occur.[1]

The FSA's mandatory nature is far different than the SCA's discretionary nature, however. The statutory language of each makes that clear. The decision of whether to transfer a prisoner under the SCA is made only "to the extent practicable." 18 U.S.C. § 3624(c). The BOP is therefore able to withhold SCA transfers if they

---

[1] Curiously, that does not appear to be the BOP's public stance. Rick Stover, the BOP's "First Step Act subject matter expert," recently completed a Question-and-Answer interview on the BOP's YouTube channel where he repeatedly noted that the difference between the FSA and SCA is that the FSA is mandatory while the SCA is discretionary. Federal Bureau of Prisons, *First Step Act Interview and Updates*, YOUTUBE (Jan. 22, 2026), *available at* https://www.youtube.com/watch?v=HjrImbrF9-8.

- 11:58: "But unlike Second Chance Act, the language under FSA is very definitive. It's will and shall. These credits will and shall be applied."
- 30:05: "[The RRC] is always going to give them the FSA time. They can't always give the full benefit of the SCA recommended time."
- 32:12: "Second Chance Act is the law. There's discretion within that law. And so they have to understand that it's different than FSA."
- 34:20: "But the one thing that I would stress is the distinction between the FSA law and the Second Chance Act law, and really the discretionary portion that exists within the Second Chance Act. FSA, the inmates are going to get the time credits that they earned, the time credits supplied, and they're going to be placed in the community on those dates. The Second Chance Act still remains under the law, discretionary."

According to Stover, this case should not even exist as the BOP is honoring all of its mandatory FSA transfers. *Id.*, at 28:40 ("Now what I, what we've seen, is all the dates we are getting from the RRM offices across the country are at least the FSA conditional placement date. Let me say that, the inmates are at least getting their FSA conditional placement date. So I said earlier that we're getting it right on the calculations. Inmates are getting every single day of time credits that they earn and apply, they are being approved by the RRM in the community. The misnomer is that SCA time.").

Appellate Case: 25-3090    Page: 11    Date Filed: 02/10/2026 Entry ID: 5606552

are not "practicable".  This language is nowhere to be found in the FSA, and the BOP does not have that same authority when it comes to FSA transfers.

In addition, the SCA specifically states that "[n]othing in [§ 3624(c)] shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621."  18 U.S.C. § 3624(c)(4).  In other words, the decision of whether and when to transfer a prisoner under the SCA is still bound by the discretion afforded to the BOP in § 3621(b).  This language is again nowhere to be found in the FSA.

The decision of whether and when to transfer a prisoner under the FSA, by comparison, is bound by § 3624(g).  18 U.S.C. § 3632(d)(4)(C) (ETCs "shall" be applied towards prerelease custody or supervised release and the prisoner "shall" be transferred "as determined under section 3624(g)").  The BOP's FSA policy reinforces this fact.  The policy lists the requirements from § 3624(g) as those that matter for "[c]onsideration for application of FSA Time Credits".  App. 119; R. No. 13-5, at 20.  Later, the policy states that "[t]he RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (*see* 18 U.S.C. § 3621(b)), required under the Second Chance Act, *plus* the remaining number of [E]TC days not applied to supervised release at the time of the referral." App. 121; R. No. 13-5, at 20 (emphasis added).  Per its policy, the BOP is supposed to evaluate the requirements of § 3624(g) to apply ETCs, and then add those ETCs *on top of* the amount of time determined under the SCA using § 3621(b)'s five

12

Appellate Case: 25-3090     Page: 12     Date Filed: 02/10/2026 Entry ID: 5606552

factors. The policy separates these decisions and assigns § 3624(g)'s requirements to the decision of whether and when to transfer someone under the FSA, and assigns § 3621(b)'s five factors to the decision of whether and when to transfer someone under the SCA.

Congress could have used these same discretionary limits from the SCA again in the FSA, and made it so the BOP enjoyed the same discretion over the decision of whether and when to transfer a prisoner under the FSA. The language was readily available from the SCA. Congress chose not to, and that choice must be given meaning. *Jones v. Engleman*, No. 222CV05292MCSGJS, 2022 WL 6563744, at \*11 (C.D. Cal. Sept. 7, 2022), *report and recommendation adopted in relevant part, rejected in part*, No. 222CV05292MCSGJS, 2022 WL 6445565 (C.D. Cal. Oct. 7, 2022) ("Had Congress intended that the BOP's FSA-based early release decisions be governed by and conditioned upon the BOP's discretionary consideration of the multiple factors listed in Section 3621(b), it knew how to do this and could and would have said so. That Congress omitted anything akin to the Section 3621(b) discretionary factors from the pertinent FSA provisions regarding early release indicates that they are not a part of them."); *see also Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." (citation omitted)). Instead, Congress created a new set of requirements in § 3624(g) to

13

determine whether and when a transfer under the FSA should happen. Section 3624(g)'s requirements are far different from the factors outlined for SCA transfers in § 3621(b), emphasizing the fact that they are indeed two different decisions. Appl't. Br., at 42-43.[2]

Other fundamental aspects of the FSA make it clear it is much different than the discretionary SCA and should be treated as such. First, prisoners can spend far longer in prerelease custody under the FSA than they can under the SCA. 18 U.S.C. § 3624(g)(10) ("The time limits under subsections (b) and (c) [the SCA] shall not apply to prerelease custody under this subsection [the FSA]."). Other than the FSA's limit that only 365 ETCs can be used towards advancing the supervised release term, the FSA has no time limit. Second, Congress developed the FSA's ETC transfer to incentivize prisoners to take part in recidivism reduction programs and activities. The incentive only works if prisoners know they will receive it. Minnesota Law Amicus Br., at 7-11. Finally, the FSA admonishes that "[t]he Director of

---

[2] Stover repeatedly refers to them as SCA factors, further proof that the BOP does not view the SCA's five factors as controlling in FSA decisions. *First Step Act Interview and Updates*, *available at* https://www.youtube.com/watch?v=HjrImbrF9-8.
- 20:10: Noting while discussing the SCA that "there continues to be a five-factor review. . . . There's five factors spelled out in the law."
- 20:45: "The discretionary component of the Second Chance Act is written into the law. There are those five factors."
- 29:38: "I would remind folks that the very first factor of the five-factor review under the Second Chance Act is resources of the facility contemplated."
He never discusses § 3621(b)'s five factors as if they relate to the FSA.

the [BOP] shall ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." 18 U.S.C. § 3624(g)(11). This directly contradicts the first factor used to determine whether or when a SCA transfer can occur. 18 U.S.C. § 3621(b)(1) ("considering the resources of the facility contemplated"). And it counters the BOP's narrative that it could simply leave Osorio-Calderon in FCI Sandstone once it could not find a space that would take him initially. App. 86-88; R. Doc. 13 ¶¶ 15, 17-20; *see also* Appl'e. Br., at 24 (noting that Osorio-Calderon was denied a transfer for reasons including "the lack of available resources at a suitable halfway house"). Congress has foreclosed that excuse when it comes to FSA transfers.[3]

The decision of *whether and when* to transfer a prisoner out of prison under the FSA has been taken out of the BOP's hands. Under the law, when a prisoner has met § 3624(g)'s requirements, including that his ETCs equal the time left on his sentence, the prisoner *shall* be transferred to prerelease custody or supervised release. Subsection 3621(b) only affects FSA transfers so far as the BOP retains its usual discretion to designate *where* the prisoner is transferred, i.e., to which RRC, or

---

[3] In fact, Osorio-Calderon's counsel learned since the BOP's responsive brief was filed that the BOP will place Osorio-Calderon in a Florida RRC in June 2026, further undercutting the idea that it could not place him somewhere. If this occurs, Osorio-Calderon will forego nearly two years of earned time in prerelease custody, and instead receive only one month outside of FCI Sandstone before his supervised release term.

Appellate Case: 25-3090     Page: 15     Date Filed: 02/10/2026 Entry ID: 5606552

to home confinement and where. *See Woodley v. Warden, USP Leavenworth*, No. 24-3053-JWL, 2024 WL 2260904, at *4 (D. Kan. May 15, 2024) ("In this regard, the Court notes that while the FSA requires transfer to prerelease custody, the BOP retains the discretion to decide whether to transfer petitioner to an RRC or to home confinement, or even whether to transfer petitioner to early supervised release."). The categorically different decision of *whether and when* to transfer a prisoner from prison to prerelease custody or supervised release is made pursuant to § 3624(g)'s requirements, not under § 3621(b). *See Briones-Pereyra v. Warden*, No. 1:23-cv-1718-SAB-HC, 2024 WL 4171380, at *2 (E.D. Cal. Sept. 12, 2024) (holding that the court had jurisdiction to compel BOP action regarding ETCs "because application of [E]TCs to eligible prisoners who have earned them is *required*, not discretionary, under the statute" (emphasis in original)).

**B. The decision of whether and when to transfer a prisoner under 18 U.S.C. § 3624(g) is reviewable, even if the decision of where to then transfer the prisoner under 18 U.S.C. § 3621(b) is not.**

As explained above, the BOP's discretion under § 3621(b) arises only *after* the decision has been made in the FSA per § 3624(g) that the transfer out of prison must happen, and the BOP is choosing where to send the prisoner. Subsection 3621(b) has the five factors to determine where to actually place the prisoner at that point. The judicial bar in § 3621(b) states that "a designation of a place of imprisonment *under this subsection* is not reviewable by any court."

16

(emphasis added). The bar on judicial review only applies to the decision under § 3621(b) of *where* to send the prisoner for his mandatory FSA transfer. The decision of *whether and when* to transfer someone out of prison and onto prerelease custody under the FSA is made under § 3624(g), not under subsection 3621(b), and therefore does not fall within the bar on judicial review.

Courts have frequently recognized this distinction. *Adepoju v. Scales*, 782 F. Supp. 3d 306, 314–15 (E.D. Va. 2025) ("The BOP's plenary control over 'the place of [a] prisoner's imprisonment' under 18 U.S.C. § 3621(c) does not render inoperative the FSA's 'system of *mandatory* time credits', *Valladares* [*v. Ray*, 130 F.4th 74, 77 (4th Cir. 2025)], which unambiguously requires that '[t]he Director of the [BOP] shall transfer eligible prisoners . . . into prerelease custody or supervised release.' 18 U.S.C. § 3632(d)(4)(C). Nor does it strip this Court of its jurisdiction over Mr. Adepoju's claim that the BOP violated this provision of the FSA." (emphasis in original)); *Popoola v. Scales*, No. 3:25CV390 (DJN), 2025 WL 3473370, at *8–10 (E.D. Va. Dec. 3, 2025) (rejecting BOP's argument "that § 3621(b)'s judicial review bar, which insulates the BOP's prerelease placement decisions under § 3624(c), also covers the BOP's placement of individuals in halfway houses pursuant to the FSA's time credit system in § 3632(d)(4)(C)"); *Parker v. Emmerich*, No. 25-CV-410-JDP, 2025 WL 3163821, at *1 (W.D. Wis. Oct. 27, 2025) ("But Parker is not challenging the Bureau's placement decision, that is,

17

its decision to place him in FCI Oxford during his sentence. Instead, he is challenging the Bureau's decision to change his transfer date because he believes the [FSA] and [SCA] entitled him to be transferred on April 30, 2025. Put differently, he is disputing whether the Bureau abided by statutory requirements concerning his incarceration status, and courts may review these types of disputes without running afoul of § 3621(b). Consequently, § 3621(b)'s limitation on my ability to review the Bureau's placement decisions does not apply to Parker's petition." (citation omitted)); *Martin v. Phillips*, No. 2:25-CV-00687-DJC-AC, 2025 WL 732829, at *4–5 (E.D. Cal. Mar. 7, 2025) (rejecting the BOP's argument that "the BOP's discretion over the use of prerelease custody under section 3621(b)" overrules the mandatory nature of § 3632(d)(4)(C)); *Jones,* 2022 WL 6563744, at *11 ("Section 3621(b) sets forth a host of factors to be considered by the BOP in making its discretionary inmate placement decisions under that statute – discretionary decisions that, by the statute's terms, are not judicially reviewable. In marked contrast, Section 3632(d)(4)(C) couches the FSA's early release requirement as a mandatory, nondiscretionary duty – *to wit*, the BOP 'shall' apply the prisoner's ETCs and then 'shall' transfer the prisoner to one of two forms of early release to be determined by the BOP." (emphasis in original)). It is an important distinction to recognize. Without it, prisoners have no way to vindicate their statutory right and seek a mandatory FSA transfer when the BOP has refused it.

18

Recognizing this distinction harmonizes the language and structure of the FSA and the SCA and gives both meaning. The FSA has already made some of the decisions the BOP continues to claim discretionary authority over here. The BOP outlines how the facts of Osorio-Calderon's conviction led to the decision not to transfer him out of FCI Sandstone, effectively denying him the opportunity to apply the ETCs he rightfully earned under the FSA. Appl'e. Br., at 9-11. But Congress already outlined a long list of offenses in the FSA for which a conviction would render the person ineligible to earn ETCs. 18 U.S.C. § 3632(d)(4)(D). Congress's ineligibility determination denies over 50,000 prisoners from ever being able to transfer to an RRC or home confinement under the FSA because of their conviction.[4] Osorio-Calderon's conviction is not amongst them, and he is eligible to earn ETCs. App. 84; R. Doc. 13 ¶ 5. Congress also mandated that the DOJ and BOP implement a system to determine recidivism risk—PATTERN—that takes into account the prisoner's history and conduct. 18 U.S.C. § 3632(a). Prisoners with a Medium or High PATTERN score cannot apply ETCs without the discretionary approval of their warden. 18 U.S.C. § 3624(g)(1)(D). This Congressional directive restricts nearly 40,000 otherwise ETC-eligible prisoners from being able to automatically apply

---

[4] Department of Justice, *First Step Act Annual Report* (June 2024), at 19, *available at* https://www.bop.gov/inmates/fsa/docs/first-step-act-annual-report-june-2024.pdf.

19

their ETCs.[5]  Again, this restriction does not apply to Osorio-Calderon.  He has a Low PATTERN score and can—per the FSA's terms—apply his ETCs without a discretionary decision from his warden.  App. 84; R. Doc. 13 ¶ 6.  Congress has already made significant decisions over who can earn and who can apply ETCs.  That includes an instance where the BOP retains a discretionary decision: whether and when to allow a Medium or High PATTERN prisoner to apply their ETCs.  The BOP is unilaterally claiming discretion that exceeds what Congress granted it, something it cannot do.  *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019) ("[A]s in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write.").

The FSA's addition of the preference that prisoners be placed within 500 miles of their residence to § 3621(b) further supports Osorio-Calderon's interpretation. First Step Act, Pub. L. 115-391, title VI, § 601(2), 132 Stat. at 5237 (amending 18 U.S.C. § 3621(b)).  In the FSA, Congress added that the BOP "shall . . . place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence" to § 3621(b).  *Id*.  But that preference is littered with discretion: it is subject to "bed availability, the prisoner's security designation, the prisoner's programmatic needs,

---

[5]  *First Step Act Annual Report*, at 19, *available at* https://www.bop.gov/inmates/fsa/docs/first-step-act-annual-report-june-2024.pdf.

the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the [BOP]," and the 500 driving mile requirement is only available "to the extent practicable." *Id.*[6] Congress, by adding the language barring judicial review over decisions made under subsection 3621(b), codified the BOP's discretion over placement decisions, including the new decision of how to weigh the preference to place a prisoner close to home. Limiting the judicial bar *to that subsection*, though, demonstrates that Congress did not want to expand the bar on judicial review to the mandatory FSA transfer outlined *in another section*, § 3624(g). An interpretation barring any judicial review of the BOP's decision of whether and when to transfer someone under the FSA otherwise frustrates Congress's mandatory command.

All of this textual and contextual analysis is colored by the fact that the new ETC system was part of a generational criminal justice bill meant to reduce recidivism through an incentive system whereby prisoners earn additional time in the community in return for taking part in programming and productive activities. Minnesota Law Amicus Br., at 3-15. Further, Congress made clear throughout the FSA that it was unhappy with the BOP's control of several of its responsibilities, and

---

[6] The "shall" language added in the FSA here being limited by additional discretionary terms stands in stark contrast to the FSA's mandatory language in § 3624(d)(4)(C), which has no such limits.

21

the FSA meant to rectify that.[7]  Allowing the BOP to refuse to honor transfers without any judicial recourse undermines the FSA's very purpose – to drive improvements throughout the carceral system.

The BOP's argument that Congress was aware of preexisting Circuit decisions applying the § 3621(b) factors to § 3624(c) is ineffective at countering this textual and contextual evidence.  Appl'e. Br., at 22-24.  According to the BOP, "when Congress stated that [ETCs] 'shall be applied toward time in prerelease custody,' it understood that courts would interpret that provision as requiring BOP to make a place-of-imprisonment decision under § 3621(b)."  Appl'e. Br., at 23.  Congress could not have been clearer that the FSA is very different.  It used mandatory language rather than discretionary.  It did not include any of the limitations or

---

[7] Notably, the FSA positioned the Attorney General—not the BOP—as the primary authority for implementing the new programs.  18 U.S.C. §§ 3631(a), 3632(a), 3632(f)(4) (the Attorney General "shall carry out" the reforms implementing ETCs, "shall develop" the recidivism reduction program, and must ensure BOP staff "demonstrate competence" in administering the program).  Congress also gave the Attorney General substantial power to review the BOP's actions through a "Quality Assurance" provision requiring "annual audits" to ensure that the BOP uses the program "in an appropriate and consistent manner."  18 U.S.C. 3632(g).  Moreover, the FSA divested the BOP of discretion in certain ways.  First, the FSA removed the BOP as the sole arbiter of compassionate release motions due to its "failures" in managing the program.  *United States v. Brooker*, 976 F.3d 228, 231–32 (2d Cir. 2020).  Second, as discussed, the FSA augmented the BOP's discretion in determining the prisoner's location.  18 U.S.C. § 3621(b).  Third, Congress prohibited the BOP's practice of restraining pregnant prisoners.  18 U.S.C. § 4322.

22

language found in the SCA. And it created a new set of requirements in § 3624(g) to determine whether and when the FSA transfer would occur.

The BOP also argues that because Congress used the term "prerelease custody" in the FSA, it brought "all the case law interpreting BOP's prerelease-custody decisions as place-of-imprisonment designations under § 3621(b)." Appl'e. Br., at 23-24. As such, "[t]he Court should not presume that Congress meant 'prerelease custody' in the FSA to be treated differently." Appl'e. Br., at 23-24. Congress did not need a new definition or type of "prerelease custody" because it intended for prisoners to still be placed in RRCs or home confinement. It did, however, create a fundamentally different system in the FSA for how prisoners get into prerelease custody. There are no statutory ineligibilities for a prisoner to secure SCA time. It is all left to the BOP to decide who gets SCA time and how much of it they get (up to the statutory limits). 18 U.S.C. § 3624(c)(1)-(2), (4). By comparison, the FSA already rules many prisoners ineligible to earn ETCs, and even more unable to apply their ETCs without their warden's approval. 18 U.S.C. § 3632(d)(4)(D); 18 U.S.C. § 3624(g)(1)(D). Moreover, the ETCs are part of a new incentive system that specifically rewards prisoners with earlier transfers to the community in return for their participation in programming and productive activities. Minnesota Law Amicus Br., at 3-15.

23

The BOP's best case to support its interpretation that Osorio-Calderon's FSA transfer is subject to § 3621(b)'s five factors is *United States v. Houck*, but *Houck* considered the SCA and the CARES Act, both laws that by their own terms provide the BOP discretion. 2 F.4th 1082, 1085 (8th Cir. 2021) ("Because these statutes [the SCA and CARES Act] give authority to place a prisoner in home confinement to the Director of the BOP, not the district court, the district court correctly held that it did not have authority to change Houck's place of imprisonment to home confinement under § 3624(c)(2)."). *Houck* does support the BOP's goal of further conflating various laws and improperly grafting them onto each other to refuse Osorio-Calderon the transfer he is due under the FSA, but when properly separated and each law is considered on its own terms, this unrelated case does not illuminate anything for the Court. *Cf.* Appl't. Br., at 36-39; ACLU Amicus Br., at 17-18 (citing cases ordering the mandatory transfer under the FSA).

Osorio-Calderon agrees a prisoner cannot go to court if the BOP has applied their ETCs on the correct date and transferred them to a different RRC than they wanted, or sent them to an RRC instead of home confinement. Subsection 3621(b)'s bar on judicial review over that decision maintains BOP's historical discretion and avoids courts second-guessing BOP placement decisions. But a prisoner *can* go to court to force the FSA transfer under § 3624(g) when the BOP has denied it. *Popoola*, 2025 WL 3473370, at *8–10 ("Stated more simply, § 3624(c)'s alternate

24

method by which BOP may transfer inmates to supervised release or prerelease custody, and which does *not* involve FSA credits, does not permit judicial review." (emphasis in original)).

Section 3632(d)(4)(C) mandates that the BOP shall transfer prisoners from prison onto prerelease custody. Section 3624(g) outlines whether and when that transfer will happen. The BOP then chooses where to transfer the prisoner by that date, and is safe from second-guessing of that location decision by § 3621(b)'s bar on judicial review. But if § 3621(b)'s bar is allowed to expand to those earlier provisions found in other sections of the FSA, Congress's command is ignored, its incentive system undermined, and stranded prisoners left without recourse. That would be an extremely odd outcome for a mandatory system meant to help transform our carceral system.

The BOP's only argument as to why it should not be forced to transfer Osorio-Calderon as required under the FSA is that this Court does not have the ability to review its violation. That is not true. This Court should recognize as much.

**II.     Habeas Jurisdiction Exists to Adjudicate this Petition.**

The BOP's conflation of concepts to avoid judicial review extends to its arguments regarding habeas jurisdiction. The BOP misses that transfers out of prison and into the community have been adjudicated in habeas, even when the petitioner remains in custody. Instead, the BOP promotes cases with no factual similarities to

25

this matter, while denigrating factually similar Eighth Circuit cases because they do not mention jurisdictional findings. As this case fits within both existing Eighth Circuit and Supreme Court precedent and does not disrupt the Circuit's bright-line rule preventing conditions-of-confinement claims, the BOP's second argument seeking to avoid judicial scrutiny of its FSA violation should also be denied.

### A. The Supreme Court and Eighth Circuit have both adjudicated similar habeas petitions seeking transfer from confinement in prison to custody in the community.

The BOP's jurisdictional analysis conflates *confinement* with *custody*, resulting in crucial precedent being ignored. Both Eighth Circuit and Supreme Court precedent support finding habeas jurisdiction for a case such as this seeking mandatory release from confinement in prison into custody in the community. The Eighth Circuit, and its subservient courts, have adjudicated claims seeking transfers from confinement in prison to custody in the community. Appl't. Br. at 20-22; ACLU Amicus Br., at 18-25 (citing cases). Those claims easily fit within the Supreme Court's precedent that habeas relief remains the "appropriate remedy" where it "shorten[s] the length of [the petitioner's] actual confinement in prison" even if they will remain in custody in the community upon release. *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973); *see also* Appl't. Br. at 22-24; ACLU Amicus Br., 5-11. These decisions not only neatly parallel Osorio-Calderon's claim, they should come as no surprise given the significant differences between being

26

incarcerated in prison versus in custody in the community, whether in an RRC or on home confinement. Appl't. Br. at 24-27; ACLU Amicus Br., at 12-17.

The BOP's attempt to sidestep this Supreme Court jurisprudence by framing the current supervised release system as the analogue to the prior federal parole system is rebutted by the Supreme Court's language in those cases. Appl'e. Br., at 32-33. In *Morrissey v. Brewer*, the petitioners filed habeas petitions challenging parole revocation without due process. The lower court held that "parole is only 'a correctional device authorizing service of sentence outside of the penitentiary,' the parolee is still 'in custody'" of the corrections department, and courts should not "interfere with disciplinary matters properly under the control of state prison authorities." 408 U.S. 471, 474-75 (1972). The Supreme Court reversed and adjudicated the habeas petition. The Supreme Court stated, "[t]he essence of parole is release from prison, *before the completion of sentence*, on the condition that the prisoner abide by certain rules *during the balance of the sentence*." *Id.* at 477 (emphases added). A person on parole remains "*in custody*," but his experience is "very different from that of confinement in a prison." *Id.* at 482-83 (emphasis added).

In *Young v. Harper*, the petitioner challenged revocation of preparole—a means for Oklahoma to reduce prison overcrowding by moving some prisoners into the community—without due process. The government argued that *Morrissey* was

27

Appellate Case: 25-3090     Page: 27     Date Filed: 02/10/2026 Entry ID: 5606552

inapplicable because, unlike parolees, the preparolees "remained within the custody of the Department of Corrections" and reimprisonment "was nothing more than a 'trasnfe[r] to a higher degree of confinement[.]" 520 U.S. 143, 148–49 (1997) (first alteration in original). The Supreme Court rejected this "nonexistent distinction," noting that the preparolee remained in legal custody but "was released from prison before the expiration of his sentence" and "lived a life generally free of the incidents of imprisonment." *Id.* at 148, 150. In both cases, the petitioners remained in custody, but sought to stay in the community rather than be returned to prison. The Supreme Court adjudicated the petitions because the latter aspect was more important, even when the government pressed the former.

By comparison, the facts of the cases relied on by the District Court below to strip jurisdiction are far afield from the facts of Osorio-Calderon's claim. The *Kruger v. Erickson* petitioner brought a habeas claim after he was forced to take part in a blood-draw. 77 F.3d 1071, 1073 (8th Cir. 1996). The *Spencer v. Haynes* petitioner alleged in his habeas petition that he was placed in a four-point restraint without a hearing. 774 F.3d 467, 468 (8th Cir. 2014). Those are both conditions-of-confinement cases that challenge actions by correctional staff on prisoners in a prison. Appl't. Br. at 25-26; ACLU Amicus Br., at 20-23. They are poor parallels to draw from for Osorio-Calderon's claim. They say nothing about the availability of habeas where—as here—the petitioner seeks release from imprisonment in prison

28

into custody in the community.  In other words, adjudicating this matter still leaves this Court's bright-line rule barring true conditions-of-confinement claims in place.

The BOP's most similar case, the one that involves any sort of transfer, is *Jones v. Harris*, 339 F.2d 585 (8th Cir. 1965).  As an initial matter, Jones was seeking an intra-prison transfer, from one prison to another.  That is a much different request than Osorio-Calderon's, which seeks transfer from a prison into an RRC or home confinement.  Further, *Jones* predates the *Morrissey* and *Preiser* decisions by nearly a decade.  It is an old enough case that the petitioner was challenging his transfer from Alcatraz, a prison ordered closed by Attorney General Robert F. Kennedy in 1963.  It does not (as it could not) account for any of the subsequent Supreme Court decisions solidifying habeas jurisdiction as key to securing relief for petitioners seeking transfers out of prison and into the community, or the Eighth Circuit's more recent decisions doing the same.

**B. The Eighth Circuit has a jurisdictional carveout where the Bureau of Prisons has not followed the law in deciding whether to approve transferring a prisoner.**

The District Court also relied § 3621(b)'s bar on judicial review to deny the second jurisdictional basis the Magistrate Judge recommended.  The Magistrate Judge's R&R noted that "[e]ven if [*Trump v.*] *J.G.G.*[, 604 U.S. 670 (2025)] does not provide . . . jurisdiction to review Osorio-Calderon's habeas claim," "Mr. Osorio-Calderon's habeas claim is cognizable because he alleges that the BOP is violating

29

the FSA by failing to transfer him." App. 141-142; R. Doc. 20, at 11-12. The Magistrate Judge then found Osorio-Calderon's transfer to be required based on the FSA's mandatory language, rejecting the BOP's various arguments that sources of discretion found elsewhere superseded the FSA's mandatory nature. App. 142-147; R. Doc. 20, at 12-17. The District Court, however, found that "[u]nless and until the Eighth Circuit decides that a habeas petition that seeks transfer to prerelease custody is not merely a challenge to the petitioner's place of confinement, Section 3621(b) appears to divest the Court of jurisdiction to consider Osorio-Calderon's petition." App. 158; R. Doc. 27, at 9-10.

The inapplicability of § 3621(b) to the transfer Osorio-Calderon seeks has been discussed above. With that set aside, the Eighth Circuit's jurisdictional carveout remains. The Eighth Circuit, like the Tenth Circuit, has recognized that § 2241 petitions where the BOP has violated the law are proper. Appl't. Br., at 27-30. For example, in *Fults v. Sanders*, the Eight Circuit granted relief to Fults, who brought a § 2241 petition arguing that the BOP had not followed the law in determining and limiting his time in prerelease custody. 442 F.3d 1088, 1088–89 (8th Cir. 2006); *see also Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (holding that BOP regulation expanding BOP's discretion over prerelease custody placement decisions was improper). The BOP glosses over this fact by arguing that Osorio-Calderon "does not argue, expressly or impliedly, that his continued custody

30

is illegal; he merely seeks to serve the remainder of his prison term in a different place, under conditions he expects will be more agreeable." Appl'e. Br, at 34. Osorio-Calderon notes, repeatedly, that the BOP is violating the FSA's express terms by not completing his transfer to prerelease custody, and that violation sits within the Eighth Circuit's jurisdictional carveout. Appl't. Br., at 27-30.

There is ample room within Supreme Court and Eighth Circuit precedent to decide this case. Doing so would not result in courts second-guessing the BOP's *discretionary* placement decisions. Appl'e. Br., at 36 (claiming that Osorio-Calderon "asked the district court to second guess his designation to FCI Sandstone, conduct its own placement analysis, and order him to be placed somewhere else"). Rather, the only decision for the Court to make would be if the requirements of § 3624(g) have been met, and if the BOP has transferred the prisoner to either prerelease custody or home confinement *as mandated under the FSA*. The BOP would still have discretion to decide where the prisoner goes without judicial interference.

Adjudicating this case would ensure that the FSA is properly implemented, and ensure that petitioners like Osorio-Calderon have some recourse to vindicate their rights. Otherwise, they have none. Appl't. Br., at 46-50 (explaining that no *Bivens* action would lie).

31

## CONCLUSION

For the foregoing reasons and based on the entire record, Osorio-Calderon requests that this Court reverse the District Court and remand with instructions to grant his petition, whether under habeas or through a writ of mandamus.

Respectfully submitted,

DATED: February 10, 2026 *s/ Trevor N. Parkes*

Trevor N. Parkes
Attorney ID No. 0402172
Counsel & Project Director, First Step Act Resource Center
National Association of Criminal Defense Lawyers
1660 L St NW, 12th Floor
Washington, DC 20036
Phone number: (202) 465-7665
Email: tparkes@nacdl.org

*Appointed Counsel for Appellant Jose Osorio-Calderon*

32

# CERTIFICATE OF COMPLIANCE

The undersigned attorney for Appellant Jose Osorio-Calderon certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. The brief has 6,491 words, proportionally spaced using Times New Roman, 14-point font. The brief was prepared using Word for Microsoft 365. The undersigned attorney also certifies that the brief has been scanned for viruses and, to the best of our ability and technology, believes it is virus-free.


DATED: February 10, 2026                                     *s/ Trevor N. Parkes*

                                                              Trevor N. Parkes

                        *Appointed Counsel for Appellant Jose Osorio-Calderon*

Appellate Case: 25-3090     Page: 33     Date Filed: 02/10/2026 Entry ID: 5606552

## CERTIFICATE OF SERVICE FOR DOCUMENTS FILED USING CM/ECF

I hereby certify that on February 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: February 10, 2026            *s/ Trevor N. Parkes*

Trevor N. Parkes

*Appointed Counsel for Appellant Jose Osorio-Calderon*

Appellate Case: 25-3090    Page: 34    Date Filed: 02/10/2026 Entry ID: 5606552