# United States Court of Appeals
## For the Eighth Circuit

---

No. 25-3090

---

Jose Osorio-Calderon

*Petitioner - Appellant*

v.

Warden, FCI Sandstone

*Respondent - Appellee*

------------------------------

American Civil Liberties Union; American Civil Liberties Union of Minnesota; Clemency Project Clinic of the University of Minnesota Law School

*Amici on Behalf of Appellant(s)*

---

Appeal from United States District Court
for the District of Minnesota

---

Submitted: May 13, 2026
Filed: June 30, 2026

---

Before LAVENSKI R. SMITH, BENTON, and STRAS, Circuit Judges.

---

LAVENSKI R. SMITH, Circuit Judge.

The First Step Act (FSA) provides that eligible prisoners "who successfully complete[] evidence-based recidivism reduction programming or productive activities, shall earn time credits." 18 U.S.C. § 3632(d)(4)(A). These time credits "shall be applied toward time in prerelease custody or supervised release," and the Bureau of Prisons (BOP) "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). Petitioner Jose Osorio-Calderon sought a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to compel the BOP to apply his time credits toward transfer to prerelease custody in a halfway house. The district court[1] dismissed the petition, applying 18 U.S.C. § 3621(b), which provides that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." The court reasoned that notwithstanding the FSA's mandatory language requiring transfer to prerelease custody, it could not review the BOP's placement decision. We agree and affirm.

## I. *Background*

### A. *Statutory Background*

In the Sentencing Reform Act of 1984 (SRA),[2] Congress directed that "[a] person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the [BOP] until the expiration of the term imposed, or until earlier released for satisfactory behavior." 18 U.S.C. § 3621(a). Once an inmate is committed to BOP custody, the BOP "shall designate the place of the prisoner's imprisonment" and transfer inmates among facilities. *Id.* § 3621(b). In exercising that authority, the BOP may place an inmate in "any available penal or correctional

---

[1]The Honorable Laura M. Provinzino, United States District Judge for the District of Minnesota.

[2]Pub. L. No. 98-473, title II, ch. 2, § 212(a)(2), 98 Stat. 1837, 2007–09 (October 12, 1984) (codifying 18 U.S.C. §§ 3621, 3624).



Appellate Case: 25-3090 Page: 2 Date Filed: 06/30/2026 Entry ID: 5656400

facility . . . that [it] determines to be appropriate and suitable" after considering five statutory factors. *Id.*

Near the end of an inmate's sentence, the BOP "shall, to the extent practicable, ensure that [the] prisoner . . . spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *Id.* § 3624(c)(1). In the Second Chance Act of 2007 (SCA),[3] Congress authorized the BOP to place prisoners in "a community correctional facility" or "home confinement." 18 U.S.C. § 3624(c)(1)–(2). Congress expressly provided, however, that "[n]othing in [the prerelease custody] subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which governs inmates' placement. *Id.* § 3624(c)(4).

Under the SRA, the BOP "shall" release a federal prisoner "on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence" for good behavior. *Id.* § 3624(a).

Against this backdrop, Congress enacted the FSA in 2018,[4] which "directed the Attorney General to develop a Risk and Needs Assessment System that includes 'incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs.'" *Fortner v. Eischen*, 170 F.4th 655, 657 (8th Cir. 2026) (quoting 18 U.S.C. § 3632(d)). Under the FSA, an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate of 10 days for every 30 days of successful participation in programming, or 15 days per 30 days of successful

---

[3]Pub. L. No. 110-199, title II, ch. 3, § 251(a), 122 Stat. 657, 692–94 (Apr. 9, 2008) (codified at 18 U.S.C. § 3624(c)(1)–(2)).

[4]Pub. L. No. 115-391, title I, 132 Stat. 5194, 5195 (Dec. 21, 2018) (codified at 18 U.S.C. §§ 3621, *et seq.*).

participation if they maintain a minimal or low risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A).

"Time credits earned . . . by [eligible] prisoners . . . shall be applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C).[5] "If an eligible prisoner's sentence includes a term of supervised release after imprisonment, the BOP may apply earned FSA time credits . . . to begin the term up to twelve months earlier." *Fortner*, 170 F.4th at 657 (citing 18 U.S.C. § 3624(g)(3)). The FSA provides that the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

The FSA also amended § 3621(b) to address judicial review of BOP placement decisions. Specifically, Congress added the following language: "Notwithstanding any other provision of law, a designation of a place of imprisonment under [the place-of-imprisonment] subsection is not reviewable by any court." Pub. L. No. 115-391, title I, 132 Stat. 5194, 5237 (Dec. 21, 2018) (codified at 18 U.S.C. § 3621(b)).

B. *Factual Background*

On January 30, 2018, a federal district court in the District of Puerto Rico sentenced Osorio-Calderon to 151 months' imprisonment for coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). He is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota (FCI-Sandstone). During his imprisonment, Osorio-Calderon has participated in recidivism reduction programming and earned time credits. *See* 18 U.S.C. § 3632(d)(4). By April 2, 2025, Osorio-Calderon had accumulated 1,095 days of time credits. Three hundred sixty-five of those days were applied to advance his projected release date from July 3, 2027, to July 3, 2026. The remaining 730 days of

[5]Section 3624(g)(1) of 18 U.S.C. defines "eligible prisoners." There is no dispute that Osorio-Calderon satisfies the criteria of § 3624(g)(1).



Appellate Case: 25-3090 Page: 4 Date Filed: 06/30/2026 Entry ID: 5656400

time credit were applied toward time in prerelease custody. *See id.* § 3632(d)(4)(C). Accordingly, Osorio-Calderon became eligible for placement in prerelease custody on July 3, 2024.

Osorio-Calderon initially sought placement in prerelease custody in New York, where his sister resides and where he hoped to serve his supervised release term. In March 2024, however, the United States Probation Office denied the request, concluding that his sister's residence was "not suitable for supervision." R. Doc. 13-6, at 1. The BOP then explored prerelease placement options in Puerto Rico. In November 2024, the BOP's Residential Reentry Manager's field office in Puerto Rico determined that placement in a residential reentry center was not feasible because local ordinances restricting the placement of sex offenders near schools and daycare facilities applied to Osorio-Calderon's offense. The BOP revisited the issue in April 2025, but the Residential Reentry Manager's field office again declined to approve residential reentry center placement. As a result, although Osorio-Calderon became eligible for prerelease custody in July 2024, he remains incarcerated at FCI-Sandstone.

After unsuccessfully pursuing administrative relief, Osorio-Calderon filed this habeas action in district court, arguing that the BOP has unlawfully failed to apply his earned time credits. He sought an order requiring his immediate transfer to prerelease custody. Alternatively, he sought mandamus relief compelling the BOP to effectuate that transfer. *See* 28 U.S.C. § 1361. The government responded that the district court lacked jurisdiction to review the BOP's placement decisions because they concern an inmate's conditions and place of confinement. The magistrate judge issued a report and recommendation (R&R) recommending that the district court grant the habeas petition. In the R&R, the magistrate judge concluded that the district court has jurisdiction to review Osorio-Calderon's claim "that the BOP should have, by statute, transferred him to prerelease custody sometime in 2024." R. Doc. 20, at 10. The magistrate judge then determined that the FSA requires the BOP to transfer Osorio-Calderon to prerelease custody. The government objected to the R&R.



Appellate Case: 25-3090 Page: 5 Date Filed: 06/30/2026 Entry ID: 5656400

The district court sustained the government's objections to the R&R, rejected the R&R, and dismissed Osorio-Calderon's habeas petition without prejudice. In relevant part, the court reasoned that notwithstanding the FSA's mandatory language requiring transfer to prerelease custody, it lacked jurisdiction to review the BOP's placement decision under § 3621(b).[6]

II. *Discussion*

On appeal, Osorio-Calderon challenges the district court's dismissal of his habeas petition. Osorio-Calderon argues that the district court erroneously treated this case as a challenge to a discretionary placement decision under § 3621(b). He maintains that, although the BOP retains discretion regarding the manner and location of prerelease placement, Congress removed any discretion over whether an eligible prisoner will be transferred. We review de novo a district court's dismissal of a habeas petition under 28 U.S.C. § 2241. *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014).

Section 3632(d)(4)(C) provides that earned "[t]ime credits . . . *shall* be applied toward time in prerelease custody or supervised release" and that the BOP "*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." (Emphases added). Osorio-Calderon argues that § 3632(d)(4)(C) requires the BOP to transfer an eligible prisoner, like himself, to prerelease custody because "shall" means "shall." "Certainly, as a general rule of statutory construction, . . . 'shall' is mandatory." *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). But the mandatory nature of § 3632(d)(4)(C)'s command "does not close the inquiry" into whether Congress authorized judicial

[6]The district court alternatively concluded that our precedent "require[s] dismissal of habeas petitions that seek an inmate's transfer to prerelease custody under the FSA because those petitions impermissibly raise a challenge to an inmate's place of confinement." R. Doc. 27, at 8. We need not determine whether the district court's alternative conclusion is correct. Instead, for the reasons discussed *infra*, we hold that the district court correctly held that it could not review the BOP's placement decision under § 3621(b).



Appellate Case: 25-3090 Page: 6 Date Filed: 06/30/2026 Entry ID: 5656400

review of the BOP's compliance with that command. *Cf. id.* (explaining that the "general rule" that "'may' is permissive" and "'shall' is mandatory" "d[id] not close the inquiry" into whether a statute's use of the word "'may' in addressing recourse to the Postal Rate Commission" permitted judicial review over claims regarding postal rates and services). "Courts will infer foreclosure of judicial review 'where congressional intent to preclude judicial review is "fairly discernable" in the detail of the particular legislative scheme.'" *Id.* at 799–800 (quoting *Ismailov v. Reno*, 263 F.3d 851, 854–55 (8th Cir. 2001)).

Accordingly, we must read § 3632(d)(4)(C) together with § 3621(b), for Congress enacted the FSA against the backdrop of the BOP's existing placement authority. Section 3621(b) provides that the BOP "shall designate the place of the prisoner's imprisonment." Residential reentry centers and home confinement are forms of prerelease custody that constitute places of imprisonment. *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) ("Because these statutes give authority to place a prisoner in home confinement to the Director of the BOP, not the district court, the district court correctly held that it did not have authority to change Houck's place of imprisonment to home confinement under § 3624(c)(2)."); *Elwood v. Jeter*, 386 F.3d 842, 846 (8th Cir. 2004) (noting BOP's agreement that community correctional facilities are places of imprisonment).

"There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In exercising its discretion, the BOP considers factors such as "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; [and] (3) the history and characteristics of the prisoner." 18 U.S.C. § 3621(b). Section 3621(b) "also requires the BOP, to the extent possible consistent with prisoner needs, security concerns, and resource constraints, to 'place the prisoner in a facility as close as practicable to the prisoner's primary residence.'" *Crowe v. Fed. Bureau of Prisons*, No. 24-CV-3582 (APM), 2025 WL 1635392, at *21 (D.D.C. June 9, 2025) (quoting 18 U.S.C. § 3621(b)). Section 3621(b) contains no requirement "that the BOP must designate a prisoner to

[prerelease] custody by a date specific." *Id.* "Importantly, Congress has acted to preclude judicial review of BOP's designation decisions: '*Notwithstanding any other provision of law*, a designation of a place of imprisonment under this subsection is not reviewable by any court.'" *Frey v. Martinez*, No. 2:23-CV-0822, 2024 WL 3264823, at *4 (W.D. La. June 3, 2024) (emphasis added) (quoting 18 U.S.C. § 3621(b)(5)), *report and recommendation adopted*, No. 2:23-CV-0822, 2024 WL 3257126 (W.D. La. July 1, 2024).

"[N]othing in § 3632(d)(4)(C) (or § 3624(g), which determines a prisoner's eligibility) negates the BOP's discretion in making housing decisions under § 3621(b)." *Crowe*, 2025 WL 1635392, at *21. In fact, § 3621(b) is implicated any time a proposed transfer to a residential reentry or home confinement is made. *Id.*; *see also* 18 U.S.C. § 3621(b) (authorizing the BOP to "designate the place of the prisoner's imprisonment"). The distinction between *where* a prisoner is placed under § 3621(b) and *whether* the prisoner is transferred under § 3632(d)(4)(C) is illusory. *Crowe*, 2025 WL 1635392, at *21. "*Whether* to transfer a prisoner necessarily depends on *where* the prisoner might be appropriately placed." *Id.* Moreover, Osorio-Calderon's "'shall-means-shall' argument overlooks that § 3632(d)(4)(C) does not specify *when* a prisoner must be transferred to prerelease custody." *Id.* at *22. It simply says that the BOP "shall" transfer those prisoners who satisfy the eligibility requirements of § 3624(g). *Id.* "Neither § 3632(d)(4)(C) nor § 3624(g) says that the BOP must transfer a prisoner *immediately* upon achieving eligibility." *Id.* (emphasis added). We conclude that § "3632(d)(4)(C) is best read as a directive that identifies what group of prisoners the BOP must transfer into prerelease custody, not as establishing an immutable date by which the BOP must effectuate individual transfers." *Id.*

We also note that "§ 3624(c), titled 'Prerelease Custody,' expressly acknowledges the BOP's discretion when placing a prisoner into prerelease custody." *Id.* That section, which was "enacted . . . as part of the earlier Second Chance Act," *id.*, provides: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," 18 U.S.C.



Appellate Case: 25-3090 Page: 8 Date Filed: 06/30/2026 Entry ID: 5656400

§ 3624(c)(4). "There is nothing in § 3632(d)(4)(C), passed as a provision of the FSA, that would signal that Congress intended to walk back its reaffirmance of the BOP's broad designation authority under § 3624(c)(4) for the purpose of placement in prerelease custody." *Crowe*, 2025 WL 1635392, at *22. Section 3624(c), like § 3632(d)(4)(C), "concerns 'Prerelease Custody.'" *Id.* These statutes must be read "as a whole." *Id.* For that reason, "[i]t would be a mistake to think that Congress meant for the latter to, in effect, supersede the former," just because § 3624(c) "directs the BOP to transfer a prisoner into prerelease custody 'to the extent practicable' in the final 12 months of their term" and § 3632(d)(4)(C) omits the "to the extent practicable" language. *Id.* (quoting 18 U.S.C. § 3624(c)(1)). "Release into prerelease custody, no matter under the FSA or [SCA], must conform with the BOP's requirements in designating places of imprisonment under § 3621." *Id.*

No conflicts exist "between preserving the BOP's discretion in designating a place of imprisonment and the FSA's purpose of incentivizing participation in [evidence-based recidivism reduction] programs and [productive activities]." *Id.* at *23. Requiring the BOP to transfer prisoners immediately upon eligibility, without considering whether an appropriate prerelease placement exists, would frustrate the latter objective by prioritizing timing over the practical realities of safe and effective reintegration. *Id.* (citing *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 371 (D.C. Cir. 2024) (noting that "courts should prefer textually permissible readings that would advance statutory . . . goals over ones that would frustrate them")).

Although § 3632(d)(4)(C) directs the BOP to transfer eligible prisoners, it did not supplant the BOP's longstanding discretion under § 3621(b). *Id.* ("Congress surely knew when it drafted the FSA that it had long ago granted the BOP broad discretion in designating where convicted individuals will serve out their sentences."). The BOP's transfer decisions therefore remain constrained by the same statutory factors that govern all designation decisions, including those involving prerelease custody. *Id.* Here, the BOP made an individualized determination under § 3621(b) that Osorio-Calderon would not be transferred to prerelease custody. He was denied transfer to prerelease custody in Puerto Rico "based on the Five Factor



Appellate Case: 25-3090 Page: 9 Date Filed: 06/30/2026 Entry ID: 5656400

Review (see 18 U.S.C. § 3621(b)).” R. Doc. 6-1, at 9. The BOP considered the “close proximity of two private schools and a daycare center” to the facility and local ordinances pertaining to sex offenders, like Osorio-Calderon, as well as the lack of available resources at a suitable halfway house. *Id.* The BOP’s decision based on those factors is “not reviewable by any court.” 18 U.S.C. § 3621(b). As a result, the district court correctly dismissed Osorio-Calderon’s petition seeking to compel the BOP to transfer him to a different place of imprisonment.[7]

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

______________________________

[7]Osorio-Calderon alternatively argues “that he is entitled to an order that the BOP transfer him to prerelease custody under the federal mandamus statute.” R. Doc. 27, at 10 (citing R. Doc. 6, at 16); *see also* Appellant’s Br. 33–50. For the reasons set forth by the district court, we conclude that § 3621(b) forecloses this argument. *See* R. Doc. 27, at 10–11.



Appellate Case: 25-3090 Page: 10 Date Filed: 06/30/2026 Entry ID: 5656400